## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**NAKALA MURRY, INDIVIDUALLY AND
ON BEHALF OF HER SON, A.M., A MINOR**                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO.: 4:23CV97-NBB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI; CHIEF
RONALD SAMPSON, In His Individual and
Official Capacity; OFFICER GREG CAPERS,
In His Individual and Official Capacity; and,
JOHN DOES 1-5, In Their Individual and
Official Capacities**                                             **DEFENDANTS**

## ANSWER AND AFFIRMATIVE DEFENSES

**NOW COME** Defendants, City of Indianola, Mississippi; Chief Ronald Sampson, in his

Individual and Official Capacities; and Officer Greg Capers, in his Individual and Official

Capacities, by and through counsel, and respectfully submit their Answer and Affirmative Defenses

in response to the Complaint filed herein by Plaintiff, as follows:

## PREFACE

**WHEREAS,** the evidence here will show that on Saturday, May 20, 2023, around 4:41 a.m.,

Indianola Police Officers Capers and Webb received a call from dispatch arising from a violent

domestic disturbance at the residence of Nakala Murry. Dispatch advised the Officers that Nakala

Murry reported being assaulted by her daughter's father.

Though the IPD officers did not know children were present, they were aware that the

Plaintiff's address had been the scene for multiple violent, and sometimes armed, disputes between

Plaintiff Nakala Murry and John Nolden. Indeed, IPD officers had been called out to the Plaintiff's

residence fourteen (14) times in the five years preceding the subject incident. In fact, Officer Capers

had previously responded to an emergency call at this address for domestic violence between Nakala

Murry and John Nolden.  The suspect, John Nolden, had been arrested numerous times for domestic violence, assault, and other violent offenses.

Upon their arrival, the officers noticed that the windows to the residence had black out screens preventing them from seeing inside.  Officer Capers radioed dispatch and asked who the 911 caller was, and dispatch responded the caller was Nakala Murry. Officer Capers approached the front door and knocked multiple times. Receiving no response, Officer Capers noted that something was not right and began checking the exterior of the darkened house. While doing so, Officer Capers maintained communication with dispatch, requesting that dispatch get the caller back on the line and inform her that the officers were outside. Upon communication with the caller, dispatch relayed that the suspect would not allow her to answer the door. Officer Capers asked if they had permission to kick in the door. Upon communication with the caller, dispatch responded that Nakala Murry gave them consent to kick it in.

Dispatch also informed the officers that Nakala Murry stated she did not know if the suspect was armed. Nakala Murry could be heard screaming from within the residence, yelling "let me go!" At that time, Officer Webb and Officer Capers drew their firearms.  After multiple failed attempts to kick in the door, Nakala Murry opened it with her hands in the air.  When asked where the suspect was,  Nakala Murry responded with a non-verbal gesture by nodding her head and rolling her eyes towards the interior of the residence.

Officer Webb told Nakala Murry to step outside and away from the door.  Nakala Murry then stated that the suspect was in the back. Officer Capers then stepped onto the threshold of the house with his flashlight providing the only light inside the residence.  Officer Capers and Officer Webb yelled "police" and ordered the suspect to come out multiple times.

Suddenly, a person ran into the room directly towards Officer Capers. Officer Capers

discharged his firearm striking the individual charging towards him. Moments later, Officer Capers learned for the first time that the individual was a child and exclaimed "Oh my God" as he helped the child exit the house. This individual continued to run to the side of the road. Both Officer Capers and Officer Webb immediately requested that dispatch send Med-Stat to the location, with Officer Capers stating "Med-Stat! Med-Stat! Med-Stat! Med-Stat! Med-Stat! We need them now!" Both officers immediately ran to render aid to this individual, who they then learned was Ms. Murry's minor child, A.M.

The suspect, John Nolden, then exited the house and was placed in handcuffs. Nolden was arrested for domestic violence at the scene. On May 25, 2023, Nakala Murry pressed charges against John Nolden for simple assault related to the subject incident due to him threatening to kill her that evening.

Pursuant to jurisdiction vested by state law the Mississippi Bureau of Investigations ("MBI") has opened an investigation into the subject incident. Pursuant to *Mississippi Code* § 45-1-6, the MBI "shall have jurisdiction to investigate all incidents of officer-involved shootings, other than shootings involving one or more members of the Mississippi Bureau of Investigation, resulting in injury or death occurring in the state." The MBI investigation is ongoing at this time. Until such time as the MBI concludes its investigation, Defendants are limited in their ability to defend against Plaintiff's claims in this lawsuit. Indeed, the undisputable facts are evinced by the body camera footage which is preserved for judicial review pursuant to *Mississippi Youth Court Law* §§ 43-21-255 and §43-21-261. As with the video footage, the recorded calls to IPD are preserved. Defendants desire to produce these to the Court once the jurisdiction exercised by the investigating state agency has concluded.

