**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**NAKALA MURRY, INDIVIDUALLY AND**
**ON BEHALF OF HER SON, A.M., A MINOR**                                        **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 4:23CV97-DMB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI; CHIEF**
**RONALD SAMPSON, In His Individual and**
**Official Capacity; OFFICER GREG CAPERS,**
**In His Individual and Official Capacity; and,**
**JOHN DOES 1-5, In Their Individual and**
**Official Capacities**                                        **DEFENDANTS**

<u>**DEFENDANTS' MEMORANDUM OF AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR**</u>
<u>**SUMMARY JUDGMENT AS TO PLAINTIFF'S STATE CLAIMS**</u>

**NOW COMES** Defendants, City of Indianola, Mississippi; Chief Ronald Sampson, in his

Individual and Official Capacities; and Officer Greg Capers, in his Individual and Official

Capacities, by and through counsel, and respectfully files this, their Memorandum of Authorities

in Support of Motion for Judgment on the Pleadings or Alternatively, for Summary Judgment, as to

Plaintiff's State Claims, to-wit:

**I. PREMISE**

Plaintiff's Complaint asserts a number of state law claims against Defendants City of

Indianola, Chief Ronald Sampson, in his Individual and Official Capacities, and Officer Greg

Capers, in his Individual and Official Capacities. As the Complaint raises tort claims against a

political subdivision and its employees, Plaintiff's exclusive state law remedy against Defendants

is the <u>Mississippi Tort Claims Act</u>. Because Plaintiff did not wait the required 90 days after sending

their notice of claim prior to filing suit, Plaintiff failed to comply with the notice requirements of

1

*Miss. Code Ann*. §11-46-11(1). Accordingly, as Plaintiff's state law claims are barred by the MTCA's notice provision, this Court should dismiss Plaintiff's state law claims in their entirety. Further, dismissal is warranted because Plaintiff's notice letter does not satisfy the content requirements set forth by *Miss. Code Ann*. §11-46-11(2)(b) as the letter sent to the City of Indianola and Chief Sampson fails to provide multiple categories of required information. Further, dismissal is proper as Plaintiff's Complaint fails to state a claim under state law upon which relief can be granted as to Defendants under the provisions of the MTCA. Furthermore, Plaintiff's state law claims should be dismissed as those claims are barred by numerous immunities as provided by the MTCA. Thus, dismissal is warranted under Rule 12(c) of the *Federal Rules of Civil Procedure*.

## II. FACTS

According to the Complaint, on or about May 20, 2023, around 4:00 a.m., Plaintiff Murry "received an unexpected visit from an irate father of one of her minor children" while she was at home with her two minor children and her minor nephews.[1] Plaintiff alleges in the Complaint that Plaintiff Murry, fearing for her and the children's safety, instructed her son, Plaintiff A.M., to call the police.[2] Thereafter, Officer Capers responded to the scene.[3] Next, according to the Complaint, Officer Capers asked that everyone inside the residence come outside.[4] Plaintiff then alleges that as "Plaintiff A.M. was coming around the corner of the hallway that lead into the living room area, he was instantly shot by Defendant Officer Capers[,]" incurring injuries as a result.[5]

---

[1] Compl. **[Doc. 1]** at ¶ 10.

[2] *Id.* at ¶ 11.

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶¶ 14, 16, & 17.

The specific facts of the incident are clarified in Defendants' Answer and the exhibits attached thereto. On Saturday, May 20, 2023, around 4:41 a.m., Officer Webb and Officer Capers received a call from dispatch in regards to a 911 call for a violent domestic disturbance at the Plaintiff's address involving Nakala Murry and John Nolden.[6] Dispatch advised the Officers that the 911 caller had advised that her daughter's boyfriend had jumped her and assaulted her.[7] At no point were the officers informed that children were present at the scene.[8]

Though the IPD officers did not know children were present, they were aware that the Plaintiff's address had been the scene for dozens of violent, and sometimes armed, disputes between Plaintiff Nakala Murry and John Nolden.[9] Indeed, IPD officers had been called out to the Plaintiff's residence at least fourteen (14) times in the five years preceding the subject incident.[10] In fact, Officer Capers had previously responded to a 911 call at this address for domestic violence.[11] The suspect, John Nolden, had been arrested numerous times for domestic violence, assault, and other violent offenses.[12]

Upon their arrival, the officers noticed that the windows to the residence had blackout screens

---

[6] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]**, at 1.

[7] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2; Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 1.

[8] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]** at 1, & 3-4.

[9] Exhibit "C," Arrests Reports and Call Log (BS 29-33), at 3; Exhibit "H," Call Reports for 1111 BB King (BS 58-71); Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); Answer **[Doc. 19]** at 1 & 3-4.

[10] Exhibit "C," Arrests Reports and Call Log (BS 29-33), at pg. 3; Exhibit "H," Call Reports for 1111 BB King (BS 58-71); Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 11-12, 13, 14-15, & 20-21; Answer **[Doc. 19]** at 1.

[11] Exhibit "D," IPD Incident Report for 11-7-20 (BS 81-83); Answer **[Doc. 19]** at 1-2.

[12] Exhibit "I," IPD Arrest Reports Nolden (BS 19-28); Exhibit "J," IPD Municipal Court Abstracts Nolden (BS 15-18); Answer **[Doc. 19]** at 2.

preventing them from seeing inside.[13] Officer Capers radioed dispatch and asked who the 911 caller

was, and dispatch responded the caller was Nakala Murry.[14] Officer Capers approached the front

door and knocked multiple times.[15] Receiving no response, Officer Capers noted that something was

not right and began checking the exterior of the darkened house.[16] While doing so, Officer Capers

maintained communications with dispatch, requesting that dispatch get the caller back on the line

and inform her that the officers were outside.[17] Upon communication with the caller, dispatch relayed

Ms. Murry's statements that she heard the officers at the door and that the suspect would not allow

her to answer the door.[18] Officer Capers asked if they had permission to kick in the door, to which

dispatch responded, upon communication with the caller, that Ms. Murry gave them consent to kick

it in.[19] Dispatch also informed the officers that Ms. Murry stated she did not know if the suspect was

armed.[20] Ms. Murry could be heard screaming from within the residence, yelling "let me go!"[21] At

---

[13] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[14] Exhibit "E," Body Camera Footage, at 0:00:50-0:00:59); Answer **[Doc. 19]** at 2.

[15] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:01:03, 0:01:22, 0:01:50, 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[16] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:01:50, 0:02:03 (Officer Capers stating, "Something ain't right."), 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[17] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:01:34; Answer **[Doc. 19]** at 2.

[18] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:02:25; Answer **[Doc. 19]** at 2.

