**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**NAKALA MURRY, INDIVIDUALLY AND
ON BEHALF OF HER SON, A.M., A MINOR**                                **PLAINTIFF**

**v.**                                **CIVIL ACTION NO.: 4:23CV97-DMB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI; CHIEF
RONALD SAMPSON, In His Individual and
Official Capacity; OFFICER GREG CAPERS,
In His Individual and Official Capacity; and,
JOHN DOES 1-5, In Their Individual and
Official Capacities**                                **DEFENDANTS**

<u>**CHIEF RONALD SAMPSON'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY,
FOR SUMMARY JUDGMENT, AS TO PLAINTIFF'S FEDERAL CLAIMS**</u>

     **NOW COMES** Defendant, Chief Ronald Sampson, in his Individual and Official Capacities,

by and through counsel, and respectfully files this, his Memorandum of Authorities in Support of

Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment, as to Plaintiff's

Federal Claims, to-wit:.

**I. PREMISE**

     With no reasonable basis in law or fact, Plaintiff alleges a number of federal law claims

against Defendant Chief Ronald Sampson, in his Individual and Official Capacities, under 42 U.S.C.

§ 1983 predicated on alleged Fourth and Fourteenth Amendment violations. Foremost, under federal

law, Plaintiff's official capacity claims against Chief Sampson are merely duplicative of Plaintiff's

claims against the City of Indianola and should be dismissed. Importantly, however, Plaintiff's

Complaint fails to state a claim for relief that is plausible on its face under §1983 against Chief

Sampson as it is devoid of any factual allegations demonstrating how Chief Sampson caused or was

1

personally involved with any alleged constitutional deprivation. Indeed, Plaintiff's Complaint lacks any allegations of any official policy, custom or practice of the Chief Sampson or the City that served as the moving force behind any alleged constitutional violation.

Furthermore, Plaintiff's Complaint fails to allege any facts sufficient to state a plausible claim against Chief Sampson because there can be no supervisory liability absent a constitutional violation and Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, which does not constitute a constitutional violation under clearly established law. Moreover, Plaintiff's Complaint fails to state a claim against Defendant Chief Sampson, by reason of the fact that Defendant Officer Capers was at all relevant times trained and certified in accordance with State standards, Officer Capers acted within policy, Officer Capers had no prior history of excessive force, and Chief Sampson was not present during any of the events complained of. Finally, Defendant Chief Sampson is entitled to qualified immunity as Plaintiff's allegations do not rise to the level of any constitutional violation and any actions taken by Defendant was objectively reasonably in light of clearly established law. Therefore, as Plaintiff's lack any justifiable basis in law or fact, dismissal is warranted under Rule 12(c) of the *Federal Rules of Civil Procedure*.

## II.    FACTS

According to the Complaint, on or about May 20, 2023, around 4:00 a.m., Plaintiff Murry "received an unexpected visit from an irate father of one of her minor children" while she was at home with her two minor children and her minor nephews.[1] Plaintiff alleges in the Complaint that Plaintiff Murry, fearing for her and the children's safety, instructed her son, Plaintiff A.M., to call

---

[1] Compl. **[Doc. 1]** at ¶ 10.

the police.[2] Thereafter, Officer Capers responded to the scene.[3] Next, according to the Complaint, Officer Capers asked that everyone inside the residence come outside.[4] Plaintiff then alleges that as "Plaintiff A.M. was coming around the corner of the hallway that lead into the living room area, he was instantly shot by Defendant Officer Capers[,]" incurring injuries as a result.[5]

The specific facts of the incident are clarified in Defendants' Answer and the exhibits attached thereto. On Saturday, May 20, 2023, around 4:41 a.m., Officer Webb and Officer Capers received a call from dispatch in regards to a 911 call for a violent domestic disturbance at the Plaintiff's address involving Nakala Murry and John Nolden.[6] Dispatch advised the Officers that the 911 caller had advised that her daughter's boyfriend had jumped her and assaulted her.[7] At no point were the officers informed that children were present at the scene.[8]

Though the IPD officers did not know children were present, they were aware that the Plaintiff's address had been the scene for dozens of violent, and sometimes armed, disputes between Plaintiff Nakala Murry and John Nolden.[9] Indeed, IPD officers had been called out to the Plaintiff's

---

[2] *Id.* at ¶ 11.

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶¶ 14, 16, & 17.

[6] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]**, at 1.

[7] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 1.

[8] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]** at 1, & 3-4.

[9] **[Doc. 31-3]** Exhibit "C," Arrests Reports and Call Log (BS 29-33), at 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71); **[Doc. 31-12]** Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); Answer **[Doc. 19]** at 1 & 3-4.

residence at least fourteen (14) times in the five years preceding the subject incident.[10] In fact, Officer Capers had previously responded to a 911 call at this address for domestic violence.[11] The suspect, John Nolden, had been arrested numerous times for domestic violence, assault, and other violent offenses.[12]

Upon their arrival, the officers noticed that the windows to the residence had blackout screens preventing them from seeing inside.[13] Officer Capers radioed dispatch and asked who the 911 caller was, and dispatch responded the caller was Nakala Murry.[14] Officer Capers approached the front door and knocked multiple times.[15] Receiving no response, Officer Capers noted that something was not right and began checking the exterior of the darkened house.[16] While doing so, Officer Capers maintained communications with dispatch, requesting that dispatch get the caller back on the line and inform her that the officers were outside.[17] Upon communication with the caller, dispatch relayed

---

[10] **[Doc. 31-3]** Exhibit "C," Arrests Reports and Call Log (BS 29-33), at pg. 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71); **[Doc. 31-12]** Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 11-12, 13, 14-15, & 20-21; Answer **[Doc. 19]** at 1.

