**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**NAKALA MURRY, Individually and on**
**Behalf of Her Son, A. M., a Minor**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 4:23-CV-00097-DMB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI;**
**CHIEF RONALD SAMPSON, In his Individual**
**and Official Capacity; OFFICER GREG**
**CAPERS, in his Individual and Official Capacity;**
**and JOHN DOES 1-5, In Their Individual and**
**Official Capacities**                                    **DEFENDANTS**

<u>**CITY OF INDIANOLA'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR**</u>
<u>**SUMMARY JUDGMENT AS TO PLAINTIFF'S FEDERAL CLAIMS**</u>

**NOW COMES** Defendant, City of Indianola, by and through counsel, and respectfully files this, its Motion for Judgment on the Pleadings or Alternatively, for Summary Judgment, as to Plaintiff's Federal Claims, to-wit:.

**I. PREMISE**

In the Complaint, Plaintiff brings federal law claims against Defendants, the City of Indianola, Chief Ronald Sampson, in his Individual and Official Capacities, and Officer Greg Capers, in his Individual and Official Capacities, under 42 U.S.C. § 1983 predicated on alleged Fourth and Fourteenth Amendment violations. Plaintiff's Complaint fails to state any facts sufficient to state a claim to relief that is plausible on its face under §1983 against the City of Indianola because Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, which does not constitute a constitutional violation under clearly established law, and there can be no municipal liability absent

1

a constitutional violation. Furthermore, Plaintiff's Complaint fails to state any facts sufficient to state a claim to relief that is plausible on its face under §1983 against the City of Indianola as it  lacks sufficient factual allegations of any official policy, custom or practice of the City that was the moving force behind any alleged constitutional violation. Finally, Plaintiff's Complaint fails to state a claim upon which relief can be granted as to the City of Indianola, by reason of the fact that Defendant Officer Capers was at all relevant times trained and certified in accordance with State standards, Officer Capers acted within policy, and Officer Capers had no prior history of excessive force.  Therefore, as Plaintiff's federal claims against the City of Indianola must fail, dismissal is warranted under Rule 12(c) of the *Federal Rules of Civil Procedure*.

## II.    FACTS

According to the Complaint, on or about May 20, 2023, around 4:00 a.m., Plaintiff Murry "received an unexpected visit from an irate father of one of her minor children" while she was at home with her two minor children and her minor nephews.[1] Plaintiff alleges in her Complaint that Plaintiff Murry, fearing for her and the children's safety, instructed her son, Plaintiff A.M., to call the police.[2] Thereafter, Officer Capers responded to the scene.[3] Next, according to the Complaint, Officer Capers asked that everyone inside the residence come outside.[4] Plaintiff then alleges that as "Plaintiff A.M. was coming around the corner of the hallway that lead into the living room area, he was instantly shot by Defendant Officer Capers[,]" incurring injuries as a result.[5]

---

[1] Compl. **[Doc. 1]** at ¶ 10.

[2] *Id.* at ¶ 11.

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶ 13.

[5]  *Id.* at ¶¶ 14, 16, & 17.

The specific facts of the incident are clarified in Defendants' Answer and the exhibits attached thereto. On Saturday, May 20, 2023, around 4:41 a.m., Officer Webb and Officer Capers received a call from dispatch in regards to a 911 call for a violent domestic disturbance at the Plaintiff's address involving Nakala Murry and John Nolden.[6] Dispatch advised the Officers that the 911 caller had advised that her daughter's boyfriend had jumped her and assaulted her.[7] At no point were the officers informed that children were present at the scene.[8]

Though the IPD officers did not know children were present, they were aware that the Plaintiff's address had been the scene for dozens of violent, and sometimes armed, disputes between Plaintiff Nakala Murry and John Nolden.[9] Indeed, IPD officers had been called out to the Plaintiff's residence at least fourteen (14) times in the five years preceding the subject incident.[10] In fact, Officer Capers had previously responded to a 911 call at this address for domestic violence.[11] The suspect, John Nolden, had been arrested numerous times for domestic violence, assault, and other

---

[6] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]**, at 1.

[7] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 1.

[8] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]** at 1, & 3-4.

[9] **[Doc. 31-3]** Exhibit "C," Arrests Reports and Call Log (BS 29-33), at 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71); **[Doc. 31-12]** Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); Answer **[Doc. 19]** at 1 & 3-4.