This same evidence will show nobody ever advised that children were present in the

residence. The statements reasonably conveyed to dispatch were that only two individuals were present in the home: Nakala Murry and John Nolden. Even upon exiting the residence, Nakala Murry never informed Officer Capers nor Officer Webb that anyone other than the suspect, Nolden, was within the residence nor that any children were present. Thus, when the individual ran at Officer Capers from the back room where he had been informed the suspect was located, any similarly situated officer could objectively believe that a suspect with a violent criminal history was charging at him. There is no evidence that Officer Capers intended to shoot A.M., and indeed, there is overwhelming evidence that he did not. The subject shooting is not constitutionally actionable. As such, Defendants did not violate the Plaintiff's clearly established constitutional rights.

## FIRST AFFIRMATIVE DEFENSE
### *(Motion to Dismiss - §1983 Claim)*

The Complaint fails to state a cause of action as to these Defendants for which relief may be granted, including, but not limited to, the defense of qualified immunity as to the individual defendants herein, named or unnamed. Defendants Chief Sampson and Officer Capers are both entitled to qualified immunity as Plaintiff's allegations do not rise to the level of any constitutional violation and any actions taken by Defendants were objectively reasonably in light of clearly established law. *See e.g. Floyd v. City of Kenner*, 351 F. App'x 890, 894 (5th Cir. 2009). Further, the Complaint fails to state a claim against these Defendants upon which relief may be granted under *Monell v. Dept. of Social Services*, 436 U.S. 653 (1977) as Plaintiff's Complaint does not identify any official policy nor any official policy that served as the moving force for any alleged constitutional violation. Moreover, under federal law, Plaintiff's official capacity claims against Chief Sampson and Officer Capers are merely duplicative of Plaintiff's claims against the City of Indianola and should be dismissed. *See e.g., Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson*

*Par. Gov't,* 849 F.3d 615, 624 (5th Cir. 2017); *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020)

(citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Walker v. Howard*, 517 F.

App'x 236, 237-38 (5th Cir. 2013) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71,

109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)); *Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001).

Defendants pray for an early determination of this issue in the interest of judicial economy.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

*(Motion to Dismiss State Law Claims)*

To the extent Plaintiff's Complaint seeks relief under state law, Defendants invoke the

provisions of the <u>Mississippi Tort Claims Act</u>, *Miss. Code Ann.* §11-46-1 (Supp. 1997), *et seq*.

Foremost, the Complaint and the relief sought therein are barred under the notice provisions of the

<u>Mississippi Tort Claims Act</u>, *Miss. Code Ann*. §11-46-11 (Supp. 2000). Critically, "any tort claim

filed against a governmental entity or its employee shall be brought only under the MTCA." *Gerhart*

*v. Barnes*, 724 F. App'x 316, 327 (5th Cir. 2018) (quoting *Conrod v. Holder*, 825 So. 2d 15, 19

(Miss. 2002)).

Pursuant to *Miss. Code Ann*. §11-46-11(1), a person must file a notice of claim **at least 90**

**days before instituting suit.** Plaintiff's notice of claim letter to the City of Indianola and Chief

Ronald Sampson is dated May 22, 2023. (*See* Notice of Claim, attached hereto and incorporated by

reference as Exhibit "A"). Plaintiff then filed her Complaint in the instant matter on May 30, 2023.

*See* Compl. [Doc. 1]. Accordingly, Plaintiff did not wait the required 90 days to file suit and failed

to comply with *Miss. Code Ann*. §11-46-11(1). The ninety-day-notice requirement is a "'hard-edged,

mandatory rule which the Court strictly enforces.'" *Lee v. Mem'l Hosp*., 999 So. 2d 1263, 1268

(Miss. 2008) (quoting *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006)).

Failure to comply with the 90-day waiting requirement requires dismissal. *Brown v. Sw. Miss. Reg'l*

*Med. Ctr.*, 989 So. 2d 933, 937 (Miss. App. 2008) (citing *Easterling*, 928 So. 2d at 820 (¶24)).

Furthermore, *Miss. Code Ann*. § 11-46-11(2)(b) requires that every notice of claim contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the time and place the injury occurred, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice. Substantial compliance with §11-46-11(2) is required. *Price v. Clark*, 21 So. 3d 509, 520 (Miss. 2009) (citing *Lee v. Memorial Hospital of Gulfport*, 999 So. 2d 1263, 1266 (Miss. 2008)).