[19] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:02:42 & 0:03:22; Answer **[Doc. 19]** at 2.

[20] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[21] Exhibit "E," Body Camera Footage, at 0:03:34; Answer **[Doc. 19]** at 2.

that time, Officer Webb and Officer Capers drew their firearms.[22]

After multiple failed attempts to kick in the door, Ms. Murry opened it.[23] Officer Capers asked Ms Murry where the suspect was located.[24] Ms Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her.[25] Officer Webb told Ms. Murry to step outside and away from the door.[26] Ms. Murry then stated that the suspect was in the back room.[27] Next, Officer Capers stepped onto the threshold of the house with his flashlight providing the only light inside the residence.[28] Officer Capers and Officer Webb yelled "police" and ordered the suspect to come out multiple times.[29]

Suddenly, a male in a red shirt ran directly towards Officer Capers from the room where Ms. Murry stated that the suspect was located.[30] Officer Capers discharged his firearm, striking the

---

[22] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2;  Exhibit "E," Body Camera Footage, at 0:03:37; Answer **[Doc. 19]** at 2.

[23] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:39;  Answer **[Doc. 19]** at 2.

[24] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:41; Answer **[Doc. 19]** at 2.

[25] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

[26] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:43;  Answer **[Doc. 19]** at 2.

[27] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[28] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:04:03; Answer **[Doc. 19]** at 2.

[29] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; Exhibit "E," Body Camera Footage, at 0:03:45, 0:03:48, 0:03:51, 0:03:54, & 0:04:03; Answer **[Doc. 19]** at 2.

[30] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at  pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:05; Answer **[Doc. 19]** at 2-3.

individual charging towards him.[31] Moments later, Officer Capers learned for the first time that the individual in the red shirt appeared to be a child and exclaimed "Oh my God" as he helped the child exit the house.[32] This individual continued to run to the side of the road.[33] Both Officer Capers and Officer Webb immediately requested that dispatch send Med-Stat to the location, with Officer Capers stating "Med-Stat! Med-Stat! Med-Stat! Med-Stat! Med-Stat! We need them now!"[34] Both officers immediately ran to render aid to this individual, who they then learned for the first time was Ms. Murry's minor child, A.M.[35] The suspect, John Nolden, then exited the house and was placed in handcuffs.[36] Nolden was arrested for domestic violence at the scene.[37] Officer Capers was visibly upset about the entire unexpected ordeal.[38]

Thereafter, on May 22, 2023, Plaintiff Nakala Murry caused a notice of claim letter to be sent to the City of Indianola and Chief Sampson alleging "injuries and damages sustained on May 22,

---

[31] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:06; Answer **[Doc. 19]** at 2-3.

[32] Exhibit "E," Body Camera Footage, at 0:04:07-0:04:10; Answer **[Doc. 19]** at 3.

[33] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:10-0:04:18; Answer **[Doc. 19]** at 3.

[34] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at  pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:12-0:04:19; Answer **[Doc. 19]** at 3.

[35] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:20; Answer **[Doc. 19]** at 3.

[36] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:41;  Answer **[Doc. 19]** at 3.

[37] Exhibit "K," IPD Docs (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

[38] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75) at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:04:20- 0:04:51 (repeating "Oh my God" and calling for Med-Stat); Answer **[Doc. 19]** at 1-4.

2023."[39] On May 25, 2023, Ms. Murry pressed charges against John Nolden for simple assault related to the subject incident due to him threatening to kill her that evening.[40] On May 30, 2023, Plaintiff Murry filed her Complaint in the instant matter, asserting a number of claims under state and federal law against the City of Indianola, Chief Sampson, in his Individual and Official Capacities, and Officer Capers, in his Individual and Official Capacities.[41] Then, on June 5, 2023, Plaintiff Murry also pressed charges against Officer Capers for the subject incident.[42]

### III. STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for addressing a motion for judgment on the pleadings under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12(b)(6).[43] Thus, to survive Defendants' Motion, Plaintiff's Complaint must provide the grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level."[44] The Complaint must allege "sufficient factual matter…to state a claim that is plausible on its face."[45] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

---

[39] Exhibit "A," Notice of Claim Letter, Exhibit "A," to Answer **[Doc. 19],** at 1.

[40] Exhibit "K," IPD Documents (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

[41] Compl. **[Doc. 1].**

[42] Exhibit "B," to Motion to Stay **[Doc. 20]**, General Criminal Affidavit on Capers, at 1.

[43] *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010).

[44] *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)).

[45] *Thombly*, 550 U.S. at 570.

inference that the defendant is liable for the misconduct alleged."[46] A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct."[47]

Under Rule 12(c), like Rule 12(b)(6), the central question is whether the Complaint includes claims that are plausible.[48] Accordingly, the legal claims identified in the Complaint must be compared with the factual allegations offered in support, including any exhibits attached to the Complaint and Answer.[49] "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto. The 'pleadings' include the complaint [and] answer to the complaint[.]"[50]

As all of Plaintiff's allegations against Defendants are based upon the force that was used in responding to a 911 call and effectuating the related arrest on May 20, 2023, this Court "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[51] As provided by the Fifth Circuit, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[52] "When documents of public record reveal that a plaintiff's complaint is not plausible, a court is not required to consider a motion

---

[46] *Id*. at 556.

[47] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

[48] Twombly, 550 U.S. at 555.

[49] *Olivier v. City of Brandon*, No. 3:21-cv-00636-HTW-LGI, 2022 U.S. Dist. LEXIS 196233, at *19-20 (S.D. Miss. Sep. 23, 2022) (citing *Iqbal*, 556 U.S. at 678).

[50] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

[51] *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).

[52] *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (per curiam) quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

to dismiss as one for summary judgment."[53] Both the incident reports related to the subject 911 call and related arrest reports as well as similar prior incident reports, arrest reports, and court abstracts involving the same parties to the instant incident are central to the allegations of Plaintiff's Complaint and are matters of public record[54] proper for consideration on the instant motion that clearly reflect that Plaintiff fails to state a plausible claim.[55]

Moreover, the body camera footage from May 20, 2023, is central to Plaintiff's Complaint and is proper for consideration on a motion to dismiss or motion for judgment on the pleadings.[56] Because video evidence is available, Fifth Circuit jurisprudence requires this Court to "view the facts in the light depicted by the videotape."[57] "In such an instance, the court is not required to favor plaintiff's allegations over the video evidence."[58] Instead, where the video contradicts Plaintiff's

---

[53] *Martin v. Rainbow Casino*, No. 5:11-CV-142 DCB RHW, 2012 WL 1883673, at *1 (S.D. Miss. May 22, 2012)(quoting *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986)).