[11] **[Doc. 31-4]** Exhibit "D," IPD Incident Report for 11-7-20 (BS 81-83); Answer **[Doc. 19]** at 1-2.

[12] **[Doc. 31-9]** Exhibit "I," IPD Arrest Reports Nolden (BS 19-28); **[Doc. 31-10]** Exhibit "J," IPD Municipal Court Abstracts Nolden (BS 15-18); Answer **[Doc. 19]** at 2.

[13] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[14] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:00:50-0:00:59); Answer **[Doc. 19]** at 2.

[15] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:03, 0:01:22, 0:01:50, 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[16] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:50, 0:02:03 (Officer Capers stating, "Something ain't right."), 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[17] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:34; Answer **[Doc. 19]** at 2.

Ms. Murry's statements that she heard the officers at the door and that the suspect would not allow her to answer the door.[18] Officer Capers asked if they had permission to kick in the door, to which dispatch responded, upon communication with the caller, that Ms. Murry gave them consent to kick it in.[19] Dispatch also informed the officers that Ms. Murry stated she did not know if the suspect was armed.[20] Ms. Murry could be heard screaming from within the residence, yelling "let me go!"[21] At that time, Officer Webb and Officer Capers drew their firearms.[22]

After multiple failed attempts to kick in the door, Ms. Murry opened it.[23] Officer Capers asked Ms Murry where the suspect was located.[24] Ms Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her.[25] Officer Webb told Ms. Murry to step outside and away from the door.[26] Ms. Murry then

---

[18] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:02:25; Answer **[Doc. 19]** at 2.

[19] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:02:42 & 0:03:22; Answer **[Doc. 19]** at 2.

[20] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[21] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:34; Answer **[Doc. 19]** at 2.

[22] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:37; Answer **[Doc. 19]** at 2.

[23] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:39; Answer **[Doc. 19]** at 2.

[24] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:41; Answer **[Doc. 19]** at 2.

[25] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

[26] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:43; Answer **[Doc. 19]** at 2.

stated that the suspect was in the back room.[27] Next, Officer Capers stepped onto the threshold of the house with his flashlight providing the only light inside the residence.[28] Officer Capers and Officer Webb yelled "police" and ordered the suspect to come out multiple times.[29]

Suddenly, a male in a red shirt ran directly towards Officer Capers from the room where Ms. Murry stated that the suspect was located.[30] Officer Capers discharged his firearm, striking the individual charging towards him.[31] Moments later, Officer Capers learned for the first time that the individual in the red shirt appeared to be a child and exclaimed "Oh my God" as he helped the child exit the house.[32] This individual continued to run to the side of the road.[33] Both Officer Capers and Officer Webb immediately requested that dispatch send Med-Stat to the location, with Officer Capers stating "Med-Stat! Med-Stat! Med-Stat! Med-Stat! Med-Stat! We need them now!"[34] Both officers immediately ran to render aid to this individual, who they then learned for the first time was

---

[27] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[28] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:03; Answer **[Doc. 19]** at 2.

[29] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:45, 0:03:48, 0:03:51, 0:03:54, & 0:04:03; Answer **[Doc. 19]** at 2.

[30] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:05; Answer **[Doc. 19]** at 2-3.

[31] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:06; Answer **[Doc. 19]** at 2-3.

[32] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:07-0:04:10; Answer **[Doc. 19]** at 3.

[33] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:10-0:04:18; Answer **[Doc. 19]** at 3.

[34] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:12-0:04:19; Answer **[Doc. 19]** at 3.

Ms. Murry's minor child, A.M.[35] The suspect, John Nolden, then exited the house and was placed in handcuffs.[36] Nolden was arrested for domestic violence at the scene.[37] Officer Capers was visibly upset about the entire unexpected ordeal.[38]

Thereafter, on May 22, 2023, Plaintiff Nakala Murry caused a notice of claim letter to be sent to the City of Indianola and Chief Sampson alleging "injuries and damages sustained on May 22, 2023."[39] On May 25, 2023, Ms. Murry pressed charges against John Nolden for simple assault related to the subject incident due to him threatening to kill her that evening.[40] On May 30, 2023, Plaintiff Murry filed her Complaint in the instant matter, asserting a number of claims under state and federal law against the City of Indianola, Chief Sampson, in his Individual and Official Capacities, and Officer Capers, in his Individual and Official Capacities.[41] Then, on June 5, 2023, Plaintiff Murry also pressed charges against Officer Capers for the subject incident.[42]

### III. STANDARD

---

[35] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:20; Answer **[Doc. 19]** at 3.

[36] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:41; Answer **[Doc. 19]** at 3.

[37] **[Doc. 31-11]** Exhibit "K," IPD Docs (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

[38] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75) at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:20- 0:04:51 (repeating "Oh my God" and calling for Med-Stat); Answer **[Doc. 19]** at 1-4.

[39] **[Doc. 31-1]** Exhibit "A," Notice of Claim Letter, Exhibit "A," to Answer **[Doc. 19-1],** at 1.

[40] **[Doc. 31-11]** Exhibit "K," IPD Docs (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

[41] Compl. **[Doc. 1].**

[42] **[Doc. 31-2]** Exhibit "B," to Motion to Stay **[Doc. 20]**, General Criminal Affidavit on Capers, at 1.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for addressing a motion for judgment on the pleadings under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12(b)(6).[43] Thus, to survive Defendants' Motion, Plaintiff's Complaint must provide the grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level."[44] The Complaint must allege "sufficient factual matter…to state a claim that is plausible on its face."[45] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46] A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct."[47]

Under Rule 12(c), like Rule 12(b)(6), the central question is whether the Complaint includes claims that are plausible.[48] Accordingly, the legal claims identified in the Complaint must be compared with the factual allegations offered in support, including any exhibits attached to the Complaint and Answer.[49] "In considering a motion for judgment on the pleadings under Rule 12(c),

---

[43] *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010).