[10] **[Doc. 31-3]** Exhibit "C," Arrests Reports and Call Log (BS 29-33), at pg. 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71); **[Doc. 31-12]** Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 11-12, 13, 14-15, & 20-21; Answer **[Doc. 19]** at 1.

[11] **[Doc. 31-4]** Exhibit "D," IPD Incident Report for 11-7-20 (BS 81-83); Answer **[Doc. 19]** at 1-2.

violent offenses.[12]

Upon their arrival, the officers noticed that the windows to the residence had black out screens preventing them from seeing inside.[13] Officer Capers radioed dispatch and asked who the 911 caller was, and dispatch responded the caller was Nakala Murry.[14] Officer Capers approached the front door and knocked multiple times.[15] Receiving no response, Officer Capers noted that something was not right and began checking the exterior of the darkened house.[16] While doing so, Officer Capers maintained communications with dispatch, requesting that dispatch get the caller back on the line and inform her that the officers were outside.[17] Upon communication with the caller, dispatch relayed Ms. Murry's statements that she heard the officers at the door and that the suspect would not allow her to answer the door.[18] Officer Capers asked if they had permission to kick in the door, to which dispatch responded, upon communication with the caller, that Ms. Murry gave them

---

[12] **[Doc. 31-9]** Exhibit "I," IPD Arrest Reports Nolden (BS 19-28); **[Doc. 31-10]** Exhibit "J," IPD Municipal Court Abstracts Nolden (BS 15-18); Answer **[Doc. 19]** at 2.

[13] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[14] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:00:50-0:00:59); Answer **[Doc. 19]** at 2.

[15] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:03, 0:01:22, 0:01:50, 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[16] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:50, 0:02:03 (Officer Capers stating, "Something ain't right."), 0:02:49, & 0:03:05; Answer **[Doc. 19]** at 2.

[17] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:01:34; Answer **[Doc. 19]** at 2.

[18] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:02:25; Answer **[Doc. 19]** at 2.

consent to kick it in.[19]  Dispatch also informed the officers that Ms. Murry stated she did not know

if the suspect was armed.[20]  Ms. Murry could be heard screaming from within the residence, yelling

"let me go!"[21] At that time, Officer Webb and Officer Capers drew their firearms.[22]

     After multiple failed attempts to kick in the door, Ms. Murry opened it.[23] Officer Capers

asked Ms Murry where the suspect was located.[24] Ms Murry responded with a non-verbal gesture by

nodding her head and rolling her eyes at the interior of the residence towards the room on the left

behind her.[25] Officer Webb told Ms. Murry to step outside and away from the door.[26] Ms. Murry then

stated that the suspect was in the back room.[27] Next, Officer Capers stepped onto the threshold of

the house with his flashlight providing the only light inside the residence.[28] Officer Capers and

---

[19] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:02:42 & 0:03:22; Answer **[Doc. 19]** at 2.

[20] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[21] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:34; Answer **[Doc. 19]** at 2.

[22] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:37; Answer **[Doc. 19]** at 2.

[23] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:39;  Answer **[Doc. 19]** at 2.

[24] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:41; Answer **[Doc. 19]** at 2.

[25] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

[26] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:43;  Answer **[Doc. 19]** at 2.

[27] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; Answer **[Doc. 19]** at 2.

[28] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:03; Answer **[Doc. 19]** at 2.

Officer Webb yelled "police" and ordered the suspect to come out multiple times.[29]

Suddenly, a male in a red shirt ran directly towards Officer Capers from the room where Ms. Murry stated that the suspect was located.[30] Officer Capers discharged his firearm, striking the individual charging towards him.[31] Moments later, Officer Capers learned for the first time that the individual in the red shirt appeared to be a child and exclaimed "Oh my God" as he helped the child exit the house.[32] This individual continued to run to the side of the road.[33] Both Officer Capers and Officer Webb immediately requested that dispatch send Med-Stat to the location, with Officer Capers stating "Med-Stat! Med-Stat! Med-Stat! Med-Stat! Med-Stat! We need them now!"[34] Both officers immediately ran to render aid to this individual, who they then learned for the first time was Ms. Murry's minor child, A.M.[35] The suspect, John Nolden, then exited the house and was placed in handcuffs.[36] Nolden was arrested for domestic violence at the scene.[37] Officer Capers was visibly

---

[29] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:45, 0:03:48, 0:03:51, 0:03:54, & 0:04:03; Answer **[Doc. 19]** at 2.

[30] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:05; Answer **[Doc. 19]** at 2-3.