Plaintiff's Notice letter does not satisfy the content requirements set forth by *Miss. Code Ann*. §11-46-11(2)(b) as the letter sent to the City of Indianola and Chief Sampson on May 22, 2023, fails to provide the date of the injury alleged, the Plaintiff's residence at the time of injury, and the Plaintiff's residence at the time of filing the notice. In Plaintiff's Notice letter, the date of incident is listed as May 22, 2023, which is the same day the letter is dated. (*See* Notice of Claim, Exhibit "A," at 1-2 (". . . their claims for violation of constitutional rights and negligence against the City of Indianola, MS, Chief Ronald Sampson, and Officer John Doe for the injuries and damages sustained on May 22, 2023."). Plaintiff's Complaint, however, identifies the date of injury as May 20, 2023. Thus, Plaintiff's Notice letter from May 22, 2023, to the City and Chief Sampson does not satisfy the content requirements of *Miss. Code Ann*. §11-46-11(2)(b). Furthermore, Plaintiff's Notice letter to the City and Chief Sampson fails to provide any information whatsoever as to the Plaintiff's residence at the time of injury nor at the time of the claim. This failure constitutes non-compliance with the MTCA's notice requirements, thereby requiring dismissal. *Lane v. Miss. DOT*, 220 So. 3d 254, 260 (Miss. App. 2017).

Additionally, Plaintiff's Complaint fails to state any state law claim upon which relief can

be granted as to Defendant Officer Capers, by reason of the fact the shooting was a reasonable reaction to what any officer could perceive to be a potentially dangerous situation. Such conduct cannot constitute reckless disregard. *See e.g., Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. Ct. App. 2008) ("Officer William's conduct was a reasonable reaction to what he perceived to be a potentially dangerous situation.").  In light of such totality of circumstances, Plaintiff has neither alleged nor can Plaintiff prove any reckless disregard or deliberate indifference on the part of Defendants or any governmental actor on behalf of Defendants.

Plaintiff's Complaint fails to state a claim under state law upon which relief can be granted as to Defendants under the provisions of the Mississippi Tort Claims Act, as no claim under state law is available against a governmental entity or its employees for either: (1) negligence by sworn law enforcement officers; (2) failure to train, supervise or discipline law enforcement officers; (3) for negligence and/or deliberate indifference by a deputy and/or law enforcement officer; (4) for assault and battery by a deputy and/or law enforcement officer; and/or (5) for claims of negligence against a law enforcement officer. *Miss. Code Ann.* §11-46-9(1)(b),(c),(d),(e),(f),(h),(m) (Supp. 1997).  Alternatively, Defendants state that there are no material facts which remain at issue as to Plaintiff's individual status and will move for judgment on the pleadings pursuant to *Fed. R. Civ. Proc.*,  Rule 12 (c) at the appropriate time in the interest of judicial economy.

## **THIRD AFFIRMATIVE DEFENSE**

Plaintiff fails to state a claim upon which relief may be granted against any Defendant.

## **FOURTH AFFIRMATIVE DEFENSE**

Without waiving any of the defenses asserted herein, Answering Defendants assert the protections of the Mississippi Apportionment Statute, *Miss. Code Ann*. §85-5-7 (Supp 2003). To the extent that Plaintiff suffered injury as a result of the tortious act of one other than these Defendants

or as a result of her own fault, either Plaintiff or the responsible party should be assessed all or a portion of the responsibility for any injury/damages occasioned thereby based upon the principles of comparative negligence/contributory negligence and any recovery to which Plaintiff would otherwise have been entitled must be reduced in accordance therewith.

## **FIFTH AFFIRMATIVE DEFENSE**

The individual Defendants (named and un-named) in this case are entitled to qualified immunity from Plaintiff's claims. These individuals were at all times public officials in the course of duties during the incident forming the basis of this lawsuit. Said individuals did not engage in any conduct which deprived the Plaintiff of any right, privilege or immunity protected by the Constitution or Laws of the United States. Additionally, said individuals' conduct was objectively reasonable in light of clearly established law at the time of their actions in this matter. These individuals' actions were justified and arguably justifiable in light of the information each possessed and clearly established law. As such, a reasonable officer could have believed their actions lawful during the incident forming the basis of this lawsuit.