[54] The Complaint refers to the 911 due to Nolden's criminal conduct towards Ms. Murry, which incorporates any documents related to such. Incident reports, arrest reports, and 911 call recordings are matters of public record as defined by *Miss. Code Ann*. § 25-61-3(b)&(e) and are not excluded from public disclosure by *Miss. Code Ann*. § 25-61-12(c).

[55] *Armstrong v. Ashley*, 60 F.4th 262, 272 n.10 (5th Cir. 2023) (citing *Scanlan v. Texas A&M Univ*., 343 F.3d 533, 536 (5th Cir. 2003) (police report was proper for consideration on Rule 12(c) Motion); *Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18 (S.D. Miss. Sep. 14, 2021) (citing *Johnson-Williams v. Citimortgage, Inc*., 750 F. App'x 301, 304 (5th Cir. 2018) (arrest records were proper for consideration on Rule 12(c) Motion).

[56] *See e.g., Beroid v. Lafleur*, No. 22-30489, 2023 U.S. App. LEXIS 9644, at *11 (5th Cir. Apr. 21, 2023) (per curiam) (quoting *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); citing *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021)).

[57] *Boyd v. McNamara*, 74 F.4th 662, 665-66 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration omitted)).

[58] *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam) (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

version of the incident, courts credit the facts evidenced on video.[59] Indeed, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."[60] Likewise, as the 911 call is referenced in and central to Plaintiff's Complaint, it too may be properly considered for the instant motion.[61] Regardless, this Court may consider matters outside the pleadings and render summary judgment in the alternative.[62]

## IV. ARGUMENT

Because Plaintiff has asserted state law claims against a governmental entity and its employees,[63] it cannot be disputed that the *Mississippi Tort Claims Act* ("MTCA") exclusively governs the claims at bar.[64] While the MTCA amounts to a general waiver of sovereign immunity, it also provides a number of restrictions, limitations and immunities. Several of such restrictions and immunities apply here to bar Plaintiff's claims.

### A. Plaintiff's State Law Claims Are Procedurally Barred.

All of Plaintiff's state law claims are procedurally barred and must be dismissed. One of the

---

[59] *See e.g., Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 380-81); *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (quoting *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012)).

[60] *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2519, 209 L. Ed. 2d 551 (2021) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

[61] *Beroid*, 2023 U.S. App. LEXIS 9644, at *11-12 (citing *Tucker*, 998 F.3d at 170 (internal quotation marks and citation omitted)).

[62] *See e.g., Bosarge,* 796 F.3d at 440; *Galvan v. Calhoun Cty.,* 719 F. App'x 372, 375 (5th Cir. 2018) (per curiam) (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,* 748 F.3d 631, 635 (5th Cir. 2014)); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

[63] Compl. **[Doc. 1]**, at ¶ 2 & ¶ 4.

[64] *Gerhart v. Barnes*, 724 F. App'x 316, 327 (5th Cir. 2018) (quoting *Conrod v. Holder*, 825 So. 2d 15, 19 (Miss. 2002)); *Miss. Code Ann*. §11-46-5(2) & §11-46-7.

numerous restrictions se forth by the MTCA is the mandatory pre-suit notice provision at *Miss. Code Ann*. §11-46-11. The purpose of the MTCA's notice requirements "is to insure that the governmental entity is informed of any claims against it."[65] Pursuant to *Miss. Code Ann*. §11-46-11, a person seeking to assert a claim under the MTCA "**must** file a notice of claim" and is required to do so "***at least ninety (90) days before instituting suit***[.]"[66] It is well-settled that the MTCA's notice of claim requirement "imposes a condition precedent to the right to maintain an action."[67] Therefore, "absent compliance with the statute, [Defendants'] immunity is intact."[68] "Failure to comply with the Notice of Claim requirement is an absolute bar to claims under the MTCA, and dismissal with prejudice is appropriate where the plaintiff fails to do so."[69]

Plaintiff's notice of claim letter to the City of Indianola and Chief Ronald Sampson is dated May 22, 2023.[70] Plaintiff did not send any notice of claim whatsoever to Officer Greg Capers. Plaintiff then filed her Complaint in the instant matter on May 30, 2023.[71] Accordingly, Plaintiff did not wait the required 90 days to file suit and failed to comply with *Miss. Code Ann*. §11-46-11(1). The ninety-day-notice requirement is a "'hard-edged, mandatory rule which the Court strictly

---

[65] *Jones v. Miss. Insts. of Higher Learning*, 264 So. 3d 9, 27 (Miss. App. 2018) (citing *O'Hara v. City of Hattiesburg*, 222 So. 3d 314, 317 (¶8) (Miss. Ct. App. 2017)).

[66] *Miss. Code Ann*. §11-46-11(1) (emphasis added).

[67] *Clanton v. DeSoto Cty. Sheriff's Dep't*, 963 So. 2d 560, 563 (Miss. App. 2007) (quoting *Gale v. Thomas*, 759 So.2d 1150, 1159 (P33) (Miss. 1999)).

[68] *Tallahatchie Gen. Hosp. v. Howe*, 49 So.3d 86, 92 (¶18) (Miss. 2010).

[69] *See, e.g., Thomas v. Madison Cty.*, No. 3:19-CV-42-HTW-LRA, 2021 U.S. Dist. LEXIS 253188, at *23 (S.D. Miss. Mar. 29, 2021) (citing *Dingler v. City of Southaven*, 2009 U.S. Dist. LEXIS 26698, 2009 WL 902045, *5 (N.D. Miss. Mar. 31, 2009)).

[70] Exhibit "A," to Answer **[Doc. 19]**, Notice of Claim Letter, at 1.

[71] *See generally,* Compl. **[Doc. 1].**

enforces.'"[72] Failure to comply with the 90 day waiting requirement requires dismissal.[73]

Furthermore, *Miss. Code Ann*. § 11-46-11(2)(b) requires that every notice of claim contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the time and place the injury occurred, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice. Substantial compliance with §11-46-11(2) is required.[74] "What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination."[75] For example, sufficient information must be contained in the notice to permit the recipient to make a reasonable investigation of the claims being made.[76] Defendants are entitled to a dismissal when a plaintiff failed to comply with the content requirements of the MTCA's pre-suit notice provisions.[77]

Plaintiff's Notice letter does not satisfy the content requirements set forth by *Miss. Code Ann*. §11-46-11(2)(b) as the letter sent to the City of Indianola and Chief Sampson on May 22, 2023, fails to provide any information whatsoever as to the Plaintiff's residence at the time of injury nor

---

[72] *Univ. of Miss. Med. Ctr. v. Aycock,* 369 So. 3d 534 (Miss. 2023) (quoting *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006)).

[73] *Id.* (citing *Easterling*, 928 So. 2d at 820).