[44] *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)).

[45] *Thombly*, 550 U.S. at 570.

[46] *Id*. at 556.

[47] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

[48] Twombly, 550 U.S. at 555.

[49] *Olivier v. City of Brandon*, No. 3:21-cv-00636-HTW-LGI, 2022 U.S. Dist. LEXIS 196233, at *19-20 (S.D. Miss. Sep. 23, 2022) (citing *Iqbal*, 556 U.S. at 678).

the court is generally limited to the contents of the pleadings, including attachments thereto. The 'pleadings' include the complaint [and] answer to the complaint[.]"[50]

As all of Plaintiff's allegations against Defendants are based upon the force that was used in responding to a 911 call and effectuating the related arrest on May 20, 2023, this Court "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[51] As provided by the Fifth Circuit, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[52] "When documents of public record reveal that a plaintiff's complaint is not plausible, a court is not required to consider a motion to dismiss as one for summary judgment."[53] Both the incident reports related to the subject 911 call and related arrest reports as well as similar prior incident reports, arrest reports, and court abstracts involving the same parties to the instant incident are the central to the allegations of Plaintiff's Complaint and are matters of public record[54] proper for consideration on the instant motion that clearly reflect that Plaintiff fails to state a plausible claim.[55]

---

[50] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

[51] *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).

[52] *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (per curiam) quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

[53] *Martin v. Rainbow Casino*, No. 5:11-CV-142 DCB RHW, 2012 WL 1883673, at *1 (S.D. Miss. May 22, 2012)(quoting *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986)).

[54] The Complaint refers to the 911 due to Nolden's criminal conduct towards Ms. Murry, which incorporates any documents related to such. Incident reports, arrest reports, and 911 call recordings are matters of public record as defined by *Miss. Code Ann*. § 25-61-3(b)&(e) and are not excluded from public disclosure by *Miss. Code Ann*. § 25-61-12(c).

[55] *Armstrong v. Ashley*, 60 F.4th 262, 272 n.10 (5th Cir. 2023) (citing *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (police report was proper for consideration on Rule 12(c) Motion); *Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18 (S.D. Miss. Sep. 14, 2021) (citing *Johnson-Williams v. Citimortgage, Inc*., 750 F. App'x 301, 304 (5th Cir. 2018) (arrest records were

Moreover, the body camera footage from May 20, 2023, is central to Plaintiff's Complaint and is proper for consideration on a motion to dismiss or motion for judgment on the pleadings.[56] Because video evidence is available, Fifth Circuit jurisprudence requires this Court to "view the facts in the light depicted by the videotape."[57] "In such an instance, the court is not required to favor plaintiff's allegations over the video evidence."[58] Instead, where the video contradicts Plaintiff's version of the incident, courts credit the facts evidenced on video.[59] Indeed, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."[60] Likewise, as the 911 call is referenced in and central to Plaintiff's Complaint, it too may be properly considered for the instant motion.[61] Regardless, this Court may consider matters outside the pleadings and render summary judgment in the alternative.[62]

---

proper for consideration on Rule 12(c) Motion).

[56] *See e.g., Beroid v. Lafleur*, No. 22-30489, 2023 U.S. App. LEXIS 9644, at *11 (5th Cir. Apr. 21, 2023) (per curiam) (quoting *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); citing *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021)).

[57] *Boyd v. McNamara*, 74 F.4th 662, 665-66 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration omitted)).

[58] *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam) (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

[59] *See e.g., Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 380-81; *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (quoting *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012)).

[60] *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2519, 209 L. Ed. 2d 551 (2021) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

[61] *Beroid*, 2023 U.S. App. LEXIS 9644, at *11-12 (citing *Tucker*, 998 F.3d at 170 (internal quotation marks and citation omitted)).

[62] *See e.g., Bosarge,* 796 F.3d at 440; *Galvan v. Calhoun Cty.,* 719 F. App'x 372, 375 (5th Cir. 2018) (per curiam) (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,* 748 F.3d 631, 635 (5th Cir. 2014)); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

## IV. ARGUMENT

Section 1983 is the procedural avenue Plaintiffs must take to pursue constitutional violations, and the governing legal standards are well settled.[63] Plaintiff asserts the following federal claims in the Complaint under 42 U.S.C. § 1983: (1) Fourth and Fourteenth Amendment violations; and (2) Fourth Amendment excessive force.[64] Plaintiff also asserts a respondeat superior claim and a claim for negligent, grossly negligent, and wanton failure in hiring and to monitor, train, supervise, and discipline, though Plaintiff does not distinguish whether such claims as brought under federal or sate law.[65] Nonetheless, all of Plaintiff's federal claims must fail.

### A.    Plaintiff's Official Capacity Claims Against Chief Sampson are Duplicative

First, Plaintiff's official capacity claims against Defendant Chief Sampson are merely duplicative of Plaintiff's claims against the City of Indianola and should be dismissed. Under federal law, suit against an officer in his official capacity is the same thing as a suit against the municipality.[66] Indeed, "'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[.]'"[67]   Where, like here, both an officer in his official capacity and a municipality are sued, normal practice is to dismiss the official in his official capacity because he

---

[63] *Escamilla v. Elliot*, 816 F. App'x 919, 922-25 (5th Cir. 2020).

[64] **[Doc. 1]** at ¶¶ 21-25.

[65] *Id.* at ¶¶ 40-46 & 50-51.