[31] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:06; Answer **[Doc. 19]** at 2-3.

[32] **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:07-0:04:10; Answer **[Doc. 19]** at 3.

[33] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:10-0:04:18; Answer **[Doc. 19]** at 3.

[34] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:12-0:04:19; Answer **[Doc. 19]** at 3.

[35] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:20; Answer **[Doc. 19]** at 3.

[36] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:41; Answer **[Doc. 19]** at 3.

[37] **[Doc. 31-11]** Exhibit "K," IPD Docs (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

upset about the entire unexpected ordeal.[38]

Thereafter, on May 22, 2023, Plaintiff Nakala Murry caused a notice of claim letter to be sent to the City of Indianola and Chief Sampson alleging "injuries and damages sustained on May 22, 2023."[39] On May 25, 2023, Ms. Murry pressed charges against John Nolden for simple assault related to the subject incident due to him threatening to kill her that evening.[40] On May 30, 2023, Plaintiff Murry filed her Complaint in the instant matter, asserting a number of claims under state and federal law against the City of Indianola, Chief Sampson, in his Individual and Official Capacities, and Officer Capers, in his Individual and Official Capacities.[41] Then, on June 5, 2023, Plaintiff Murry also pressed charges against Officer Capers for the subject incident.[42]

### III. STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for addressing a motion for judgment on the pleadings under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12(b)(6).[43] Thus, to survive Defendants' Motion, Plaintiff's Complaint must provide the grounds for entitlement to relief—including factual

---

[38] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75) at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:04:20- 0:04:51 (repeating "Oh my God" and calling for Med-Stat); Answer **[Doc. 19]** at 1-4.

[39] **[Doc. 31-1]** Exhibit "A," Notice of Claim Letter, Exhibit "A," to Answer **[Doc. 19],** at 1.

[40] **[Doc. 31-11]** Exhibit "K," IPD Docs (BS 3-10), Exhibit "A," to Motion to Stay **[Doc. 20]**, at 2; Answer **[Doc. 19]** at 3.

[41] Compl. **[Doc. 1].**

[42] **[Doc. 31-2]** Exhibit "B," to Motion to Stay **[Doc. 20]**, General Criminal Affidavit on Capers, at 1.

[43] *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010).

allegations that when assumed to be true "raise a right to relief above the speculative level."[44] The Complaint must allege "sufficient factual matter…to state a claim that is plausible on its face."[45]  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46] A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct."[47]

Under Rule 12(c), like Rule 12(b)(6), the central question is whether the Complaint includes claims that are plausible.[48] Accordingly, the legal claims identified in the Complaint must be compared with the factual allegations offered in support, including any exhibits attached to the Complaint and Answer.[49]  "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto. The 'pleadings' include the complaint [and] answer to the complaint[.]"[50]

As all of Plaintiff's allegations against Defendants are based upon the force that was used in responding to a 911 call and effectuating the related arrest on May 20, 2023, this Court "must consider . . . documents incorporated into the complaint by reference, and matters of which a court

---

[44] *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)).

[45] *Thombly*, 550 U.S. at 570.

[46] *Id*. at 556.

[47]  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

[48]  *Twombly,* 550 U.S. at 555.

[49]  *Olivier v. City of Brandon*, No. 3:21-cv-00636-HTW-LGI, 2022 U.S. Dist. LEXIS 196233, at *19-20 (S.D. Miss. Sep. 23, 2022) (citing *Iqbal*, 556 U.S. at  678).

[50] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

may take judicial notice."[51] As provided by the Fifth Circuit, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[52] "When documents of public record reveal that a plaintiff's complaint is not plausible, a court is not required to consider a motion to dismiss as one for summary judgment."[53] Both the incident reports related to the subject 911 call and related arrest reports as well as similar prior incident reports, arrest reports, and court abstracts involving the same parties to the instant incident are the central to the allegations of Plaintiff's Complaint and are matters of public record[54] proper for consideration on the instant motion that clearly reflect that Plaintiff fails to state a plausible claim.[55]

Moreover, the body camera footage from May 20, 2023, is central to Plaintiff's Complaint and is proper for consideration on a motion to dismiss or motion for judgment on the pleadings.[56] Because video evidence is available, Fifth Circuit jurisprudence requires this Court to "view the facts

---

[51] *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).

[52] *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (per curiam) quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

[53] *Martin v. Rainbow Casino*, No. 5:11-CV-142 DCB RHW, 2012 WL 1883673, at *1 (S.D. Miss. May 22, 2012)(quoting *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986)).