## **SIXTH AFFIRMATIVE DEFENSE**

With respect to Plaintiff's state law claims, Defendants claim the protection of the statutory exemptions from liability found in the Mississippi Tort Claims Act, *Miss. Code Ann.* §11-46-9 (1999). Alternatively, Defendants claim the protection of governmental immunity and/or sovereign immunity.

## **SEVENTH AFFIRMATIVE DEFENSE**

Defendants are protected by and invoke all the immunities granted by judicial, common law, and statutory sovereign immunity including, but not limited to, judicial immunity, quasi-judicial immunity and qualified immunity.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's official capacity federal constitutional claims are necessarily predicated on the doctrine of *respondent superior* and are thus barred as a matter of law by reason of the absence of any proof or allegation of any official policy, custom or practice of the Defendant City was the moving force behind the alleged injuries of Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's failure to allege violation of any legal duty by any Defendant bars this cause of action.

## TENTH AFFIRMATIVE DEFENSE

To the extent that any personnel acting within the course and scope of their employment with the City of Indianola are alleged to be involved in or responsible for the custody, safety, protection, supervision or care of the Plaintiff, at any time, such conduct was at all times objectively reasonable and consistent with clearly established law, and for that reason, Plaintiff's claims are barred.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to these Defendants by reason of the fact that any duty on the part of these Defendants involved the use of discretion, and at no time did any governmental actor substantially exceed his or her authority, nor was any legally cognizable harm to Plaintiff, caused by or in the course of such exercise of authority and discretion, and Plaintiff's claims are accordingly barred under the doctrine of public official immunity.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of independent, intervening cause and/or efficient superseding cause.

## THIRTEENTH AFFIRMATIVE DEFENSE

At no time did any governmental actor breach any duty that was ministerial in nature, causing any legally cognizable harm to Plaintiff, and for that reason, Plaintiff's claims are barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendants invoke the safeguards of the Equal Protection and Due Process clauses of the United States Constitution, Article 3, Section 14 of the Mississippi Constitution and the provisions of *Miss. Code Ann.* §§11-1-65 and 11-46-15 (2) (1993).

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the running of the applicable statute of limitations, laches, waiver, estoppel, *res judicata*, administrative collateral estoppel, judicial estoppel, assumption of risk and the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

The criminal conduct of a third party constitutes the sole proximate cause or a proximate contributing cause of any injuries they allegedly sustained and of any damages allegedly resulting therefrom. Moreover, the injuries/damages, if any, of Plaintiff were not foreseeable to these Defendants, and therefore, Plaintiff's claim as to these Defendants should be dismissed.

## SEVENTEENTH AFFIRMATIVE DEFENSE

A governmental entity is only liable under Section 1983 for injuries caused by its policy or custom. Here, there is no identified policy or custom at issue and no underlying violation of a right arising under the United States Constitution. The instant official capacity claims fail as a matter of law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

These Defendants are not responsible for any condition of any Plaintiff that pre-existed the events made the basis of this Complaint.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendants assert all affirmative defenses that are or may become available or of which may become aware (upon further investigation or discovery) under *Fed. R. Civ. P.*12(b).

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover any enhanced, punitive, or exemplary damages, as provided by *Miss. Code Ann*. § 11-46-15 insofar as any state court claims are concerned. Further, Plaintiff is not entitled to punitive damages under *Miss. Code Ann*. §25-61-15. Answering Defendants invoke the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States and Article III, Section 14 of the Constitution of the State of Mississippi, inclusive of, but not necessarily limited to, the following separate and several grounds:

(a) The procedures may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing.

(b) The procedures fail to provide means for awarding separate judgments against alleged joint tortfeasors.

(c) The procedures fail to provide a limit on the amount of the award against the defendants.

(d) The procedures fail to provide specific standards for the amount of the award of punitive damages.

(e) The procedures permit award of punitive damages upon satisfaction of a standard of proof less than that applicable to the imposition of criminal sanctions.

(f) The procedures permit multiple awards of punitive damages for the same alleged act.

(g)     The procedures fail to provide a clear consistent appellant standard of review of an award for punitive damages.

(h)     The procedures may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined.

(I)     The standard of conduct upon which punitive damages are sought is vague.

### TWENTY FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to Defendant Officer Capers as Plaintiff's allegations to not rise to the level of any constitutional violation, any actions taken by Officer Capers were objectively reasonable in light of clearly established law, and Plaintiff only alleges accidental conduct by Officer Capers which cannot constitute reckless disregard.