[74] *Price v. Clark*, 21 So. 3d 509, 520 (Miss. 2009) (citing *Lee v. Memorial Hospital of Gulfport*, 999 So. 2d 1263, 1266 (Miss. 2008); *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237,1240 (Miss.1998)).

[75] *Id.* (citing *Carr v. Town of Shubuta*, 733 So. 2d 261, 263 (Miss. 1999)).

[76] *Arceo v. Tolliver*, 19 So. 3d 67, 72 (Miss. 2009) (citing *Lee v. Mem'l Hosp.*, 999 So. 2d 1263, 1267 (Miss. 2008)).

[77] *Lane v. Miss. DOT*, 220 So.3d 254, 256 (¶6) (Miss. Ct. App. 2017) (citing *Fairley v. George Cty.*, 871 So.2d 713, 718 (¶ 15) (Miss. 2004).

the Plaintiff's residence at the time of filing the notice.[78] This failure alone constitutes non-compliance with the MTCA's notice requirements, thereby requiring dismissal.[79] Further, Plaintiff's notice letter fails to actually identify the date of the injury alleged. In Plaintiff's notice letter, the date of incident is listed as May 22, 2023, which is the same day the letter is dated.[80] Plaintiff's Complaint, however, identifies the date of injury as May 20, 2023.[81]

Moreover, Plaintiff's notice letter fails to identify the names of those known to be involved in the alleged injury as required by *Miss. Code Ann.* §11-46-11(2)(b)(iii). The scant summary of facts in Plaintiff's notice letter merely states that "As a result of the subject misconduct of the aforementioned officers, [A.M.], a minor, sustained injuries and damages."[82] Nowhere in Plaintiff's notice letter are the "aforementioned" officers named.[83] Indeed, Plaintiff's notice letter only references an "Officer John Doe."[84] Plaintiff was required to give notice of all Plaintiff's state law claims against Officer Capers in his official capacity.[85] Plaintiff's notice of claim letter failed to even identify Officer Capers, let alone give notice of her claims against him.

This lack of required information does not suffice as it fails to "give the governmental entity

---

[78] Exhibit "A," to Answer **[Doc. 19]**, Notice of Claim Letter, at 1-3.

[79] *Lane v. Miss. DOT*, 220 So. 3d 254, 260 (¶¶20-21) (Miss. App. 2017).

[80] Exhibit "A," to Answer **[Doc. 19]**, Notice of Claim Letter, at 1-2 (". . . their claims for violation of constitutional rights and negligence. . . for the injuries and damages sustained on May 22, 2023.")

[81] Compl. **[Doc. 1]** at ¶¶ 9-10.

[82] Exhibit "A," to Answer **[Doc. 19-1]**, Notice of Claim Letter, at 2.

[83] *See generally,* Exhibit "A," to Answer **[Doc. 19-1]**, Notice of Claim Letter.

[84] Exhibit "A," to Answer **[Doc. 19-1]**, Notice of Claim Letter, at 1-2.

[85] *Johnson v. City of Shelby*, 743 F.3d 59, 63 (5th Cir. 2013) (quoting *McGehee v. DePoyster*, 708 So. 2d 77, 79 (Miss. 1998) *rev'd on other grounds*, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) (per curiam).

an opportunity to investigate the claim and notify the appropriate agencies or officials of dangerous conditions or inappropriate conduct to allow for corrective or remedial measures, as well as to permit or encourage amicable settlement with the citizenry and/or prepare a defense to the claim."[86] The failure to provide any one of the seven categories of information required by *Miss. Code Ann*. § 11-46-11(2) is failure to comply with the statute.[87] Thus, the cumulative failures of Plaintiff's notice letter establish that "[Plaintiff] failed to comply with the MTCA's statutory notice requirements and require dismissal of all Plaintiff's state law claims against Defendants.[88]

### B.     Defendants Are Immune To All of Plaintiff's State Law Claims

#### 1.     Law Enforcement Immunity

Even if Plaintiff's claims were not procedurally barred, Plaintiff's claims must fail as Defendants are immune under the MTCA  Plaintiff has alleged a number of state law claims crouched in terms of negligence and reckless disregard.[89] Foremost, these state law claims are barred by the Police Function Exemption of the MTCA, which provides immunity to a governmental entity and its employees engaged in police protection, "unless the employee acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of injury."[90] Importantly, training police officers and equipping them with police vehicles are "activities relating

---

[86] *Carr v. Town of Shubuta*, 733 So. 2d 261, 263 (Miss. 1999).

[87] *Parker v. Harrison Cty. Bd. of Supervisors*, 987 So. 2d 435, 439 (Miss. 2008).

[88] *Dobbs v. City of Columbus*, 285 So. 3d 1219, 1223 (Miss. Ct. App. 2019).

[89] Compl. **[Doc. 1]** at  ¶¶ 26-28 (Negligent Infliction of Emotional Distress); ¶¶ 29-30 (Reckless Endangerment); ¶¶ 40-46 (Failure in Hiring and to Monitor, Train, Supervise, and Discipline); ¶¶ 47-49 (Reckless Disregard); ¶¶ 50-51 (Respondeat Superioir); ¶¶ 52-54 (Common Law Tort of Outrage).

[90] *Miss. Code Ann*. § 11-46-9(1)(c).

14

to police protection" entitled to police-protection immunity.[91] Essentially, §11-46-9(1)(c) provides two avenues of immunity: (1) if the Plaintiff was engaged in criminal activity at the time of the incident in question, the Defendants are immune from suit, and; (2) even if the Plaintiff was not engaged in criminal activity, if no officer acted with reckless disregard for safety and well-being, then the Defendants are immune from suit.[92]

Reckless disregard has been defined by the Mississippi Supreme Court as "willful or wanton conduct which requires **knowingly and intentionally** doing a thing or wrongful act."[93] Furthermore, reckless disregard is generally "accompanied by a conscious indifference to consequences, amounting almost to a **willingness** that harm should follow."[94] Reckless disregard "requires more than a showing of **mere negligence.**"[95] Furthermore, reckless disregard is a "higher standard than gross negligence by which to judge the conduct of officers."[96]

Under the MTCA, a plaintiff cannot meet their burden of establishing reckless disregard by merely showing that law enforcement officers could or should have done something different.[97] Indeed, a finding of negligence or even gross negligence is insufficient to overcome this immunity.[98]

---

[91] *City of Clinton v. Tornes*, 252 So. 3d 34, 39 (Miss. 2018) (internal citations omitted).

[92] *Estate of Williams v. City of Jackson,* 844 So.2d 1161, 1164 (Miss. 2003).

[93] *Lascola v. Barden Miss. Gaming LLC*, 349 F. App'x 878, 886 (5th Cir. 2009) (per curiam) (quoting *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999)) (emphasis added).