[66] *Walker v. Howard*, 517 F. App'x 236, 237-38 (5th Cir. 2013) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).

[67] *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))).

is duplicative.[68]   Here, Plaintiff's claims against Defendant Chief Sampson make no distinction between what is asserted against him in his individual capacity versus in his official capacity. Accordingly, all of Plaintiff's claims against Chief Sampson in his official capacity must be dismissed.

### B.      Plaintiff Fails to State Any Plausible Claims Against Chief Sampson

Foremost, Plaintiff's Complaint fails to state any plausible claims whatsoever against Chief Sampson as the Complaint is devoid of any factual allegations demonstrating how Chief Sampson caused or was personally involved in any alleged constitutional deprivation. As this Court well-knows, a defendant, like Chief Sampson, cannot be held liable under § 1983 under a theory of respondeat superior.[69] To state a cause of action under § 1983, the plaintiff "must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."[70]

Plainly, "[p]ersonal involvement is an essential element of a civil rights cause of action."[71] "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

---

[68] *Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001); *Breland v. Forrest Cty. Sheriff's Dep't*, 2013 U.S. Dist. LEXIS 53503, at *12-13 (S.D. Miss. Apr. 15, 2013).

[69] *See e.g., Tomasella v. Kaufman Cty. Child Support,* No. 22-10760, 2022 U.S. App. LEXIS 35011, at *7 (5th Cir. Dec. 19, 2022) (citing *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999)).

[70] *Burris v. Davis*, 642 F. Supp. 2d 573, 578 (S.D. Miss. 2009) (quoting *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992))).

[71] *Wells v. Collier*, 834 F. App'x 949, 950 (5th Cir. 2021) (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)).

12

Constitution."[72] To be sure, "'a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'"[73] An individual supervisory official "may be liable only for implementing a policy that is 'itself [] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'"[74]

Plaintiff's Complaint is devoid of any factual allegations demonstrating how Chief Sampson caused or was personally involved with any constitutional deprivation.[75] Plaintiff does not allege, nor could she, that Chief Sampson was present at the scene of the incident.[76] Nor does Plaintiff allege that Chief Sampson somehow ordered that an individual not known to be present in the residence be shot unintentionally.[77] At most, Plaintiff's Complaint merely alleges that Chief Sampson should be liable because he was the Chief of Police at all relevant times. "That itself renders the complaint insufficient to state a § 1983 claim" against Defendant Chief Sampson.[78]

As Plaintiff does not allege that Chief Sampson was directly involved in the subject incident,

---

[72] *Floyd v. City of Kenner*, 351 F. App'x 890, 897 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009)).

[73] *Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quotation marks and citation omitted)) (alteration removed).

[74] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)) (emphasis added).

[75] *See generally,* Compl. **[Doc. 1].**

[76] *See generally*, Exhibit "E," Body Camera Footage, at 0:00:35-0:5:00 (showing that Chief Sampson was not present on the scene during the subject incident).

[77] *Id. See generally*, Exhibit "E," Body Camera Footage, at 0:00:35-0:5:00 (showing that Chief Sampson never gave any direct commands to Officer Capers or Webb while they were on the scene during the subject incident as to how they should proceed).

[78] *Rios v. City of Del Rio*, 444 F.3d 417, 425 n.9 (5th Cir. 2006).

Plaintiff had to allege that there was some "'sufficient causal connection' between the supervisor's conduct and the constitutional violation."[79] Supervisory liability only exists without overt personal participation in the offensive act "if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"[80] "A policy may be a 'statement, ordinance, regulation, or decision that is officially adopted' by an official who has policymaking authority or a 'persistent, widespread practice' that is not formally authorized but 'is so common and well settled as to constitute a custom that fairly represents ... policy.'"[81] Importantly, knowledge of a custom must be attributable to the policymaker.[82]

This inquiry requires a plaintiff to both show causation and culpability.[83] Furthermore, the "'moving force' inquiry imposes a causation standard higher than 'but for' causation."[84] To establish culpability, if the policy is facially lawful, a plaintiff must also show that the policy maker "promulgated [the policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."[85] Critically, a showing of heightened negligence is

---

[79] *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

[80] *Smith v. Linthicum*, No. 21-20232, 2022 U.S. App. LEXIS 28435, at *10-11 (5th Cir. Oct. 12, 2022) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)); *Gates v. Tex. Dep't of Prot. & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) ("A supervisory official may be held liable . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury.").

[81] *Brown v. Cain*, 546 F. App'x 471, 475 (5th Cir. 2013) (per curiam) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (internal quotation marks and citation omitted)).

[82] *Id.* (citing *Johnson,* 958 F.2d at 94).

[83] *Mason v. Lafayette City-Parish Consol. Gov't,* 806 F.3d 268, 280 (5th Cir. 2015) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

[84] *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)).

[85] *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (quoting *Brown*, 520 U.S. at 407)).

insufficient to show the deliberate indifference needed to prove liability under this standard.[86]

Plaintiff does not identify any specific official policy implemented by Chief Sampson that somehow served as a moving force to their alleged injuries. Indeed, Plaintiff alleges on the one hand that her alleged injuries were the result of some "official policy"[87] but on the other that Defendants "failed to properly follow and/or apply their own city and law enforcement rules, ordinances, regulations, policies, and procedures[.]"[88] Not only do Plaintiff's claims against Chief Sampson thereby fail as Plaintiff's cannot identify such a policy, Plaintiff's claims fail because she cannot meet the rigid "but-for" causation standard to show that some unidentified policy somehow caused the injuries alleged.