[54] The Complaint refers to the 911 due to Nolden's criminal conduct towards Ms. Murry, which incorporates any documents related to such. Incident reports, arrest reports, and 911 call recordings are matters of public record as defined by *Miss. Code Ann.* § 25-61-3(b)&(e) and are not excluded from public disclosure by *Miss. Code Ann.* § 25-61-12(c).

[55] *Armstrong v. Ashley*, 60 F.4th 262, 272 n.10 (5th Cir. 2023) (citing *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (police report was proper for consideration on Rule 12(c) Motion); *Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18 (S.D. Miss. Sep. 14, 2021) (citing *Johnson-Williams v. Citimortgage, Inc*., 750 F. App'x 301, 304 (5th Cir. 2018) (arrest records were proper for consideration on Rule 12(c) Motion).

[56] *See e.g., Beroid v. Lafleur*, No. 22-30489, 2023 U.S. App. LEXIS 9644, at *11 (5th Cir. Apr. 21, 2023) (per curiam) (quoting *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); citing *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021)).

in the light depicted by the videotape."[57] "In such an instance, the court is not required to favor plaintiff's allegations over the video evidence."[58] Instead, where the video contradicts Plaintiff's version of the incident, courts credit the facts evidenced on video.[59] Indeed, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."[60] Likewise, as the 911 call is referenced in and central to Plaintiff's Complaint, it too may be properly considered for the instant motion.[61] Regardless, this Court may consider matters outside the pleadings and render summary judgment in the alternative.[62]

## IV. ARGUMENT

Section 1983 is the procedural avenue Plaintiff must take to pursue constitutional violations, and the governing legal standards are well settled.[63] Plaintiff asserts the following federal claims in the Complaint under 42 U.S.C. § 1983: (1) Fourth and Fourteenth Amendment violations; and (2)

---

[57] *Boyd v. McNamara*, 74 F.4th 662, 665-66 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration omitted)).

[58] *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam) (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

[59] *See e.g., Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 380-81); *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (quoting *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012)).

[60] *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2519, 209 L. Ed. 2d 551 (2021) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

[61] *Beroid*, 2023 U.S. App. LEXIS 9644, at *11-12 (citing *Tucker*, 998 F.3d at 170 (internal quotation marks and citation omitted)).

[62] *See e.g., Bosarge,* 796 F.3d at 440; *Galvan v. Calhoun Cty.,* 719 F. App'x 372, 375 (5th Cir. 2018) (per curiam) (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,* 748 F.3d 631, 635 (5th Cir. 2014)); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

[63] *Escamilla v. Elliot*, 816 F. App'x 919, 922-25 (5th Cir. 2020).

Fourth Amendment excessive force.[64] Plaintiff also asserts a respondeat superior claim and a claim for negligent, grossly negligent, and wanton failure in hiring and to monitor, train, supervise, and discipline, though Plaintiff does not distinguish whether such claims as brought under federal or sate law.[65] All of Plaintiff's federal claims must fail.

### A. Plaintiff Cannot Establish a Constitutional Violation

To hold a municipality like the City of Indianola liable under Section 1983, Plaintiff must first "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[66] The Supreme Court held in *Monell v. Department of Social Services* that a municipality cannot be simply held liable under § 1983 solely because its employee committed a constitutional tort.[67] Therefore, "a plaintiff cannot prevail on a theory of *respondeat superior* against a municipality."[68] Instead, Plaintiff's claim of municipal liability under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[69]

Critically, it is facially evident that there can be no municipality liability under §1983 where

---

[64] **[Doc. 1]** at ¶¶ 21-25.

[65] *Id.* at ¶¶ 40-46 & 50-51.

[66] *Petersen v. Johnson,* 57 F.4th 225, 235 (5th Cir. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).

[67] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citing *Monell*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

[68] *Id.* (citing *Monell*, 436 U.S. at 691).

[69] *Mason,* 806 F.3d at 280 (citing *Piotrowski v. City of Hous*., 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694)).

there is no underlying constitutional violation.[70] Plaintiff can make neither of these showings in this case, much less both. As summarized herein and as more fully addressed in Defendant Officer Capers' Memorandum in Support of his Motion for Judgment on the Pleadings as to Plaintiff's Federal Claims **[Doc. 34]**, Plaintiff cannot establish the existence of any constitutional violation. Therefore, Plaintiff's claims against the City of Indianola under Section 1983 must fail.

As Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, Plaintiff has not, and cannot, establish a constitutional violation here. Under controlling law, an action by law enforcement must be intentionally - rather than accidentally - directed towards the plaintiff for that action to be deemed violative of the plaintiff's constitutional right to be free from excessive force.[71] "Violation of the Fourth Amendment requires an intentional acquisition of physical control."[72] Indeed, the Fourth Amendment addresses "misuse of power," and "not the accidental effects of otherwise lawful government conduct."[73] **"[T]here is no Fourth Amendment violation in the absence of intentional conduct."**[74] Because Plaintiff's Complaint does not allege any intentional conduct by Officer Capers directed at any Plaintiff,[75] it fails to state a Fourth Amendment claim

---

[70] *See e.g., Petersen v. Johnson,* 57 F.4th 225, 235 (5th Cir. 2023); *Blair v. City of Dall.*, 666 F. App'x 337, 342 (5th Cir. 2016).

[71] *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (reasoning that law enforcement action cannot be simultaneously unknowing and violative of constitutional rights).

[72] *Id.*

[73] *Id.*

[74] *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018) (emphasis added); *see also, Pearce v. Doe*, 849 F. App'x 472, 475 (5th Cir. 2021); *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

[75] *See e.g.,* Compl. **[Doc. 1]** at ¶¶ 32-34 (alleging Officer Capers conduct as being "negligent, grossly negligent, and/or reckless in asserting a claim of Civil Assault and Battery), ¶42, and ¶ 51 ("Defendant city is liable for the **negligence** of its employee Officer Capers").

under Section 1983 as to the City of Indianola. Indeed, all of Plaintiff's allegations and the undisputable facts show that the subject shooting was unintentional, which is non-actionable.

The Fifth Circuit has emphasized that in analyzing an excessive force claim under the Fourth Amendment, it is not relevant whether an officer "intentionally shot a bullet" that hit the plaintiff; rather, the ultimate question is whether the officer *intended* to shoot *the plaintiff* specifically.[76] As determined by the Fifth Circuit, if an officer "merely accidentally shot [the plaintiff], then all of the claims fail" because the use of force would not have been unreasonable in the circumstances where it was intended towards a third party."[77] Additionally, the Fifth Circuit noted in *Blair v. City of Dallas* that there could be no Fourth Amendment violation where the officers' conduct is directed appropriately at the suspect but inadvertently injures an innocent person because the means were not deliberately applied to the victim.[78]

In the matter at hand, the 911 caller never stated that children were present in the residence; rather, her statements reasonably conveyed that only two individuals were present in the home: Nakala Murry and John Nolden.[79] Even upon exiting the residence, Ms. Murry <u>never</u> informed Officer Capers nor Officer Webb that any children were present nor that anyone other than the suspect, Mr. Nolden, was within the residence.[80] Rather, when Officer Capers asked Ms Murry where

---

[76] *Melvin v. Karman*, 550 F. App'x 218, 219-20 (5th Cir. 2013).

[77] *Id.* at 220.

[78] 666 F. App'x 337, 342 (5th Cir. 2016) (quoting *Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001) (compiling cases) (other citations omitted).

[79] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-8]** Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13; Answer **[Doc. 19]** at 3-4.

[80] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:43-0:04:03; Answer **[Doc. 19]** at 3-4.

the suspect was located, Ms Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her, and, moments later, Ms. Murry stated that the suspect was in the back room.[81]

Thus, when the individual ran directly at Officer Capers from the back room where he had been informed the suspect was located, the only reasonable inference in that moment was that the suspect was charging at him, a suspect with a violent criminal history who was engaged in violent criminal activity at that time and had attempted to prevent the victim from exiting the residence. There is no evidence that Officer Capers intended to shoot A.M., and indeed, there is overwhelming evidence that he did not. Furthermore, Officer Capers actions were objectively reasonable under clearly established law pursuant to numerous cases determining that an objectively reasonable officer could believe that a subject suddenly charging at him in the dark posed a threat of serious harm.[82] Accordingly, Plaintiff's Fourth Amendment claims against City of Indianola must be dismissed.

Just as Plaintiff's allegations do not, and cannot, rise to the level of a Fourth Amendment violation, Plaintiff's Complaint fails to state a claim under Section 1983 for any Fourteenth Amendment violation. "'[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in

---

[81] **[Doc. 31-2]** Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at pg. 2 & 3; **[Doc. 31-5]** Exhibit "E," Body Camera Footage, at 0:03:42; Answer **[Doc. 19]** at 2.