In order to state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Under controlling law, an action by law enforcement must be intentionally - rather than accidentally - directed towards the plaintiff for that action to be deemed violative of the plaintiff's constitutional right to be free from excessive force. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (reasoning that law enforcement action cannot be simultaneously unknowing and violative of constitutional rights). "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Id.* Indeed, the Fourth Amendment addresses "misuse of power," and "not the accidental effects of otherwise lawful government conduct." *Id.* "[T]here is no Fourth Amendment violation in the absence of intentional conduct." *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018); *see also, Pearce v. Doe*, 849 F. App'x 472, 475 (5th Cir. 2021); *Bryant v.*

*Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). Because Plaintiff's Complaint does not allege any intentional conduct by Officer Capers directed at any Plaintiff, it fails to state a Fourth Amendment claim under Section 1983.

Plaintiff's Section 1983 claims amount to allegations that Officer Capers' actions were the result of negligence in failing to use reasonable care in the use of his firearm and in the use of excessive force. As stated by this Court in *Baskin v. City of Houston*, "[t]o prevail on Plaintiffs' theory the shooting violated [their] Fourth Amendment rights, Plaintiffs must produce evidence that the shooting was both intentional and unreasonable."*Baskin v. City of Hous.*, No. 1:07CV58-SA-JAD, 2008 U.S. Dist. LEXIS 82455, at *7-8 (N.D. Miss. Oct. 16, 2008) *aff'd* 378 F. App'x 417 (5th Cir. 2010) (citing *Brower*, 596-97, 109 S. Ct. 1378). As all evidence makes pertinently clear, Officer Capers reasonably reacted to what any reasonable officer would have believed to have been the subject violent offender charging him, and Officer Capers did not discharge his firearm with the intent to shot A.M. In fact, Plaintiff's Complaint does not even claim that the shooting was intentional; rather, the entirety of Plaintiff's claims are crouched in terms of negligence and lack of reasonable care.  "***Negligent or accidental conduct by police officers does not rise to the level of a constitutional violation***." *Baskin*., 2008 U.S. Dist. LEXIS 82455, at *7-8 (citing *Brower*, 596-97, 109 S. Ct. 1378) (emphasis added).

Just as Plaintiff's allegations do not, and cannot, rise to the level of a Fourth Amendment violation, Plaintiff's Complaint fails to state a claim under Section 1983 for any Fourteenth Amendment violation. "'[T]he substantive component of the Due Process Clause is violated by executive action only  when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Baskin*., 2008 U.S. Dist. LEXIS 82455, at *10-11 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). Negligence

does not meet the "shock the conscience" standard. *Id.* (citing *Lewis*, 523 U.S. at 849, 118 S. Ct. 1708). Accordingly, "when officers are faced with dangerous situations in which split-second decisions must be made, the bar for demonstrating that certain behavior shocks the conscience is higher." *Id.* at *11 (citing *Lewis*, 523 U.S. at 853, 118 S. Ct. 1708).

"Where unforeseen circumstances demand instant judgment," then "even deliberate indifference does not shock the conscience since decisions made in such circumstances are not deliberate." *Id.* at *12 (citing Lewis, 523 U.S. at 851-53, 118 S. Ct. 1708). Thus, "[w]here instant judgment is required, only deliberate actions intended to harm another shock the conscience." *Id.* (citing *Lewis*, 523 U.S. at 836, 118 S. Ct. 1708). Plaintiff's Fourteenth Amendment claims, therefore, had to allege that Officer Capers had a purpose to cause harm. However, as Plaintiff repeatedly characterizes Officer Capers' conduct as negligent in nature rather than intentional, Plaintiff's Complaint fails to state either a Fourth or Fourteenth Amendment claim against Officer Capers.

## **TWENTY SECOND AFFIRMATIVE DEFENSE**

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to Defendant Chief Sampson, by reason of the fact that Defendant Officer Capers was at all relevant times trained and certified in accordance with State standards, Officer Capers acted within policy, Officer Capers had no prior history of excessive force, and Chief Sampson was not present during any of the events complained of.