[94] *Id.* (quoting *Maye v. Pearl River County*, 758 So.2d 391, 394 (Miss. 1999)) (emphasis added).

[95] *Bonner v. McCormick,* 827 So.2d 39, 41 (Miss. Ct. App. 2002)(emphasis added).

[96] *City of Jackson v. Lipsey*, 834 So.2d 687, 691 (Miss. 2003).

[97] *Floyd v. Tunica Cty*., 333 So. 3d 864, 876 (Miss. App. 2022) (citing *Collins v. Tallahatchie County,* 876 So. 2d 284, 288 (¶11) (Miss. 2004)).

[98] *Phillips v. City of Oxford,* 368 So. 3d 317, 324 (Miss. 2023) (quoting *City of Vicksburg v. Williams*, 294 So. 3d 599, 601-02 (¶ 15) (Miss. 2020)).

"In the context of the statute, reckless must connote 'wanton or willful,' because immunity lies for negligence."[99] The terms "reckless," "willful," and "wanton" refer to conduct that "is so far from a proper state of mind that it is treated in many respects as if *harm was intended*."[100] "'[W]antonness is a failure or refusal to exercise **any care**, while negligence is a failure to exercise due care.'"[101]

Courts must consider the totality of the circumstances to determine whether an officer's conduct constituted reckless disregard.[102] In doing so, the "'nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions.'"[103] Stated differently, the reasonableness of the officers' actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[104] Officer Capers undisputably was acting within the course and scope of his employment and was engaged in the performance and execution of police protection duties at all relevant times.[105] Thus, in order to establish reckless disregard, Plaintiff "must show facts from which a trier of fact could conclude that: (1) [Officer Capers'] conduct created an unreasonable risk; (2) this risk included a high probability of harm; (3) [Officer Capers] appreciated

---

[99] *City of Jackson v. Johnson*, 343 So. 3d 356, 385 (Miss. 2022) (quoting *City of Jackson v. Lipsey*, 834 So. 2d 687, 691-92 (Miss. 2003)).

[100] *City of Jackson v. Gardner*, 108 So.3d 927, 929 (Miss. 2013) (citing *Maldonado*, 768 So.2d at 910 (emphasis removed) (quoting *Maye,* 758 So.2d at 394)).

[101] *Phillips*, 368 So. 3d at 324 (¶23) (quoting *Maldonado,* 768 So. 2d at 910 (¶ 8)).

[102] *Lascola*, 349 F. App'x at 886 (citing *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008)).

[103] *Hinds Cty. v. Burton,* 187 So. 3d 1016, 1022 (Miss. 2016) (quoting *Phillips v. Miss. Dep't of Pub. Safety,* 978 So. 2d 656, 661 (Miss. 2008)) (other internal citations omitted).

[104] *Id.* (quoting Phillips, 978 So. 2d at 661) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989))).

[105] Compl. **[Doc. 1]**, at ¶¶ 18 & 51.

16

the unreasonable risk; and (4) [Officer Capers] deliberately disregarded that risk, evincing 'almost a willingness that harm should follow.'"[106]

Even if an officer later learns he was mistaken, there is no reckless disregard when the officer's conduct was a reasonable reaction to what he perceived to be a potentially dangerous situation.[107] Domestic violence calls, by their very nature, are volatile, emotionally charged, and unpredictable. The Fifth Circuit, along with other circuits, has recognized that "domestic disputes often involve high emotions and can quickly escalate to violence[,]"[108] and as officers are well aware that "more [of their colleagues] are killed or injured on domestic violence calls than on any other type of call[,]"[109] officers responding to a domestic violence call "understand that violence may be lurking and explode with little warning."[110]

Considering the totality of the circumstances as they were known at the time, Officer Capers simply did not act in reckless disregard for Plaintiff's safety. First, Officer Capers was responding to a domestic violence call, which by its very nature posed an unpredictable and volatile situation, at the dark hour of 4 a.m.[111] The 911 caller never stated that children were present in the residence; rather, her statements reasonably conveyed that only two individuals were present in the home:

---

[106] *Vo v. Hancock County,* 989 So. 2d 414, 417 (Miss. Ct. App. 2008).

[107] *See Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. App. 2008).

[108] *United States v. Rodriguez*, 601 F. 3d 402, 408 (5th Cir. 2010).

[109] *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal citation omitted).

[110] *Marquez v. City of Phx.*, No. 10-17156, 2012 U.S. App. LEXIS 19048, at *18 (9th Cir. Sep. 11, 2012) (quoting *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal quotation marks omitted)).

[111] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 1-3; Exhibit "K," IPD Documents (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 3.

Nakala Murry and John Nolden.[112] Even upon exiting the residence, Ms. Murry <u>never</u> informed Officer Capers nor Officer Webb that any children were present nor that anyone other than the suspect, Nolden, was within the residence.[113] Rather, when Officer Capers asked Ms Murry where the suspect was located, Ms Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her, and, moments later, Ms. Murry stated that the suspect was in the back room.[114]

Thus, when the individual ran directly at Officer Capers from the back room where he had been informed the suspect was located, the only reasonable inference in that moment was that the suspect was charging at him - a suspect with a violent criminal history who was engaged in violent criminal activity at that time and had attempted to prevent the victim from exiting the residence. Based on the information known by the officers at the time, the circumstances presented to Officer Capers in that moment were (1) an unpredictable, volatile domestic violence situation where the suspect attempted to prevent the victim from escape and the victim consented to officers kicking in her front door in order to reach her;[115] (2) the suspect had prior history of violence, including disputes at this same address with the same victim and including disputes involving weapons;[116] (3) no other

---

[112] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 3-4.

[113] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Exhibit "E," Body Camera Footage, at 0:03:43-0:04:03; Answer **[Doc. 19]** at 3-4.

[114] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

[115] Exhibit "E," Body Camera Footage, at 0:03:39; Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 1-3; Exhibit "K," IPD Docs. (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 3.