In fact, the IPD policies here were clearly constitutional and Officer Capers complied with the policies at all times.[89] First, Officer Capers only used the level of force reasonably necessary pursuant to his discretion based on what was known to him and reasonably perceived by him at the time.[90] "Facts unknown at the time force is used should not be considered later to determine whether the force was justified" under the IPD's Use of Force Policy.[91] Pursuant to the Use of Force Policy, Officer Capers was authorized to use a firearm protect his life and the lives of others at the scene

---

[86] *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (quoting *Brown*, 520 U.S. at 407)).

[87] Compl. **[Doc. 1]** at ¶ 8.

[88] Compl. **[Doc. 1]** at ¶ 41.

[89] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 1-14 (Use of Force Policy, Patrol-2002-30, at 1-10) (Post-Critical/Traumatic Incident Procedures, at 11-14).

[90] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 1-3 (Use of Force Policy, Patrol-2002-30).

[91] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 3 (Use of Force Policy, Patrol-2002-30).

from what he reasonably perceived to be a threat of serious bodily harm or death.[92] Additionally, Officer Capers immediately complied with the IPD's Post Critical/Traumatic Incident Procedures.[93] Thus, Plaintiff's supervisory liability claims against Chief Sampson have no basis in law or fact.

Plaintiff's Complaint also contains the vague, conclusory assertion that "over the course of the past several years, there have been numerous complaints made about incidents of abuse, excessive force, etc. caused by Officer Greg Capers of the Indianola Police Department."[94] Such an unofficial custom must be "so persistent and widespread as to practically have the force of law."[95] Indeed, under the demanding unofficial custom theory, a plaintiff must identify "'sufficiently numerous prior incidents,' as opposed to 'isolated instances[,]'" and those prior incidents must be both similar and specific to the alleged violation in question.[96] Furthermore, to state a viable supervisory liability claim on this basis, "'[a]ctual or constructive knowledge of such custom must be attributable' to the policymaker."[97]

Plaintiff provides no factual allegations to support this assertion nor does Plaintiff allege any causal connection between such unidentified "complaints" with the instant matter. "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation

---

[92] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 3 (Use of Force Policy, Patrol-2002-30).

[93] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 11-14 Post-Critical/Traumatic Incident Procedures).

[94] Compl. **[Doc. 1]** at ¶ 44.

[95] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[96] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

[97] *Armstrong v. Ashley,* 60 F.4th 262, 276 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

16

in question."[98] Accordingly, Plaintiff's allegations do not "demonstrate at least a pattern of similar violations" sufficient to establish the required level of deliberate indifference necessary for supervisory liability against Chief Sampson.[99] "'Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.'"[100] Threadbare assertions that defendants "'continue to violate the Rights of the Plaintiff[]'" or that officers were engaged in some "repeated pattern of criminal injustice" are not sufficient to state a plausible claim under § 1983.[101]

Plaintiff's claims based upon alleged failures to monitor, train, or supervise likewise fail. The Supreme Court has emphasized that "'**culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train**.'"[102] To state a cognizable failure to train or supervise claim against Chief Sampson, Plaintiff had to plead facts plausibly demonstrating that "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"[103] "In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program

---

[98] *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (*quoting McCully ex rel. Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (internal quotations removed)).

[99] *Rios,* 444 F.3d at 427 (quoting *Johnson v. Deep East Texas Regional Narcotics*, 379 F.3d 293, 309 (5th Cir. 2004)).

[100] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc)).

[101] *Moore v. Union Cty.*, No. 3:22CV92-GHD-JMV, 2023 U.S. Dist. LEXIS 27624, at *7-8 (N.D. Miss. Feb. 17, 2023).

[102] *Clyce v. Hunt Cty.*, 515 F. App'x 319, 323 (5th Cir. 2013) (per curiam) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)) (emphasis added).

[103] *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)) (other internal citations omitted).

is defective.'"[104] Similarly, a plaintiff must allege with specificity how the supervision at hand was inadequate.[105]

Moreover, "'[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"[106] "'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[107] Furthermore, deliberate indifference requires Plaintiff to show more than negligence or even gross negligence.[108] "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.'"[109] Instead, "deliberate indifference requires that the Plaintiff show that the failure to train reflects a ***deliberate*** or ***conscious* choice** to endanger constitutional rights."[110]

"To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."[111] Plaintiff has not pointed to any policy or any training program, nor has

---

[104] *Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d at 287, 293 (5th Cir. 2005))).

[105] *See Estate of Davis*, 406 F.3d at 382 n.34 & 383.

[106] *Id.* at 381 (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997)).

[107] *Id.* (quoting *Smith*, 158 F.3d at 912 (internal quotation marks and citations omitted)).

[108] *Id.* (citing *City of Canton*, 489 U.S. at 388; *Doe*, 15 F.3d at 453).

[109] *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

[110] *Id.* at 383 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)) (internal quotations and citations omitted) (emphasis added).

[111] *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017) (quoting *Estate of Davis*, 406 F.3d at 381).

Plaintiff alleged any pattern of similar violations to put Chief Sampson on notice that the training or supervision was inadequate.[112] In order to establish liability for "a theory of deliberate indifference to inadequate supervision, the supervisory officials must have had actual or constructive knowledge of the deficient policy at issue."[113] It is well-established in the Fifth Circuit that where the training of an officer meets state standards, "there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the "usual and recurring situations" faced by jailers and peace officers.'"[114]

Importantly, because Officer Capers was at all relevant times trained and certified in accordance with State standards,[115] Plaintiff cannot meet her required burden on her supervision or training claims.[116] Further, Plaintiff has not plausibly alleged how any such training or supervision actually *caused* the subject injury.[117] Thus, Plaintiff has not plausibly alleged a failure to train or a failure to supervise claim. At most, Plaintiff's Complaint merely sets forth "'a formulaic recitation of the elements of [their] cause of action,'" and "'naked assertion[s]' devoid of 'further factual

---

[112] *See generally,* Compl. **[Doc. 1]**; *Anokwuru*, 990 F.3d at 965 (providing that a plaintiff must plausibly allege deliberate indifference to the need for proper training by alleging that notice of a pattern of similar violations, which were fairly similar to what ultimately transpired).