[82] *See e.g., Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017); *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011); *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2020 U.S. Dist. LEXIS 200586, at *12-13 (S.D. Miss. Oct. 28, 2020), *aff'd*, No. 20-61101, 2022 U.S. App. LEXIS 6577 (5th Cir. Mar. 15, 2022); *Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018).

a constitutional sense.'"[83] Negligence does not meet the "shock the conscience" standard.[84] Accordingly, "when officers are faced with dangerous situations in which split-second decisions must be made, the bar for demonstrating that certain behavior shocks the conscience is higher."[85]

"Where unforeseen circumstances demand instant judgment," then "even deliberate indifference does not shock the conscience since decisions made in such circumstances are not deliberate."[86] Thus, "[w]here instant judgment is required, only deliberate actions intended to harm another shock the conscience."[87] Plaintiff's Fourteenth Amendment claims, therefore, had to allege that Officer Capers had a purpose to cause harm. However, as Plaintiff repeatedly characterizes Officer Capers' conduct as negligent in nature rather than intentional,[88] Plaintiff's Complaint fails to state either a Fourth or Fourteenth Amendment violation. Accordingly, there can be no municipality liability directed at City of Indianola, and dismissal is warranted..

### B. Plaintiff Fails to Establish Any Basis for Municipality Liability

It is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing."[89] Because Plaintiff cannot demonstrate a constitutional

---

[83] *Baskin*, 2008 U.S. Dist. LEXIS 82455, at *10-11, *aff'd* 378 F. App'x 417 (5th Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).

[84] *Id.* (citing *Lewis*, 523 U.S. at 849, 118 S. Ct. 1708).

[85] *Id.* at *11 (citing *Lewis*, 523 U.S. at 853, 118 S. Ct. 1708).

[86] *Id.* at *12 (citing Lewis, 523 U.S. at 851-53, 118 S. Ct. 1708).

[87] *Id.* (citing Lewis, 523 U.S. at 836, 118 S. Ct. 1708).

[88] *See e.g.,* Compl. **[Doc. 1]** at ¶¶ 32-34 (alleging Officer Capers conduct as being "negligent, grossly negligent, and/or reckless in asserting a claim of Civil Assault and Battery), ¶42, and ¶ 51 ("Defendant city is liable for the **negligence** of its employee Officer Capers").

[89] *Doe ex rel, Magee v. Covington County School Dist. Ex rel. Magee,* 675 F.3d 849, 867 (5th Cir. 2012).

15

violation by Officer Capers, there necessarily can be no municipal liability.[90] But even if Plaintiff could demonstrate a constitutional violation, a mere violation is never enough, since municipalities are not vicariously responsible for the actions or inactions of their employees.[91] Instead, there must be something more to impose liability on a municipality, requiring a demonstration that the constitutional violation occurred because of a municipal policy or custom.[92]

Thus, Plaintiff was also required to allege and specifically identify an official policy that was the moving force behind the alleged constitutional rights violation.[93] An "official policy" means "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority[.]"[94] Alternatively, a plaintiff may plead "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[95] Furthermore, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."[96] Importantly, "'[t]he description of a policy or custom and its relationship

---

[90] *Id.*

[91] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Mason*, 806 F.3d at 280.

[92] *See e.g., Mason*, 806 F.3d at 280; *Beaulieu v. Lavigne*, 539 F. App'x 421, 425 (5th Cir. 2013); *James v. Tex. Collin Cty.*, 535 F.3d 365, 375 (5th Cir. 2008); *Piotrowski*, 237 F.3d at 578.

[93] *Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).

[94] *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

[95] *Id.* (quoting *Webster*, 735 F.2d at 841).

[96] *Id.* (quoting *Webster*, 735 F.2d at 841).

16

to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'"[97]

This "moving force" inquiry required Plaintiff to both show causation and culpability.[98] Furthermore, the "'moving force' inquiry imposes a causation standard higher than 'but for' causation."[99] To establish culpability, if the policy is facially lawful, a plaintiff must also show that the policy maker "promulgated [the policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."[100] Critically, a showing of heightened negligence is insufficient to show the deliberate indifference needed to prove liability under this standard.[101]

Plaintiff's Complaint does not identify any official policy implemented by the City of Indianola whatsoever, let alone any official policy that served as the moving force for any alleged constitutional violation.[102] Indeed, Plaintiff alleges on the one hand that her alleged injuries were the result of some "official policy"[103] but on the other that Defendants "failed to properly follow and/or apply their own city and law enforcement rules, ordinances, regulations, policies, and procedures[.]"[104] Not only do Plaintiff's claims against the City of Indianola thereby fail as Plaintiff cannot identify such a policy, Plaintiff's claims fail because she cannot meet the rigid "but-for"

---

[97] *Beaulieu v. Lavigne*, 539 F. App'x 421, 425 (5th Cir. 2013) (quoting *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997)).