Plaintiff's claims are not sufficient to attach liability whatsoever to Chief Sampson as they are devoid of factual allegations demonstrating how Chief Sampson caused or was personally involved in any alleged constitutional deprivation(s). As this Court well-knows, a defendant, like Chief Sampson, cannot be held liable under § 1983 under a theory of *respondeat superior*. *See e.g., Tomasella v. Kaufman Cty. Child Support*, No. 22-10760, 2022 U.S. App. LEXIS 35011, at *7 (5th

Cir. Dec. 19, 2022) (citing *Stewart v. Murphy,* 174 F.3d 530, 536 (5th Cir. 1999)). To state a cause of action under § 1983, the plaintiff "must allege facts reflecting each Defendants' participation in the alleged wrong, specifying the personal involvement of each Defendant." *Wilson v. Edwards*, 202 So. 3d 275, 280 (Miss. App. 2016); *Pinkston v. Hall*, No. 5:18-cv-103-MTP, 2020 U.S. Dist. LEXIS 211380, at *6 (S.D. Miss. Nov. 12, 2020) (quoting *Jolly v. Klien*, 923 F. Supp. 931, 943 (S.D. Tex. 1996)); *Boone v. Byrd,* No. 4:08CV52-WAP-DAS, 2008 U.S. Dist. LEXIS 83225, at *6 (N.D. Miss. Sep. 3, 2008) (citing *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

Plainly, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Wells v. Collier*, 834 F. App'x 949, 950 (5th Cir. 2021) (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Floyd v. City of Kenner*, 351 F. App'x 890, 897 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009)). To be sure, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)). An individual supervisory official "may be liable only for implementing a policy that is 'itself [] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'" *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)) (emphasis added).

Plaintiff's Complaint does not identify any official policy implemented by Chief Sampson nor any official policy that served as the moving force for any alleged constitutional violation.

Threadbare assertions that defendants "'continue to violate the Rights of the Plaintiff[]'" or that officers were engaged in some "repeated pattern of criminal injurstice" are not sufficient to state a plausible claim under § 1983. *Moore v. Union Cty.*, No. 3:22CV92-GHD-JMV, 2023 U.S. Dist. LEXIS 27624, at *7-8 (N.D. Miss. Feb. 17, 2023). Moreover, as previously shown, Plaintiff's allegations do not rise to the level of any constitutional violation and any actions taken by Officer Capers were objectively reasonable in light of clearly established law. Clearly, there can be no supervisory liability where there is no underlying constitutional violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000)).

In light of such totality of circumstances, Plaintiff has neither alleged nor can Plaintiff prove any reckless disregard or deliberate indifference on the part of Defendants or any governmental actor on behalf of Defendants.

## <u>TWENTY THIRD AFFIRMATIVE DEFENSE</u>

Plaintiff's Complaint fails to state a claim under Section 1983 as to the City of Indianola. In Monell, the Court made it clear that municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Collins v. City of Harker Heights*, 503 U.S. 115, 120-21, 112 S. Ct. 1061, 1066 (1992) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)). The *Monell* Court emphasized that "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* (quoting *Monell*, 436 U.S. at 691).

As reemphasized by the Fifth Circuit, the "proper analysis requires us to separate two different issues when a section 1983 claim is asserted against a municipality: (1) whether plaintiff's

harm was caused by a constitutional violation, and (2) *if so*, whether the City is responsible for that violation. *Rios*, 444 F.3d at 426 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066, 117 L. Ed. 2d 261 (1992)). Again, Plaintiff's allegations do not rise to the level of any constitutional violation and any actions taken by Officer Capers were objectively reasonable in light of clearly established law. No case "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm," and where "a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986). Just as with Chief Sampson, Plaintiff has failed to state a claim against the City of Indianola under Section 1983 as there was no underlying constitutional violation, thereby making Rule 12(b)(6) dismissal proper. *Rios*, 444 F.3d at 426 (citing *Collins*, 503 U.S. at 120, 112 S. Ct. at 1066).

In light of such totality of circumstances, Plaintiff has neither alleged nor can Plaintiff prove any reckless disregard or deliberate indifference on the part of Defendants or any governmental actor on behalf of Defendants.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to Defendant Chief Sampson or the Defendant City for any failure to train, supervise, monitor, or discipline claims under federal law. To state a cognizable failure to train or supervise claim, Plaintiff had to plead facts plausibly demonstrating that "(1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly

caused the [decedent's] injury." *Clyce v. Hunt Cty.*, 515 F. App'x 319, 323 (5th Cir. 2013); *see also, Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)). The Supreme Court has emphasized that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Clyce*, 515 F. App'x at 323 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011))."In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Id.* (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d at 287, 293 (5th Cir. 2005))). Similarly, a plaintiff must allege with specificity how the supervision at hand was inadequate. *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 n.34 & 383 (5th Cir. 2005)

Plaintiff has not pointed to any City of Indianola or Indianola Police Department policy or any training program, nor has Plaintiff alleged any pattern of similar violations to put the City on notice that its training or supervision was inadequate. Further, Plaintiff has not plausibly alleged how any such training or supervision actually *caused* the minor A.M.'s injury. Thus, Plaintiff has not plausibly alleged a failure to train or a failure to supervise claim.