[116] Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); Exhibit "D," IPD Incident Report for 11-7-20 (BS 81-83);  Exhibit "C," Arrests Reports and Call Log (BS 29-33), at 3; Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 1-14; Answer **[Doc. 19]** at 1 & 3-4.

individuals were inside the residence other than the suspect, least of all any children;[117] and, (4) an individual was charging at him in a dark house from the reported location of the violent suspect.[118]

Therefore, there is no evidence that Officer Capers intended to shoot A.M.; indeed, there is overwhelming evidence that he did not. Officer Capers was not aware that anyone other than the suspect was within the residence. With just a split-second to react, Officer Capers pulled the trigger on his firearm, not knowing whether it would hit the subject or not.[119] Because Officer Capers reasonably believed it was the suspect charging him, the shooting of A.M. can only be deemed unintentional. Thus, Officer Capers could not have acted with reckless disregard towards A.M. because he could not have met the standard of "willful or wanton conduct" as it "requires knowingly or intentionally doing a thing or wrongful act."[120]

"By requiring a finding of 'reckless disregard of the safety and well-being of others,' the Legislature set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties."[121] Reckless disregard requires "knowingly and intentionally doing a thing or wrongful act," which "means actual knowledge on the part of the [officer][.]"[122] Accordingly, there can be no reckless disregard where

---

[117] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3;  Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 3-4

[118] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at  pg. 2 & 3;  Exhibit "E," Body Camera Footage, at 0:03:42 & 0:04:05; Answer **[Doc. 19]** at 2-3.

[119] Exhibit "B," IPD Incident Report (BS 72-75), at 3.

[120] *City of Jackson v. Gray,* 72 So. 3d 491, 496 (Miss. 2011) (citing *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009)).

[121] *City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010)).

[122] *Beta Beta Chapter of Beta Theta Pi Fraternity v. May*, 611 So. 2d 889, 895 (Miss. 1992) (quoting *Raney v. Jennings*, 248 Miss. 140, 147, 158 So. 2d 715, 718 (1963)); *see also, City of Jackson v. Sandifer*, 107 So. 3d 978, 988 (Miss. 2013).

an officer lacked knowledge of a person's status because the officer consequently could not have "knowingly and intentionally committed a wrongful act" amounting to a "willingness that harm should follow" to that person.[123] Under the reckless disregard standard, accidental or unintentional conduct by an officer is insufficient to overcome immunity.[124] Indeed, where an officer that discharged his weapon did not intend to shoot the plaintiff specifically, there is simply no reckless disregard as the conduct could only be deemed accidental and negligent at best.[125]

Furthermore, in the similar case of *Hinds County v. Burton*, the Mississippi Supreme Court determined that an officer did not act in reckless disregard where the officer intended to shoot at an armed suspect but inadvertently hit the plaintiff.[126] In *Burton*, the Court considered the fact that the officer had to make a split-second decision and took into account the factors the officer was confronted with, such as the officer's reasonable belief that he and others were in immediate danger.[127] Citing other cases where officer conduct was deemed objective reasonable in the accidental shooting context, the *Burton* Court accordingly held that the reckless disregard standard was not met by the accidental yet reasonable conduct at hand.[128]

---

[123] *See City of Jackson v. Sandifer*, 107 So. 3d 978, 988 (Miss. 2013).

[124] *Scott*, 997 So. 2d at 276; *Buchanan v. Gulfport Police Dep't*, No. 1:08CV1299LG-RHW, 2012 U.S. Dist. LEXIS 73095, at *39-40 (S.D. Miss. May 25, 2012)*; Coleman v. Marion Cty.*, No. 2:14cv185-, 2015 U.S. Dist. LEXIS 115588, at *30-31 (S.D. Miss. Aug. 31, 2015).

[125] *Baskin v. City of Hous.*, No. 1:07CV58-SA-JAD, 2008 U.S. Dist. LEXIS 82455, at *7-8 (N.D. Miss. Oct. 16, 2008) *aff'd* 378 F. App'x 417 (5th Cir. 2010).

[126] *Hinds Cty. v. Burton,* 187 So. 3d 1016, 1023 (Miss. 2016).

[127] *Id.*

[128] *Id.* at 1022 (citing *Elkins v. McKenzie*, 865 So. 2d 1065, 1088 (Miss. 2003) (holding that an officer's use of deadly force was objectively reasonable when his life and the lives of others were in immediate danger even though the officer discharged his weapon while innocent bystanders were present in the house without his knowledge); *Stroik v. Ponseti*, 35 F. 3d 155, 156 (5th Cir. 1994) (finding an officer's actions were objectively reasonable when the officer accidentally shot the unarmed victim of a

Furthermore, where an officer's conduct was objectively reasonable, a plaintiff simply cannot make the showing of reckless disregard required under the MTCA.[129] Any reasonable officer in Officer Capers' position would have objectively believed that the suspect with a violent criminal history was charging at him, that the suspect posed a serious threat to the officers as well as the victim through that conduct, and would have reacted similarly. Numerous cases have established that an objectively reasonable officer could believe that a subject suddenly charging at him in the dark posed a threat of serious harm.[130] Importantly, "[l]iability for the officer does not turn on where [the subject] might have planned to run after reaching [the officer]" but instead "turns on objective reasonableness based on what the officer saw."[131] Officer Capers' conduct was a reasonable reaction to what any officer would perceive to be a potentially dangerous situation under the circumstances. Such conduct cannot constitute reckless disregard.[132]

Moreover, an officer's conduct simply cannot amount to reckless disregard where they exercise *any* care,[133] and Officer Capers continuously acted with care during the subject incident.[134]

---

carjacking rather than the actual perpetrator).

[129] *O'Hara v. Petal Police Dep't,* 260 F. App'x 632, 634 (5th Cir. 2007) (citing *Miss. Code Ann.* § 11-46-9(1)(c)).

[130] *See e.g., Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017); *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011); *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2020 U.S. Dist. LEXIS 200586, at *12-13 (S.D. Miss. Oct. 28, 2020), *aff'd,* No. 20-61101, 2022 U.S. App. LEXIS 6577 (5th Cir. Mar. 15, 2022); *Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018).

[131] *Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017).

[132] *See e.g., Scott v. City of Goodman,* 997 So. 2d 270, 277 (Miss. Ct. App. 2008).

[133] *Phillips*, 368 So. 3d at 324 (¶23) (quoting *Maldonado,* 768 So. 2d at 910 (¶ 8)).

[134] Officer Capers announced his presence, gave numerous warnings and commands, waited until Ms Murry had reached a point of safety before entering, and proceeded into the residence slowly and cautiously with his flashlight. *See* Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; Exhibit "E," Body Camera Footage, at 0:03:45, 0:03:48, 0:03:51, 0:03:54, & 0:04:03.

As Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, Officer Capers clearly did not act with reckless disregard. Accordingly, Plaintiff's claims of Negligent Infliction of Emotional Distress, Reckless Endangerment, Reckless Disregard, Respondeat Superioir Negligence, and the Common Law Tort of Outrage must fail.[135] Dismissal is proper.