[113] *Blank v. Eavenson*, 530 F. App'x 364, 370-71 (5th Cir. 2013) (per curiam) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)).

[114] *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009) (quoting *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

[115] *See generally,* Exhibit "F," Officer Capers' Training Certificates (BS 96-106).

[116] *See e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure-to-train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers").

[117] *See generally,* Compl. **[Doc. 1].**

enhancement[,]'"[118] which this Court is not allowed to accept in the place of well pleaded facts.[119] As such, Plaintiff's federal law claims against Chief Sampson fail. Dismissal is warranted.

### C. Chief Sampson Is Entitled to Qualified Immunity.

Finally, even if Plaintiff could state a plausible claim against Chief Sampson under Section 1983, Chief Sampson is entitled to qualified immunity, barring any Section 1983 claims. Chief Sampson is presumed to enjoy qualified immunity because abrogation of qualified immunity is the exception, not the rule.[120] Public officials acting within the scope of their official duties, are shielded by qualified immunity from claims of civil liability, including Section 1983 claims.[121] Qualified immunity is a viable defense unless the existence of a constitutional violation is "beyond debate."[122] When qualified immunity is claimed, the burden falls on the plaintiff to show it is not applicable.[123]

Furthermore, supervisors, like Chief Sampson, "are entitled to qualified immunity unless *both* the underlying constitutional right and the supervisors' duty with respect to that right were clearly established."[124] Qualified immunity "explicitly requires an underlying constitutional violation before holding a supervisor liable."[125] "The operative principle, then, is that a supervisor cannot be

---

[118] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555 & 557).

[119] '*R Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

[120] *Trevino v. Hintz*, 751 Fed. Appx. 551 (5th Cir. 2018); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

[121] *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001).

[122] *Ashcroft v. Al-Kidd,* 563 U.S. 731,741(2011).

[123] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[124] *Pena v. Givens,* 637 F. App'x 775, 786 (5th Cir. 2015) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc)).

[125] *Estate of Henson v. Callahan*, 440 F. App'x 352, 357 (5th Cir. 2011) (citing *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001)).

liable under Section 1983 unless a subordinate employee has violated the plaintiff's constitutional rights — not just that a subordinate has acted negligently."[126] Accordingly, the "'plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'"[127]

"'The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[128] Therefore, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[129] When evaluating a qualified immunity defense, courts conduct a "well-known" two-prong inquiry.[130] Courts have the discretion to "address these two elements in either order, and need not proceed to the second where the first is resolved in the negative."[131] Here, Plaintiff must allege a violation of a constitutional right and then must show that the right was clearly established in light of the specific context of the case in order to overcome the qualified immunity defense.[132] This, Plaintiff has not done and cannot do.

Importantly, if public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.[133] "[A]n allegation of malice is

---

[126] *Id.*

[127] *Id.* (quoting *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (brackets, emphasis, quotation marks, and citation omitted); citing *Rios*, 444 F.3d at 425-26 (collecting cases)).

[128] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[129] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[130] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).

[131] *Id.* (citations omitted).

[132] *Thompson v. Mercer,* 762 F.3d 433, 437 (5th Cir. 2014).

[133] *Mullenix v. Luna,* 577 U.S. 7, 10 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F. 2d 1268, 1273 (5th Cir. 1992).

not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."[134] The threshold question in applying the two-part test to analyze a claim of qualified immunity is "whether [Plaintiff's] allegations establish a constitutional violation."[135] If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[136] However, "if a violation could be made out, the next sequential step is to ask, whether that right was clearly established."[137] The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."[138] Because Chief Sampson is entitled to qualified immunity, Plaintiff's federal claims against him must be dismissed.

### 1.     Plaintiff Cannot Establish a Constitutional Violation

In order to state a claim of supervisory liability under Section 1983, Plaintiff must first "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[139] Furthermore, courts "'use the same standard in assessing an individual supervisor's liability under § 1983' as that used 'in assessing a municipality's liability' thereunder."[140]

---

[134] *Malley*, 475 U.S. at 341

[135] *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

[136] *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that "order of battle" outlined in *Saucier* is not mandatory in every instance).

[137] *Saucier*, 533 U.S. at 201.

[138] *Id*. at 202.

[139] *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

[140] *Rios v. City of Del Rio*, 444 F.3d 417, 425-26 (5th Cir. 2006) (quoting *Doe v. Taylor ISD*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).

Indeed, a "supervisor's deliberate indifference to subordinate's wrongdoing must have 'caused a constitutional injury to the' plaintiff."[141] Accordingly, it is "facially evident" that there can be no supervisory liability where there is no underlying constitutional violation.[142] As such, the proper analysis of Plaintiff's federal claims against Chief Sampson by virtue of his supervisory role requires the separation of two different issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) *if so*, whether [Chief Sampson] is responsible for that violation."[143] As more fully addressed in Defendant Officer Capers' Memorandum in Support of his Motion for Judgment on the Pleadings as to Plaintiff's Federal Claims **[Doc. 34]**, Plaintiff cannot establish the existence of any constitutional violation. Therefore, Plaintiff's claims against Chief Sampson must fail.

As Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, Plaintiff has not, and cannot, establish a constitutional violation here. Under controlling law, an action by law enforcement must be intentionally - rather than accidentally - directed towards the plaintiff for that action to be deemed violative of the plaintiff's constitutional right to be free from excessive force.[144] "Violation of the Fourth Amendment requires an intentional acquisition of physical control."[145] Indeed, the Fourth Amendment addresses "misuse of power," and "not the accidental effects of

---

[141] *Id.* (parenthetically quoting *Doe,* 15 F.3d at 454).

[142] *Blair v. City of Dall.*, 666 F. App'x 337, 342 (5th Cir. 2016)*; Rios,* 444 F.3d at 425-26 (citing *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000) ("the fact that Plaintiff's First Amendment rights were not actually infringed exonerates Holified from supervisory liability.").

[143] *Rios,* 444 F.3d at 426 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 1066, 117 L. Ed. 2d 261 (1992) (emphasis added)).

[144] *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (reasoning that law enforcement action cannot be simultaneously unknowing and violative of constitutional rights).

[145] *Id.*

otherwise lawful government conduct."[146] **"[T]here is no Fourth Amendment violation in the absence of intentional conduct."**[147] Because Plaintiff's Complaint does not allege any intentional conduct by Officer Capers directed at any Plaintiff, it fails to state a Fourth Amendment claim under Section 1983 as to Chief Sampson. Indeed, all of Plaintiff's allegations and the undisputable facts show that the subject shooting was unintentional, which is non-actionable.

The Fifth Circuit has emphasized that in analyzing an excessive force claim under the Fourth Amendment, it is not relevant whether an officer "intentionally shot a bullet" that hit the plaintiff; rather, the ultimate question is whether the officer *intended* to shoot *the plaintiff* specifically.[148] As determined by the Fifth Circuit, if an officer "merely accidentally shot [the plaintiff], then all of the claims fail" because the use of force would not have been unreasonable in the circumstances where it was intended towards a third party."[149] Additionally, the Fifth Circuit noted in *Blair v. City of Dallas* that there could be no Fourth Amendment violation where the officers' conduct is directed appropriately at the suspect but inadvertently injures an innocent person because the means were not deliberately applied to the victim.[150]

The 911 caller never stated that children were present in the residence; rather, her statements reasonably conveyed that only two individuals were present in the home: Nakala Murry and John

---

[146] *Id.*

[147] *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018) (emphasis added); *see also, Pearce v. Doe*, 849 F. App'x 472, 475 (5th Cir. 2021); *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

[148] *Melvin v. Karman*, 550 F. App'x 218, 219-20 (5th Cir. 2013).

[149] *Id.* at 220.

[150] 666 F. App'x 337, 342 (5th Cir. 2016) (quoting *Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001) (compiling cases) (other citations omitted).

Nolden.[151] Even upon exiting the residence, Ms. Murry <u>never</u> informed Officer Capers nor Officer Webb that any children were present nor that anyone other than the suspect, Mr. Nolden, was within the residence.[152] Rather, when Officer Capers asked Ms. Murry where the suspect was located, Ms. Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her, and, moments later, Ms. Murry stated that the suspect was in the back room.[153]

Thus, when the individual ran directly at Officer Capers from the back room where he had been informed the suspect was located, the only reasonable inference in that moment was that the suspect was charging at him, a suspect with a violent criminal history who was engaged in violent criminal activity at that time and had attempted to prevent the victim from exiting the residence. There is no evidence that Officer Capers intended to shoot A.M., and indeed, there is overwhelming evidence that he did not. Accordingly, because Plaintiff cannot establish that a subordinate employee violated her constitutional rights, Chief Sampson is entitled to qualified immunity for any Fourth Amendment based claims against him. Dismissal is thereby warranted.

Just as Plaintiff's allegations do not, and cannot, rise to the level of a Fourth Amendment violation, Plaintiff's Complaint fails to state a claim under Section 1983 for any Fourteenth Amendment violation. "'[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in

---

[151] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 3-4.

[152] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:43-0:04:03; Answer **[Doc. 19]** at 3-4.

[153] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

a constitutional sense.'"[154] Negligence does not meet the "shock the conscience" standard.[155] Accordingly, "when officers are faced with dangerous situations in which split-second decisions must be made, the bar for demonstrating that certain behavior shocks the conscience is higher."[156]

"Where unforeseen circumstances demand instant judgment," then "even deliberate indifference does not shock the conscience since decisions made in such circumstances are not deliberate."[157] Thus, "[w]here instant judgment is required, only deliberate actions intended to harm another shock the conscience."[158] Plaintiff's Fourteenth Amendment claims, therefore, had to allege that Officer Capers had a purpose to cause harm. However, Plaintiff repeatedly characterizes Officer Capers' conduct as negligent in nature rather than intentional.[159] Thus, Plaintiff's Complaint fails to state either a Fourth or Fourteenth Amendment violation by a subordinate employee. Accordingly, Chief Sampson is entitled to qualified immunity, and dismissal is warranted.

### 2.    The Constitutional Violations Alleged Are not Clearly Established.

In the case at hand, the Court need not reach this analysis as Plaintiff has failed to meet the first prong of stating any constitutional violation by a subordinate employee of Chief Sampson. But, even if this Court were to find that Officer Capers' actions constituted some constitutional violation, which he did not, Plaintiff's claims must still fail because Plaintiff cannot demonstrate an "'existing

---

[154] *Baskin*, 2008 U.S. Dist. LEXIS 82455, at *10-11, *aff'd* 378 F. App'x 417 (5th Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).

[155] *Id.* (citing *Lewis*, 523 U.S. at 849, 118 S. Ct. 1708).