[98] *Mason v. Lafayette City-Parish Consol. Gov't,* 806 F.3d 268, 280 (5th Cir. 2015) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

[99] *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)).

[100] *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (quoting *Brown*, 520 U.S. at 407)).

[101] *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (quoting *Brown*, 520 U.S. at 407)).

[102] *See generally*, Compl. **[Doc. 1].**

[103] Compl. **[Doc. 1]** at ¶ 8.

[104] Compl. **[Doc. 1]** at ¶ 41.

17

causation standard to show that some unidentified policy somehow caused the injuries alleged. In fact, as the policies here were clearly constitutional and Officer Capers complied with the policies at all times,[105] Plaintiff's municipality liability claims against the City have no basis in law or fact.

Plaintiff's Complaint also contains the vague, conclusory assertion that "over the course of the past several years, there have been numerous complaints made about incidents of abuse, excessive force, etc. caused by Officer Greg Capers of the Indianola Police Department."[106] Such an unofficial custom must be "so persistent and widespread as to practically have the force of law."[107] Indeed, under the demanding unofficial custom theory, a plaintiff must identify "'sufficiently numerous prior incidents,' as opposed to 'isolated instances[,]'" and those prior incidents must be both similar and specific to the alleged violation in question.[108] Furthermore, to state a viable supervisory liability claim on this basis, "'[a]ctual or constructive knowledge of such custom must be attributable' to the policymaker."[109]

Plaintiff provides no factual allegations to support this assertion nor does Plaintiff allege any causal connection between such unidentified "complaints" with the instant matter. "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation

---

[105] **[Doc. 31-7]** Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), at 1-14 (Use of Force Policy, Patrol-2002-30, at 1-10) (Post-Critical/Traumatic Incident Procedures, at 11-14).-2008-21.

[106] Compl. **[Doc. 1]** at ¶ 44.

[107] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[108] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

[109] *Armstrong v. Ashley,* 60 F.4th 262, 276 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

18

in question."[110] Accordingly, Plaintiff's allegations do not "demonstrate at least a pattern of similar violations" sufficient to establish the required level of deliberate indifference necessary for supervisory liability against Chief Sampson.[111] "'Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.'"[112] Threadbare assertions that defendants "'continue to violate the Rights of the Plaintiff[]'" or that officers were engaged in some "repeated pattern of criminal injustice" are not sufficient to state a plausible claim under § 1983.[113]

Plaintiff's claims based upon alleged failures to monitor, train, or supervise likewise fail. To state a cognizable failure to train or supervise claim, Plaintiff had to plead facts plausibly demonstrating that "(1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's injury."[114] "The Supreme Court has emphasized that '**[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train**.'"[115] "In order for 'liability to attach based on an 'inadequate training' claim, a plaintiff must allege with

---

[110] *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (*quoting McCully ex rel. Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (internal quotations removed)).

[111] *Rios,* 444 F.3d at 427 (quoting *Johnson v. Deep East Texas Regional Narcotics*, 379 F.3d 293, 309 (5th Cir. 2004)).

[112] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc)).

[113] *Moore v. Union Cty.*, No. 3:22CV92-GHD-JMV, 2023 U.S. Dist. LEXIS 27624, at *7-8 (N.D. Miss. Feb. 17, 2023).

[114] *Clyce v. Hunt Cty.*, 515 F. App'x 319, 323 (5th Cir. 2013) (per curiam) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam))

[115] *Clyce.*, 515 F. App'x at 323 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)) (emphasis added).

19

specificity how a particular training program is defective.'"[116] Similarly, a plaintiff must allege with specificity how the supervision at hand was inadequate.[117]

Plaintiff has not pointed to any policy or any training program, nor has Plaintiff alleged any pattern of similar violations to put the City of Indianola on notice that the training or supervision was inadequate.[118] In order to establish liability for "a theory of deliberate indifference to inadequate supervision, the supervisory officials must have had actual or  constructive knowledge of the deficient policy at issue."[119] Indeed, Plaintiff cannot meet her required burden on her supervision or training claims as Officer Capers was at all relevant times trained and certified in accordance with State standards.[120]  Further, Plaintiff has not plausibly alleged how any such training or supervision actually *caused* the subject injury.[121] Thus, Plaintiff has not plausibly alleged a failure to train or a failure to supervise claim.