Additionally, Plaintiff's Complaint fails to state any Section 1983 claim against the City of Indianola or Chief Sampson as Defendant Officer Capers was at all relevant times trained and certified in accordance with State standards. Officer Capers had no prior history of excessive force and did not violate the United States Constitution here.

### TWENTY FIFTH AFFIRMATIVE DEFENSE

Plaintiff's allegations of negligence are not cognizable under either the <u>Mississippi Tort Claims Act</u>, *Miss. Code Ann*. §11-46-1 (1993) *et seq*., as amended, or 42 U.S.C. § 1983.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

**AND, NOW,** having asserted their affirmative defenses to the Complaint filed herein, and without waiving any such defenses, these Defendants answer the allegations of Plaintiff's Complaint as follows:

1. Defendants are without sufficient information as to this paragraph and therefore deny the same.

2. The allegations of paragraph 2 are admitted.

3. The allegations of paragraph 3 are admitted.

4. The allegations of paragraph 4 are admitted.

5. Defendants are without sufficient information as to this paragraph and therefore deny the same.

6. At the present time, Plaintiff has filed a criminal charge in state court against Officer Capers. In addition, the investigative body with jurisdiction under state law, MBI, has an ongoing investigation. Until both are fully resolved, ***federal jurisdiction is premature***.

7. In a normal case occurring in the Northern District of Mississippi, venue here would be proper. Multiple and substantial misstatements of fact have been disseminated in the form of pretrial publicity. Rule 3.6 (c) of the *Mississippi Rules of Professional Ethics*, limits what a lawyer involved in litigation can release to the media without elaboration. The pretrial publicity here in the form of social media posts, statements directly by opposing counsel, statements of parties prepared and sponsored by opposing counsel and via release of documents obtained under subpoena are well documented. As a result, it is unlikely that venue here remains proper. Any and all other allegations in paragraph 7 are denied.

8. The allegations of paragraph 8 are denied.

9.      The allegations of paragraph 9 are denied.

10.     The allegations of paragraph 10 are denied as stated.

11.     The allegations of paragraph 11 are denied as stated.

12.     At all relevant times Officer Capers responded to the scene while on duty with the police department and was acting in the course and scope of his employment. Defendants deny the remainder of paragraph 12 as stated.

13.     The allegations of paragraph 13 are denied.

14.     The allegations of paragraph 14 are denied as stated.

15.     The allegations of paragraph 15 are denied. Any reasonable officer knowing the history of violence between Nakala Murry and John Nolden would believe it lawful to draw his or her weapon when told via dispatch that Nakala Murry was being held against her will.

16.     The allegations of paragraph 16 are denied.

17.     Defendants deny  the allegations in paragraph 17, and demand strict legal proof of the same.

18.     The allegations of paragraph 18 are admitted.

19.     Defendants deny the allegations in paragraph 19 as Chief Sampson was not present at the Nakala Murry residence at the time of this incident.

20.     Defendants deny the allegations in paragraph 20, and demand strict legal proof of the same.

21.     Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 21 and to the extent an answer is needed, the allegations of this paragraph are denied.

22.     The allegations of paragraph 22 are denied.

23. The allegations of paragraph 23 are denied.

24. Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 24 and to the extent an answer is needed, the allegations of this paragraph are denied.

25. The allegations of paragraph 25 are denied.

26. Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 26 and to the extent an answer is needed, the allegations of this paragraph are denied.

27. Defendants deny the allegations in paragraph 27, and demand strict legal proof of the same.

28. Defendants deny the allegations in paragraph 28, and demand strict legal proof of the same.

29. Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 29 and to the extent an answer is needed, the allegations of this paragraph are denied.

30. The allegations of paragraph 30 are denied.

31. Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 31 and to the extent an answer is needed, the allegations of this paragraph are denied.

32. The allegations of paragraph 32 are denied.

33. The allegations of paragraph 33 are denied.

34. The allegations of paragraph 34 are denied.

35. Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and

previous answers herein into answering the allegations of paragraph 35 and to the extent an answer is needed, the allegations of this paragraph are denied.

36.     The allegations of paragraph 36 are denied.

37.     The allegations of paragraph 37 are denied.

38.     The allegations of paragraph 38 are denied.

39.     The allegations of paragraph 39 are denied.

40.     Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 40 and to the extent an answer is needed, the allegations of this paragraph are denied.

41.     The allegations of paragraph 41 are denied.

42.     The allegations of paragraph 42 are denied.

43.     Mississippi Law and the Special Charter of the City of Indianola delineate the legal authority of the City and appointed Chief of Police. The allegations in paragraph 43 are denied as stated.