### 2.    Discretionary Immunity

Plaintiff's claims are also barred by discretionary immunity under the <u>Mississippi Tort Claims Act</u>. Pursuant to *Miss. Code Ann*. §11-46-9(1)(d) (Rev. 2002), a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . ." In cases involving law enforcement, consideration of discretionary immunity is appropriate in the alternative to immunity under *Miss. Code Ann*. §11-46-9(1)(c).[136]

The Mississippi Supreme Court has established that "a duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the governmental entity or its employee."[137] This is contrasted with a ministerial duty that is "positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment."[138] To determine if actions are covered by discretionary-function immunity, courts apply

---

[135] *Buchanan v. Gulfport Police Dep't*, No. 1:08CV1299LG-RHW, 2012 U.S. Dist. LEXIS 73095, at *45 (S.D. Miss. May 25, 2012).

[136] *See Morton v. City of Shelby*, 984 So. 2d 323, 336 n.5 (Miss. App. 2007).

[137] *Miss. Transp. Comm'n vs. Montgomery*, 80 So.3d 789, 795 (¶19) (Miss. 2012).

[138] *Id*.

the public-policy function test.[139] Its two (2) prongs are as follows: "first, whether the alleged wrongful act involves an element of choice or judgment and, if so, then, second, whether the choice or judgment had a bearing on public policy. Decisions that bear on public policy are decisions made by individuals charged with responsibility for making those decisions that consider economic, political, or social grounds."[140]

Courts have repeatedly held that the manner in which a police department supervises, disciplines, and regulates its police officers is a discretionary function of the government under *Miss. Code Ann.* §11-46-9(1)(d).[141] Furthermore, "the hiring, supervision, and training of employees is a discretionary function subject to immunity."[142] Thus, Plaintiff's claims arising out of the City and Chief Sampson's retention, hiring, supervision and/or training of its employees is subject to the immunity of the discretionary function exemption found in Section 11-46-9(1)(d) of the MTCA.[143] Moreover, the City of Indianola and Chief Sampson are also immune from any argument that they should have enacted different practices or procedures.[144]

---

[139] *Smith v. Mississippi Transportation Commission*, 292 So.3d 231, 233–34 (Miss. 2020); *Wilcher v. Lincoln County Board of Supervisors and City of Brookhaven, Mississippi*, 243 So.3d 177, 181 (Miss. 2018).

[140] *Smith,* 292 So.3d at 233-34 (citing *Wilcher*, 243 So. 3d at 182)(citing *United States v. Gaubert*, 499 U.S. 315, 335, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)).

[141] *See e.g., Young v. Isola*, 708 F. App'x 152, 157 (5th Cir. 2017) (per curiam) (quoting *City of Jackson v. Sandifer*, 107 So. 3d 978, 987 (Miss. 2013) (quoting *City of Jackson v. Powell*, 917 So. 2d 59, 74 (Miss. 2005))).

[142] *Miller v. City of Leland,* No. 4:18-CV-254-DMB-JMV, 2020 U.S. Dist. LEXIS 55970, at *9 (N.D. Miss. Mar. 31, 2020) (citing *City of Clinton v. Tornes,* 252 So. 3d 34, 39-40 (Miss. 2018); *see also, Bailey v. City of Pearl*, 282 So.3d 669, 677 (Miss. Ct. App. 2019).

[143] *See Miss. Code Ann*. § 11-46-9(1)(d).

[144] *Miss. Code Ann.* §11-46-9(1)(e)(1999)(immunity for failure to enact of policy, ordinance or regulation).

Additionally, discretionary immunity is proper for the judgments made by Officer Capers when faced with a clear danger to the public. Because of the unpredictable, volatile nature of domestic violence calls, police officers are given a considerable amount of discretion in responding to and resolving domestic disputes.[145] Actions taken in responding to the subject 911 call, such as how Officer Capers investigated the incident and attempted to locate the suspect within the residence, are shielded by discretionary immunity.[146] Plaintiff does not allege that Officer Capers violated any specific statute or ministerial duty. No statute, rule, nor regulation dictated how Officer Capers should have responded in mere seconds when he believed a violent and potentially armed suspect was charging him.[147] All of the actions by the Defendant Officer here were made in a split-second pursuant to his discretion in how he responded to and investigated the 911 call as well as how he responded to an individual charging at him in a dark room from the violent suspect's reported location.[148] Accordingly, Plaintiff's state law claims all must fail.

### C. Plaintiff's Remaining State Claims Fail as a Matter of Law

Plaintiff's remaining claims of civil assault and battery, intentional infliction of emotional distress, abuse of process, and common law tort of outrage must also fail. As to the City of Indianola,

---

[145] *Mata v. City of Kingsville*, 275 F. App'x 412, 416 (5th Cir. 2008) (citing *Shipp v. McMahon*, 234 F.3d 907, 914 n.5 (5th Cir. 2000), *overruled in part on other grounds by, McClendon v. City of Columbia*, 305 F.3d 323, 328-29 (5th Cir. 2002) (en banc)).

[146] *Gatheright v. Barbour*, No. 3:16-cv-00003-GHD-RP, 2017 U.S. Dist. LEXIS 18158, at *27 (N.D. Miss. Feb. 7, 2017) (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 444 (5th Cir. 2015); *Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008)).

[147] *Butler v. Prescott*, No. 1:91cv245-D-D, 1994 U.S. Dist. LEXIS 21209, at *10-11 (N.D. Miss. Dec. 9, 1994) ("An officer, in conducting any arrest, has discretion to determine the amount and type of force necessary to properly effectuate the exertion of restraint over the arrestee.").

[148] *See McAllister v. Desoto Cty*., 470 F. App'x 313, 317 & 321 (5th Cir. 2012) (affirming grant of discretionary immunity to officers as their the investigative decisions arose "from the performance of discretionary functions and involve[d] profoundly difficult policy or judgment considerations.").

these claims must be dismissed outright as the MTCA explicitly provides that "a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense[.]"[149] Officer Capers is also entitled to protection under the MTCA for Plaintiff's remaining state claims.

The MTCA states that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."[150] Plaintiff's Complaint states, unequivocally, that "Defendant Officer Capers was in the course and scope of his employment with Defendant City, at all relevant times[.]"[151] As such, Plaintiff's remaining claims should be dismissed outright - Plaintiff cannot claim on one hand that Officer Capers was on duty, and on the other, that he was acting outside the course and scope of his employment.

In recent decisions, other courts have warned against plaintiffs trying to "have the best of both worlds[.]"[152] Plaintiff must choose whether she is suing the City under state law or the individual defendant – she cannot bring claims against both.[153] Indeed, there is a "rebuttable presumption" that a given act by an employee taken within the time and at the place of employment

---

[149] *Miss. Code Ann.* § 11-46-5(2).

[150] *Miss. Code Ann.* §11-46-7(2).

[151] Compl. **[Doc. 1]** at ¶¶ 18 & 51.