[156] *Id.* at *11 (citing *Lewis*, 523 U.S. at 853, 118 S. Ct. 1708).

[157] *Id.* at *12 (citing Lewis, 523 U.S. at 851-53, 118 S. Ct. 1708).

[158] *Id.* (citing Lewis, 523 U.S. at 836, 118 S. Ct. 1708).

[159] *See e.g.,* Compl. **[Doc. 1]** at ¶¶ 32-34 (alleging Officer Capers conduct as being "negligent, grossly negligent, and/or reckless in asserting a claim of Civil Assault and Battery), ¶42, and ¶ 51 ("Defendant city is liable for the **negligence** of its employee Officer Capers").

precedent [that] place[s] the . . . constitutional question[s] *beyond debate*.'"[160] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[161] This standard is based upon "objective legal reasonableness" and "'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.'"[162] Therefore, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'"[163]

"Clearly established law must be particularized to the facts of a case. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate."[164] "District courts in this Circuit have been told that 'clearly established law comes from holdings, not dicta.'"[165] Courts "are to pay close attention to the specific context of the case" and not "define clearly established law at a high level of generality."[166] Furthermore, "[c]ases that are 'too factually distinct to speak *clearly* to the *specific circumstances* **here**' are not enough to deny qualified immunity."[167] In assessing whether the law was clearly established at the time, the court is to consider all relevant

---

[160] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (en banc).

[161] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (citation omitted).

[162] *Watson v. Bryant,* 532 F. App'x 453, 456 (5th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation omitted).

[163] *Id.* (quoting *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45, 182 L. Ed. 2d 47 (2012) (internal quotation marks and citations omitted).

[164] *Mullenix*, 577 U.S. at 10 (quotations and citation omitted).

[165] *Jamison v. McClendon*, 476 F. Supp. 3d 386, 416 (S.D. Miss. 2020) (quoting *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations omitted)).

[166] *Id.* (quoting *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019)).

[167] *Cleveland v. Bell*, 938 F.3d 672, 677 (5th Cir. 2019) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 312, 193 L. Ed. 2d 255 (2015)) (emphasis added).

legal authority, whether cited by the parties or not.[168] The precise question is "whether a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information the officer[] possessed."[169]

Moreover, "[i]t is the [Plaintiff's] burden to find a case in [their] favor that does not define the law at a high level of generality."[170] To meet this high burden, Plaintiff must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[171] It is simply not enough for Plaintiff to just "show the existence of a genuine dispute on immaterial facts or that a collection of undisputed facts "'imply a speculative scenario that has no factual support.'"[172] As demonstrated extensively in the foregoing Section IV(B) and Section IV(C)(1), Plaintiff cannot do this. Indeed, courts have recently determined that similar, unintentional shootings do not violate any clearly established law.[173] As such, Chief Sampson is entitled to qualified immunity. Dismissal is warranted for all of Plaintiff's federal claims against Chief Sampson.

## V. CONCLUSION

For the reasons stated hereinabove and in his Motion for Judgment on the Pleadings, Chief

---

[168] *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

[169] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (cleaned up).

[170] *Jamison*, 476 F. Supp. 3d at 416 (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)).

[171] *Id.* (quoting *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017)).

[172] *Watson*, 532 F. App'x at 456 (quoting *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009)).

[173] *See Corbitt v. Vickers*, 929 F.3d 1304, 1321 (11th Cir. 2019) (looking towards Supreme Court decisions and case law from other circuits in determining that in the accidental shooting context there was no clearly established constitutional violation); *see also, Melvin v. Karman*, 550 F. App'x 218, 219 (5th Cir. 2013); *Blair v. City of Dall.*, 666 F. App'x 337, 342 (5th Cir. 2016)

Sampson respectfully requests this Court dismiss all of Plaintiff's federal law claims under *Fed. R. Civ. P.* Rule 12(c).

      **RESPECTFULLY SUBMITTED** this the 10th day of November, 2023.

**JACKS GRIFFITH LUCIANO, P.A.**

By:    /s/ *M. Mckenzie W. Price*

             M. Mckenzie W. Price, MS Bar No. 106538
             Daniel J. Griffith, MS Bar No. 8366
             Mary McKay Griffith, MS Bar No. 100785
             Attorneys for Defendants City of Indianola, Mississippi; Chief Ronald Sampson, in his Individual and Official Capacity; and, Officer Greg Capers, in his Individual and Official Capacity

Of Counsel:

**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Street
P.O. Box 1209
Cleveland, MS 38732
Phone: (662) 843-6171
Fax: (662) 843-6176
Email: mprice@jlpalaw.com
      dgriffith@jlpalaw.com
      mgriffith@jlpalaw.com


Kimberly J. Merchant, Esq.
549 South Washington Ave.
Greenville, MS 38701
Cell: (662) 347-3921
Work: (662) 577-4527
Email: kimjmerchant@gmail.com
City Attorney

**CERTIFICATE OF SERVICE**

     I, M. Mckenzie W. Price, attorney of record for Defendant Chief Ronald Sampson, in his Individual and Official Capacities, do hereby certify that I have this day caused a true and correct

29

copy of the above and foregoing *Chief Ronald Sampson's Memorandum of Authorities in Support of Motion for Judgment on the Pleadings or Alternatively, for Summary Judgment as to Plaintiffs' Federal Claims* to be delivered by the ECF Filing System which gave notice to all counsel of record who have appeared herein.

> Carlos E. Moore, Esq.
> The Cochran Firm - MS Delta
> Email: cmoore@cochranfirm.com
> **Attorney for Plaintiff**

**DATED** this 10th day of November, 2023.

> /s/ *M. Mckenzie W. Price*
> M. Mckenzie W. Price

30