Tellingly, the United States Supreme Court has never found municipal liability based on a failure-to-train theory.[122] Moreover, the City of Indianola is automatically insulated from liability,

---

[116] *Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d at 287, 293 (5th Cir. 2005))).

[117] *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 n.34 & 383 (5th Cir. 2005)

[118] *See generally,* Complaint; *Anokwuru*, 990 F.3d at 965 (providing that a plaintiff must plausibly allege that the municipality was deliberately indifferent to the need for proper training such as by alleging that the municipality had notice of a pattern of similar violations, which were fairly similar to what ultimately transpired).

[119] *Blank v. Eavenson*, 530 F. App'x 364, 370-71 (5th Cir. 2013) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)).

[120] *See generally,* **[Doc. 31-6]** Exhibit "F," Officer Capers' Training Certificates (BS 96-106).

[121] *See generally,* Compl. **[Doc. 1].**

[122] *See Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018).

since it is undisputable that Officer Capers is a certified law enforcement officer.[123] The Fifth Circuit "has held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers.'"[124] Courts have long held that Mississippi's law enforcement academy includes sufficient training to defeat a failure-to-train theory.[125]

Importantly, "'showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.'"[126] "[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice."[127] Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. Plainly, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."[128] Plaintiff cannot show that the alleged inadequate training or failure to supervise "actually caused" their alleged injuries. Thus, Plaintiff's claims against the City of Indianola fail.

---

[123] Exhibit "F," Capers' Training Certificates (BS 96-106).

[124] *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009).

[125] *See, e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure-to-train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers").

[126] *Kitchen v. Dall. Cty.*, 759 F.3d 468, 485 (5th Cir. 2014) (quoting *Connick*, 131 S. Ct. at 1363).

[127] *Connick,* 563 U.S. at 68 (emphasis added).

[128] *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

21

At most, Plaintiff's Complaint merely sets forth "'a formulaic recitation of the elements of [his] cause of action,'" and "'naked assertion[s]' devoid of 'further factual enhancement[,]'"[129] which this Court is not allowed to accept in the place of well pleaded facts.[130] As such, Plaintiff's federal law claims against the City of Indianola must fail. Dismissal is warranted.

## V. CONCLUSION

For the reasons stated hereinabove and in its Motion for Judgment on the Pleadings, the City of Indianola respectfully requests this Court dismiss all of Plaintiff's federal law claims under *Fed. R. Civ. P.* Rule 12(c).

**RESPECTFULLY SUBMITTED** this the 10th day of November, 2023.

**JACKS GRIFFITH LUCIANO, P.A.**

By:     /s/ ***M. Mckenzie W. Price***
M. Mckenzie W. Price, MS Bar No. 106538
Daniel J. Griffith, MS Bar No. 8366
Mary McKay Griffith, MS Bar No. 100785
Attorneys for Defendants City of Indianola,
Mississippi; Chief Ronald Sampson, in his
Individual and Official Capacity; and, Officer
Greg Capers, in his Individual and Official
Capacity

Of Counsel:

**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Street
P.O. Box 1209
Cleveland, MS 38732
Phone: (662) 843-6171
Fax: (662) 843-6176

---

[129] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555 & 557).

[130] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

Email: mprice@jlpalaw.com
        dgriffith@jlpalaw.com
        mgriffith@jlpalaw.com


Kimberly J. Merchant, Esq.
549 South Washington Ave.
Greenville, MS 38701
Cell: (662) 347-3921
Work: (662) 577-4527
Email: kimjmerchant@gmail.com
City Attorney


## CERTIFICATE OF SERVICE

I, M. Mckenzie W. Price, attorney of record for Defendant, City of Indianola, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *City of Indianola's Memorandum of Authorities in Support of Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment, as to Plaintiff's Federal Claims* to be delivered by the ECF Filing System to the following:

Carlos E. Moore, Esq.
The Cochran Firm - MS Delta
Email: cmoore@cochranfirm.com
**Attorney for Plaintiff**

**DATED** this 10th day of November, 2023.

/s/ *M. Mckenzie W. Price*
M. Mckenzie W. Price

23