44.     The allegations of paragraph 44 are denied.

45.     The allegations of paragraph 45 are denied.

46.     The allegations of paragraph 46 are denied.

47.     Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 47 and to the extent an answer is needed, the allegations of this paragraph are denied.

48.     The allegations of paragraph 48 are denied.

49.     The allegations of paragraph 49 are denied.

50.     Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and

previous answers herein into answering the allegations of paragraph 50 and to the extent an answer is needed, the allegations of this paragraph are denied.

51.    It is admitted that Defendant Officer Capers was acting in the course and scope of his employment with the City. Any and all other allegations in paragraph 51 are denied.

52.    Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 52 and to the extent an answer is needed, the allegations of this paragraph are denied.

53.    The allegations of paragraph 53 are denied.

54.    The allegations of paragraph 54 are denied.

55.    Defendants hereby incorporate, re-affirm and re-allege all affirmative matters and previous answers herein into answering the allegations of paragraph 55 and to the extent an answer is needed, the allegations of this paragraph are denied.

56.    Defendants deny each and every allegation contained in paragraph 56 and would affirmatively aver that the Plaintiff is not entitled to any relief whatsoever.

57.    Defendants deny each and every allegation contained in paragraph 57 and would affirmatively aver that the Plaintiff is not entitled to any relief whatsoever.

58.    Defendants deny each and every allegation contained in paragraph 58 and would affirmatively aver that the Plaintiff is not entitled to any relief whatsoever.

59.    Defendants deny each and every allegation contained in paragraph 59 and would affirmatively aver that the Plaintiff is not entitled to any relief whatsoever.

As for the last unnumbered paragraph which commences, "WHEREFORE, THE ABOVE BEING CONSIDERED," Defendants deny each and every allegation contained therein and would affirmatively aver that the Plaintiff is not entitled to any relief whatsoever contained therein.

**AND NOW, HAVING FULLY ANSWERED** and asserted their Affirmative Defenses, the Defendants pray that this Court grant the following relief:

(A)     That this Court dismiss Plaintiff's Complaint with prejudice, based upon each and all of the aforesaid Affirmative Defenses, including, but not limited to, applicability of the statutory exemptions from liability as set forth in the <u>Mississippi Tort Claims Act</u>, qualified immunity, and the application of the laws and jurisprudence as to the 4th and  14th Amendments of the U.S. Constitution;

(B)     That this Court deny Plaintiff the relief prayed for in Plaintiff's prayer for relief, and that Plaintiff be denied any relief whatsoever; and,

(C)     That this Court award this Defendants their attorney fees, costs and expenses associated with the defense of the instant civil action pursuant to *Fed. R. Civ. Proc.* 11, and 42 U.S.C. §1988.

**Respectfully submitted**, this the 4th  day of August, 2023.

**JACKS | GRIFFITH | LUCIANO, P.A.**

By:   \_\_\_/s/ ***Daniel J. Griffith***_____
Daniel J. Griffith, MS Bar No. 8366
Mary McKay Griffith, MS Bar No. 100785
M. Mckenzie W. Price, MS Bar No. 106538
Attorneys for Defendants City of Indianola, Mississippi; Chief Ronald Sampson, in his Individual and Official Capacity; and, Officer Greg Capers, in his Individual and Official Capacity

Of Counsel:

**JACKS | GRIFFITH | LUCIANO, P.A.**
P. O. Box 1209
150 North Sharpe Avenue
Cleveland, MS 38732
telephone: (662) 843-6171
facsimile: (662) 843-6176

cell: (662) 721-7323
Email: dgriffith@jlpalaw.com
      mgriffith@jlpalaw.com
      mprice@jlpalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel J. Griffith, attorney of record for Defendants City of Indianola, Mississippi; Chief Ronald Sampson, in his Individual and Official Capacities; and Officer Greg Capers, in his Individual and Official Capacities, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Answer and Affirmative Defenses* to be delivered by the ECF Filing System which gave notice to all counsel of record who have appeared herein.

        Carlos E. Moore, MSB# 100685
        The Cochran Firm - MS Delta
        306 Branscome Drive,
        P.O. Box 1487
        Grenada, MS 38902-1487
        Tel: (662) 227-9940
        Fax: (662) 227-9941
        Email: cmoore@cochranfirm.com
        **Attorney for Plaintiff**

**DATED** this 4th day of August, 2023.

        */s/ **Daniel J. Griffith**       
        Daniel J. Griffith