[152] *See Hawkins v. City of Lexington*, No. 3:19-cv-00606-DPJ-FKB at Doc. No., pp.12-13 (S.D. Miss. July 9, 2021) ("So either the officers acted within the course and scope of their employment – in which case there are no individual-capacity claims – or they acted outside the course and scope of their employment, in which case the City of Lexington maintains sovereign immunity.").

[153] *Id.*

is within the course and scope of his employment.[154] Here, Plaintiff's Complaint only alleges actions

by Officer Capers that took place within the time and at the place of his employment.[155] As such,

Plaintiff's claims for individual liability against Officer Capers are barred by the MTCA.[156]

Additionally, while the MTCA provides an exception for acts of "malice," Plaintiff cannot

show malice on the part of Officer Capers. Plaintiff's mere conclusory allegations and unsupported

speculations of malice are precisely the type which cannot survive Defendants' Motion.[157] In fact,

the entirety of Plaintiff's claims are crouched in terms of negligence and lack of reasonable care.[158]

Where, like here, the claims fail to even establish reckless disregard, the alleged conduct cannot

constitute either malice or any criminal offense, requiring dismissal of the individual capacity

claims.[159]

Similarly, Plaintiff's individual capacity claims against Chief Sampson must fail. Just as with

Officer Capers, Plaintiff's Complaint provides that Chief Sampson was solely acting in the course

and scope of his employment with the City of Indianola, alleging that "[a]t all times herein,

---

[154] *Miss. Code Ann*. §11-46-7(7); *Hearn v. Bd. of Sup'rs of Hinds Cty., Miss*., 575 Fed.Appx. 239, 243 (5th Cir. 2014) (per curiam) (citing the aforementioned provisions).

[155] *See generally,* Compl. **[Doc. 1].**

[156] *Hawkins v. City of Lexington*, No. 3:19-cv-00606-DPJ-FKB at Doc. No., pp.12-13 (S.D. Miss. July 9, 2021); *Borgognoni v. City of Hattiesburg*, 2015 U.S. Dist. LEXIS 157619, *36-37 (S.D. Miss. March 31, 2015) (dismissing intentional torts of assault, battery, and IIED under the MTCA as inapplicable to individual officers in their official capacities).

[157] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

[158] *See e.g.,* Compl. **[Doc. 1]** at ¶¶ 32-34 (alleging Officer Capers conduct as being "negligent, grossly negligent, and/or reckless in asserting a claim of Civil Assault and Battery), ¶42, and ¶ 51 ("Defendant city is liable for the **negligence** of its employee Officer Capers").

[159] *See e.g., Coleman v. Marion Cty.,* No. 2:14cv185-, 2015 U.S. Dist. LEXIS 115588, at *31 (S.D. Miss. Aug. 31, 2015); *Buchanan v. Gulfport Police Dep't,* 530 F. App'x 307, 312 (5th Cir. 2013)*; Moore v. Carroll Cty*., 960 F. Supp. 1084, 1089 (N.D. Miss. 1997).

Defendant Chief was the commanding officer."[160] As the MTCA clearly states "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties,"[161] Plaintiff's individual capacity claims against Chief Sampson must be dismissed.

### D. Plaintiff's Claims For Miscellaneous Relief Are Barred by the MTCA.

To the extent Plaintiff is requesting a jury trial, attorney's fees, joint and several liability, or punitive damages under State law, such requests are barred by the MTCA. To the extent Plaintiff demands a jury trial as to her state law claims, even if the same were viable, a bench trial is required.[162] In particular, the MTCA provides that the "judge of the appropriate court shall hear and determine, **without a jury** any suit filed under provisions of this chapter."[163]

Plaintiff also makes general allegations regarding attorney's fees and punitive damages; however, the MTCA prohibits the same. Specifically, *Miss. Code Ann.* § 11-46-15 provides that no judgment against a governmental entity or its employee "shall include an award for exemplary or **punitive damages or for interest prior to judgment, or an award of attorney's fees** unless attorney's fees are specifically authorized by law."[164] There is also no such thing as joint and several liability under the MTCA.[165] Even if Plaintiff's state law claims were not barred by the notice requirements of §11-46-11, the police function exemption, or the discretionary immunity exceptions

---

[160] Compl. **[Doc. 1]** at ¶¶ 19.

[161] *Miss. Code Ann.* §11-46-7(2).

[162] *See, Miss. Code Ann.* § 11-46-13.

[163] *Miss. Code Ann.* § 11-46-13(1)(emphasis added).

[164] *Miss. Code Ann*. § 11-46-15(2)(emphasis added).

[165] *See Miss. Code Ann*. §85-5-7(6).

of the MTCA, attorney's fees, joint and several liability claims, and punitive damages remain unavailable to Plaintiff. These claims must be dismissed.

## V. CONCLUSION

For the reasons stated hereinabove and in their Motion for Judgment on the Pleadings, or Alternatively for Summary Judgment, as to Plaintiff's State Law Claims, Defendants respectfully request this Court dismiss all of Plaintiff's state law claims under *Fed. R. Civ. P.* 12(c).

**RESPECTFULLY SUBMITTED,** this the 10th day of November, 2023.

**JACKS GRIFFITH LUCIANO, P.A.**

By:    /s/ ***M. Mckenzie W. Price***
M. Mckenzie W. Price, MS Bar No. 106538
Daniel J. Griffith, MS Bar No. 8366
Mary McKay Griffith, MS Bar No. 100785
Attorneys for Defendants City of Indianola, Mississippi; Chief Ronald Sampson, in his Individual and Official Capacity; and, Officer Greg Capers, in his Individual and Official Capacity

Of Counsel:

**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Street
P.O. Box 1209
Cleveland, MS 38732
Phone: (662) 843-6171
Fax: (662) 843-6176
Email: mprice@jlpalaw.com
      dgriffith@jlpalaw.com
      mgriffith@jlpalaw.com


Kimberly J. Merchant, Esq.
549 South Washington Ave.
Greenville, MS 38701
Cell: (662) 347-3921

Work: (662) 577-4527
Email: kimjmerchant@gmail.com
City Attorney

## CERTIFICATE OF SERVICE

I, M. Mckenzie W. Price, attorney of record for Defendants, City of Indianola, Mississippi, Chief Ronald Sampson, in his Individual and Official Capacity, and, Officer Greg Capers, in his Individual and Official Capacity, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Defendants' Memorandum of Authorities in Support of Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment, as to Plaintiff's State Claims* to be delivered by the ECF Filing System to the following:

Carlos E. Moore, Esq.
The Cochran Firm - MS Delta
Email: cmoore@cochranfirm.com
**Attorney for Plaintiff**

**DATED** this 10th day of November, 2023.

/s/ *M. Mckenzie W. Price*
M. Mckenzie W. Price

29