**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**NAKALA MURRY, INDIVIDUALLY AND
ON BEHALF OF HER SON, A.M., A MINOR**                               **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO.: 4:23CV97-DMB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI; CHIEF
RONALD SAMPSON, In His Individual and
Official Capacity; OFFICER GREG CAPERS,
In His Individual and Official Capacity; and,
JOHN DOES 1-5, In Their Individual and
Official Capacities**                                          **DEFENDANTS**

## DEFENDANTS' MEMORANDUM OF AUTHORITIES IN SUPPORT OF CONSOLIDATED MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

**NOW COMES**, Defendants, by and through counsel, and respectfully file this, their

Memorandum of Authorities in Support of Consolidated Motion for Judgment on the Pleadings or

Alternatively, for Summary Judgment, to-wit:

### I. PREMISE

Though all must fail, Plaintiff asserts a number of federal and state law claims against

Defendants. Foremost, Plaintiff's official capacity claims against Officer Capers and Chief

Sampson are merely duplicative of their claims against the City and should be dismissed. Next,

Officer Capers and Chief Sampson are entitled to qualified immunity because the allegations

amount to no more than an unintentional shooting where an officer reasonably reacted to a

potentially dangerous situation and threat of serious harm, which does not constitute a

constitutional violation under clearly established law. Likewise, the municipal and supervisory

liability claims must fail as there can be no such liability absent a constitutional violation and

Plaintiff has failed to identify any official policy, custom or practice that was the moving force

1

behind any alleged violation. Additionally, Plaintiff's state law claims must fail due to Plaintiff's failure to comply with the notice requirements of *Miss. Code Ann.* §11-46-11(1) and numerous MTCA immunities. Thus, dismissal is warranted under *Fed. R. Civ. Pro.* 12(c).

## II. FACTS

According to the Complaint, on or about May 20, 2023, around 4:00 a.m., Plaintiff Murry "received an unexpected visit from an irate father of one of her minor children" while she was at home with her two minor children and her minor nephews.[1] Plaintiff alleges that, fearing for her and the children's safety, Murry instructed her son, A.M., to call the police.[2] Thereafter, Officer Capers responded to the scene.[3] Next, Plaintiffs allege Officer Capers asked that everyone inside the residence come outside.[4] Plaintiffs then allege that as "Plaintiff A.M. was coming around the corner of the hallway that lead into the living room area, he was instantly shot by Defendant Officer Capers[,]" incurring injuries as a result.[5]

The specific facts of the incident are clarified in Defendants' Answer and the exhibits attached thereto. Around 4:41 a.m. on Saturday, May 20th, Officer Webb and Officer Capers received a call from dispatch regarding a 911 call for a violent domestic disturbance involving Nakala Murry and John Nolden.[6] Dispatch informed the Officers that the 911 caller advised that her daughter's boyfriend had jumped and assaulted her.[7] At no point were the officers informed that children were present at the scene.[8]

---

[1] Compl. **[Doc. 1]** at ¶10.
[2] *Id.* at ¶11.
[3] *Id.* at ¶12.
[4] *Id.* at ¶13.
[5] *Id.* at ¶¶14, 16, & 17.
[6] Exhibit "B," IPD Incident Report for 5-20-23 (BS 72-75), at 3; Answer **[Doc. 19]**, at 1.
[7] Exhibit "B," at 2; Exhibit "H," Call Reports for 1111 BB King (BS 58-71), at 13;**[Doc. 19]** at 1.
[8] Exhibit "B," at 3; **[Doc. 19]** at 1, & 3-4.

Though the IPD officers did not know children were present, they were aware that the address had been the scene for dozens of violent, and sometimes armed, disputes between Plaintiff Nakala Murry and John Nolden.[9] Indeed, IPD officers had been called out to the residence at least fourteen (14) times in the five years preceding the subject incident.[10] Officer Capers, himself, had previously responded to a 911 call at this address.[11] The suspect, Nolden, had been arrested numerous times for domestic violence, assault, and other violent offenses.[12]

Upon their arrival, the officers noticed that the windows to the residence had blackout screens preventing them from seeing inside.[13] Officer Capers radioed dispatch and asked who the 911 caller was, and dispatch responded the caller was Nakala Murry.[14] Officer Capers approached the front door and knocked multiple times.[15] Receiving no response, Officer Capers noted that something was not right and began checking the exterior of the darkened house.[16] While doing so, Officer Capers maintained communications with dispatch, requesting that dispatch get the caller back on the line and inform her that the officers were outside.[17] Upon communication with the caller, dispatch relayed Ms. Murry's statements that she heard the officers but the suspect would not allow her to answer the door.[18] Officer Capers asked if they had permission to kick in the door, to which dispatch, upon communication with the caller, responded that Ms. Murry gave them

---

[9] Exhibit "C," Arrests Reports & Call Log (BS 29-33), at 3; Exhibit "H;" Exhibit "L," Prior IPD Incident Reports (BS 34-57), at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); **[Doc. 19]** at 1 & 3-4.

[10] Exhibit "C," at 3; Exhibit "H;" Exhibit "L," at 11-15, & 20-21; **[Doc. 19]** at 1.

[11] Exhibit "D," IPD Incident Report for 11-7-20 (BS 81-83); **[Doc. 19]** at 1-2.

[12] Exhibit "I," IPD Arrest Reports Nolden (BS 19-28); Exhibit "J," IPD Municipal Court Abstracts Nolden (BS 15-18); **[Doc. 19]** at 2.

[13] Exhibit "B," at 2 & 3; **[Doc. 19]** at 2.

[14] Exhibit "E," Body Camera Footage, at 0:00:50-0:00:59); **[Doc. 19]** at 2.

[15] Exhibit "B," at 2 & 3; Exhibit "E," at 0:01:03, 0:01:22, 0:01:50, 0:02:49, & 0:03:05.

[16] Exhibit "B," at 2 & 3; Exhibit "E," at 0:01:50, 0:02:03, 0:02:49, & 0:03:05; **[Doc. 19]** at 2.

[17] Exhibit "B," at 2 & 3; Exhibit "E," at 0:01:34; **[Doc. 19]** at 2.

[18] Exhibit "B," at 2 & 3; Exhibit "E," at 0:02:25; **[Doc. 19]** at 2.

consent to kick it in.[19] Dispatch also informed the officers that Ms. Murry stated she was not sure if the suspect was armed.[20] Ms. Murry could be heard screaming inside, yelling "let me go!"[21] At that time, the officers drew their firearms.[22]

After multiple failed attempts to kick in the door, Ms. Murry opened it.[23] Officer Capers asked Ms. Murry where the suspect was located.[24] Ms. Murry responded with a non-verbal gesture by nodding her head and rolling her eyes at the interior of the residence towards the room on the left behind her.[25] Officer Webb told Ms. Murry to step outside and away from the door.[26] Ms. Murry then stated that the suspect was in the back room.[27] Next, Officer Capers stepped onto the threshold of the house with his flashlight providing the only light inside the residence.[28] Officer Capers and Officer Webb yelled "police" and ordered the suspect to come out multiple times.[29]

Suddenly, a male in a red shirt ran directly towards Officer Capers from the room where Ms. Murry stated that the suspect was located.[30] Officer Capers discharged his firearm, striking the individual charging towards him.[31] Moments later, Officer Capers learned for the first time that the individual in the red shirt appeared to be a child and exclaimed "Oh my God" as he helped the child exit the house.[32] This individual continued to run to the side of the road.[33] Both Officer

---

[19] Exhibit "B," at 2 & 3; Exhibit "E," at 0:02:42 & 0:03:22; **[Doc. 19]** at 2.
[20] Exhibit "B," at 2 & 3; **[Doc. 19]** at 2.
[21] Exhibit "E," at 0:03:34; **[Doc. 19]** at 2.
[22] Exhibit "B," at 2; Exhibit "E," at 0:03:37; **[Doc. 19]** at 2.
[23] Exhibit "B," at 2 & 3; Exhibit "E," at 0:03:39; **[Doc. 19]** at 2.
[24] Exhibit "B," at 2 & 3; Exhibit "E," at 0:03:41; **[Doc. 19]** at 2.
[25] Exhibit "B," at 2 & 3; Exhibit "E," at 0:03:42; **[Doc. 19]** at 2.
[26] Exhibit "B," at 2 & 3; Exhibit "E," at 0:03:43; **[Doc. 19]** at 2.
[27] Exhibit "B," at 2 & 3; **[Doc. 19]** at 2.
[28] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:03; **[Doc. 19]** at 2.
[29] Exhibit "B," at 2 & 3; Exhibit "E," at 0:03:45, 0:03:48, 0:03:51, 0:03:54, & 0:04:03.
[30] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:05; **[Doc. 19]** at 2-3.
[31] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:06; **[Doc. 19]** at 2-3.
[32] Exhibit "E," at 0:04:07-0:04:10; **[Doc. 19]** at 3.
[33] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:10-0:04:18; **[Doc. 19]** at 3.

Capers and Officer Webb immediately requested that dispatch send Med-Stat to the location.[34] Both officers immediately ran to render aid to this individual, who they then learned for the first time was Ms. Murry's minor child, A.M.[35] The suspect, John Nolden, then exited the house and was placed in handcuffs.[36] Nolden was arrested for domestic violence at the scene.[37] Officer Capers was visibly upset about the entire unexpected ordeal.[38]

Thereafter, on May 22nd, Plaintiff Murry purportedly caused a notice of claim letter to be sent to the City and Chief Sampson alleging "injuries and damages sustained on May 22, 2023."[39] On May 25th, Ms. Murry pressed charges against John Nolden for simple assault related to the subject incident due to him threatening to kill her that evening.[40] On May 30th, Plaintiffs filed the instant Complaint, alleging various claims under state and federal law against the Chief Sampson and Officer Capers, in their Individual and Official Capacities, and the City of Indianola.[41]

### III. STANDARD

Defendants seek dismissal pursuant to *Fed. R. Civ. Pro.* 12(c), or alternatively, summary judgment under *Fed. R. Civ. Pro.* 56. This Court is familiar with both standards for dismissal, such that neither need be repeated here.[42] Moreover, this Court must consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice[,]"[43]

---

[34] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:12-0:04:19; **[Doc. 19]** at 3.
[35] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:20; **[Doc. 19]** at 3.
[36] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:41; **[Doc. 19]** at 3.
[37] Exhibit "K," IPD Docs (BS 3-10), **[Doc. 20-1]**, at 2; **[Doc. 19]** at 3.
[38] Exhibit "B," at 2 & 3; Exhibit "E," at 0:04:20- 0:04:51 (repeating "Oh my God" and calling for Med-Stat); **[Doc. 19]** at 1-4.
[39] Exhibit "A," Notice of Claim Letter, **[Doc. 19-1]**, at 1.
[40] Exhibit "K," **[Doc. 20-1]**, at 2; **[Doc. 19]** at 3.
[41] Compl. **[Doc. 1]**.
[42] *See e.g., In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010); *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)); *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).
[43] *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020) (internal citations omitted).

including the relevant incident reports and arrest reports here.[44]

Moreover, the body camera footage from the incident is central to the Complaint and proper for consideration on this Motion.[45] Because video evidence is available, Fifth Circuit precedent requires this Court to "view the facts in the light depicted by the videotape."[46] "In such a case, the court is not required to favor plaintiff's allegations over the video evidence."[47] Indeed, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."[48] Regardless, this Court may consider matters outside the pleadings and render summary judgment in the alternative.[49]

## IV. ARGUMENT

### 1. Federal Law Claims

#### A. The Plaintiff's Official Capacity Claims Duplicative and Should Be Dismissed.

First, Plaintiff's official capacity claims against Officer Capers and Chief Sampson are merely duplicative of their claims against the City and should be dismissed. Under federal law, suit against an officer in his official capacity is the same thing as a suit against the municipality.[50] Where, like here, both an officer in his official capacity and a municipality are sued, normal

---

[44] *See e.g., Armstrong v. Ashley*, 60 F.4th 262, 272 n.10 (5th Cir. 2023); *Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 304 (5th Cir. 2018).

[45] *See e.g., Beroid v. Lafleur*, No. 22-30489, 2023 U.S. App. LEXIS 9644, at *11 (5th Cir. Apr. 21, 2023) (per curiam) (quoting *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); citing *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021)).

[46] *Boyd v. McNamara*, 74 F.4th 662, 665-66 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration omitted)).

[47] *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam) (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

[48] *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2519, 209 L. Ed. 2d 551 (2021) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

[49] *See e.g., Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015); *Galvan v. Calhoun Cty.*, 719 F. App'x 372, 375 (5th Cir. 2018) (per curiam).

[50] *Walker v. Howard*, 517 F. App'x 236, 237-38 (5th Cir. 2013) (internal citations omitted).

6

practice is to dismiss the official in his official capacity because he is duplicative.[51] Accordingly, Plaintiff's official capacity claims against Officer Capers and Chief Sampson must be dismissed.

### B. Officer Capers and Chief Sampson Are Entitled to Qualified Immunity

Officer Capers and Chief Sampson are presumed to enjoy qualified immunity because abrogation of qualified immunity is the exception, not the rule.[52] Public officials, such as police officers, acting within the scope of their official duties, are shielded by qualified immunity from claims of civil liability, including Section 1983 claims.[53] Qualified immunity is a viable defense unless the existence of a constitutional violation is "beyond debate."[54] When qualified immunity is claimed, the burden falls on the plaintiff to show it is not applicable.[55]

"'The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[56] Therefore, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[57] Importantly, if public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.[58] "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."[59]

When evaluating a qualified immunity defense, courts conduct a "well-known" two-prong

---

[51] *Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001); *Breland v. Forrest Cty. Sheriff's Dep't,* 2013 U.S. Dist. LEXIS 53503, at *12-13 (S.D. Miss. Apr. 15, 2013).

[52] *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

[53] *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001).

[54] *Ashcroft v. Al-Kidd,* 563 U.S. 731,741(2011).

[55] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[56] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (internal quotations omitted).

[57] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[58] *Mullenix,* 577 U.S. at 10.

[59] *Malley*, 475 U.S. at 341

inquiry.[60] Courts have the discretion to "address these two elements in either order, and need not proceed to the second where the first is resolved in the negative."[61] Here, Plaintiff must allege a violation of a constitutional right and then must show that the right was clearly established in light of the specific context of the case in order to overcome the qualified immunity defense.[62] This, Plaintiff has not done and cannot do.

Furthermore, supervisors, like Chief Sampson, "are entitled to qualified immunity unless *both* the underlying constitutional right and the supervisors' duty with respect to that right were clearly established."[63] Accordingly, "'plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'"[64] Plaintiff's federal claims fail as to both parts of this test and must be dismissed.

### 1.      Plaintiff Cannot Establish a Constitutional Violation

Under §1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[65] Under controlling law, an action by law enforcement must be intentionally—rather than accidentally—directed towards the plaintiff for that action to be deemed violative of the plaintiff's constitutional right to be free from excessive force.[66]

---

[60] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).

[61] *Id.* (citations omitted).

[62] *Thompson v. Mercer,* 762 F.3d 433, 437 (5th Cir. 2014).

[63] *Pena v. Givens,* 637 F. App'x 775, 786 (5th Cir. 2015) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc)).

[64] *Estate of Henson v. Callahan*, 440 F. App'x 352, 357 (5th Cir. 2011) (quoting *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009); citing *Rios v. City of Del Rio,* 444 F.3d 417, 425-26 (5th Cir. 2006) (collecting cases)).

[65] *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

[66] *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (reasoning that law enforcement action cannot be simultaneously unknowing and violative of constitutional rights).

**"[T]here is no Fourth Amendment violation in the absence of intentional conduct."**[67]
The Fifth Circuit has emphasized in analyzing a Fourth Amendment excessive force claim, it is
not relevant whether an officer "intentionally shot a bullet" that hit the plaintiff; rather, the ultimate
question is whether the officer *intended* to shoot *the plaintiff* specifically.[68] Furthermore, there can
be no Fourth Amendment violation where the officers' conduct is directed appropriately at the
suspect but inadvertently injures an innocent person because the means were not deliberately
applied to the victim.[69] Because Plaintiff does not allege any intentional conduct by Officer Capers
directed at any Plaintiff, Plaintiff fails to state a Fourth Amendment claim under §1983. Indeed,
all of Plaintiff's allegations and the undisputable facts show that the subject shooting was
unintentional, which is non-actionable.

For instance, in *Melvin v. Karman*, the Fifth Circuit held there was no constitutional
violation because nothing in the record suggested that the officer intentionally and deliberated shot
the decedent and the officer's use of force in the situation was not unreasonable.[70] In *Melvin*, the
officer discovered an altercation where the decedent was being attacked by three assailants.[71] The
officer drew his gun, approached the assailants, and announced his presence.[72] Two of the
assailants fled; the third remained with a gun pointed at the decedent and failed to comply with the
officer's repeated commands to drop his weapon.[73] The officer shot five bullets, four of which

---

[67] *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018) (emphasis added); *see also, Pearce v. Doe*, 849 F. App'x 472, 475 (5th Cir. 2021); *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

[68] *Melvin v. Karman*, 550 F. App'x 218, 219-20 (5th Cir. 2013).

[69] 666 F. App'x 337, 341-42 (5th Cir. 2016) (quoting *Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001)) (compiling cases) (other citations omitted).

[70] 550 F. App'x 218, 220 (5th Cir. 2013).

[71] *Id.* at 219.

[72] *Id.*

[73] *Id.*

9

struck the assailant, but one bullet hit and killed the decedent.[74]

Just like here, the complaint in *Melvin* never alleged that the officer intended to shoot the plaintiff, but only alleged that "[o]ne of the bullets intentionally fired by [the officer] traveled straight into the body of [the plaintiff]."[75] The Fifth Circuit determined that when the officer "merely accidentally shot [the plaintiff], then all of the claims fail because the use of force against [the suspect] in the circumstances would not have been unreasonable."[76]

In the strikingly similar case *Blair v. City of Dallas,* the Fifth Circuit likewise found no Fourth Amendment violations from an officer's unintentional conduct.[77] There, after a brief exchange, officers saw the suspicious individual enter his apartment where, unbeknownst to the officers, a child and another individual were located.[78] When this suspect reemerged from the apartment holding a flashlight with a handle resembling a pistol grip, the officers fired multiple shots at the suspect in the doorway, thus into the apartment.[79] The innocent bystander and child, in addition to the suspect, filed suit against the officers and the City alleging that the officers violated their Fourth Amendment rights.[80] The Fifth Circuit determined in *Blair* that there was no constitutional violation because the officers' use of force was not deliberately applied to the bystander and child as, just like here, there was no evidence that the officers knew the bystander and child were inside the apartment when they fired the shots.[81]

Like the similar Eleventh Circuit case of *Corbitt v. Vickers*, the minor A.M. here "was not

---

[74] *Id.*
[75] *Id.*
[76] *Id.* at 220.
[77] 666 F. App'x 337, 339 (5th Cir. 2016).
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.* at 342.

10

the intended target of an active arrest or investigatory stop (in which case the Fourth Amendment clearly would apply), nor was he an arrestee or pretrial detainee (in which case the Fourteenth Amendment clearly would apply);" rather, A.M. just so happened to be in his home "when it became an arrest scene by virtue of circumstances beyond his control."[82] Such circumstances in this matter make perfectly clear: Defendant Officer Capers did not violate the Plaintiff's clearly established constitutional rights. Officer Webb and Officer Capers had received a call from dispatch to respond to a 911 call for a violent domestic disturbance, which by its very nature posed an unpredictable and volatile situation,[83] at the dark hour of 4 a.m.[84] At no point were the officers informed that children were present at the scene.[85]

In fact, the 911 caller never stated that children were present in the residence; rather, her statements reasonably conveyed that only two individuals were present in the home: Nakala Murry and John Nolden.[86] Even upon exiting the residence, Ms. Murry _never_ informed the officers that any children were present nor that anyone other than the suspect, Nolden, was within the residence.[87] Rather, when Officer Capers asked Ms. Murry where the suspect was located, she responded by indicating with a non-verbal gesture at the interior of the residence towards the room on the left behind her and then stated that the suspect was in the back room.[88]

Though officers did not know children were present, they were aware that the address had been the scene for dozens of violent, and sometimes armed, disputes between Plaintiff Nakala

---

[82] 929 F.3d 1304, 1313 (11th Cir. 2019).
[83] _United States v. Rodriguez_, 601 F. 3d 402, 408 (5th Cir. 2010); _Mata v. City of Kingsville_, 275 F. App'x 412, 416 (5th Cir. 2008) (internal citations omitted).
[84] Exhibit "B," **[Doc. 31-2]** at 1-3; Exhibit "K," **[Doc. 31-11 & 20-1]** at 3.
[85] Exhibit "B," **[Doc. 31-2]** at 3; Exhibit "K," **[Doc. 31-11 & 20-1]** at 3; **[Doc. 19]** at 1, & 3-4.
[86] Exhibit "B," **[Doc. 31-2]** at 2 & 3; Exhibit "H," **[Doc. 31-8]** at 13; **[Doc. 19]** at 3-4.
[87] Exhibit "B," **[Doc. 31-2]** at 2 & 3; Exhibit "E," **[Doc. 31-5]** at 0:03:43-0:04:03; **[Doc. 19]**.
[88] Exhibit "B," **[Doc. 31-2]** at 2 & 3; Exhibit "E," **[Doc. 31-5]** at 0:03:42; **[Doc. 19]** at 2.

Murry and John Nolden in the five years preceding the subject incident, and that the suspect, Nolden, had been arrested numerous times for domestic violence, assault, and other violent offenses.[89] The officers only drew their firearms after being informed that Ms. Murry gave consent for them to kick in the door, after dispatch informed them that it was uncertain whether the suspect was armed, and upon hearing Ms. Murry screaming inside the residence, yelling "let me go!"[90]

Thus, when the individual ran directly at Officer Capers from the back room where he had been informed the suspect was located,[91] the only reasonable inference in that moment was that the suspect was charging at him, a suspect with a violent criminal history who was engaged in violent criminal activity at that time and had attempted to prevent the victim from exiting the residence. There is no evidence that Officer Capers intended to shoot A.M., and indeed, there is overwhelming evidence that he did not.

As stated by this Court in *Baskin v. City of Houston*, "[t]o prevail on Plaintiff's theory the shooting violated [their] Fourth Amendment rights, Plaintiffs must produce evidence that the shooting was __*both*__ *intentional* and *unreasonable.*"[92] As all evidence makes pertinently clear, Officer Capers reasonably reacted to what any reasonable officer would have believed to have been the subject violent offender charging him and did not discharge his firearm with the intent to shot A.M. In fact, Plaintiff's do not even claim that the shooting was intentional; rather, the entirety

---

[89] Exhibit "C," **[Doc. 31-3]** at 3; Exhibit "H," **[Doc. 31-8]**; Exhibit "I," **[Doc. 31-9]**; Exhibit "J," **[Doc. 31-10]**; Exhibit "L," **[Doc. 31-12]** at 7, 16-17, 20-21, & 22-23 (disputes involving Ms. Murry and/or Mr. Nolden where a gun was used); **[Doc. 19]** at 1 & 3-4.

[90] Exhibit "B," **[Doc. 31-2]** at 2 & 3; Exhibit "E," **[Doc. 31-5]** at 0:02:25, 0:02:42, 0:03:22, 0:03:34, & 0:03:37; **[Doc. 19]** at 2.

[91] Exhibit "B," **[Doc. 31-2]** at 2 & 3; Exhibit "E," **[Doc. 31-5]** at 0:04:05-0:04:07; **[Doc. 19]**.

[92] *Baskin v. City of Hous*., No. 1:07CV58-SA-JAD, 2008 U.S. Dist. LEXIS 82455, at *7-8, *aff'd* 378 F. App'x 417 (5th Cir. 2010) (citing *Brower*, 596-97, 109 S. Ct. 1378) (emphasis added).

of Plaintiff's claims are crouched in terms of negligence and lack of reasonable care.[93] "***Negligent or accidental conduct by police officers does not rise to the level of a constitutional violation***."[94] Just as in *Melvin*, absolutely nothing suggests that Officer Capers, when facing a potentially armed, violent suspect and reasonably concerned for his own safety and the safety of others, took the time to deliberately to direct his bullet for the purpose of hitting A.M., whose presence as a victim of the domestic violence situation the officer was attempting to end was entirely unknown.[95]

Moreover, Plaintiff's Fourth Amendment claims fail as Officer Capers' conduct was neither excessive nor unreasonable. To establish an excessive force claim under the Fourth Amendment, Plaintiff must demonstrate an injury that resulted "'directly and only from a ***clearly*** excessive and objectively unreasonable use of force.'"[96] Importantly, the reasonableness of force "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[97] Thus, this objective standard analyzes reasonableness "'in light of the facts and circumstances confronting [the officer][.]'"[98] The determination of reasonableness "'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[99]

Notably, "no right is guaranteed by federal law that one will be free from circumstances

---

[93] Compl. **[Doc. 1]** at ¶14, ¶22, ¶25, ¶32, ¶33, ¶36, ¶48, & ¶51.

[94] *Baskin*, 2008 U.S. Dist. LEXIS 82455, at *7-8, *aff'd* 378 F. App'x 417 (5th Cir. 2010) (citing *Brower*, 596-97, 109 S. Ct. 1378) (emphasis added); *see also, McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002); *Dunn v. Lauderdale Cnty.*, No. 3:15CV352 DPJ-FKB, 2015 U.S. Dist. LEXIS 152309, *7 (N.D. Miss. Nov. 10, 2015); *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013).

[95] *Melvin*, 550 Fed. Appx. at 220.

[96] *Wilson v. City of Bastrop,* 26 F.4th 709, 713 (5th Cir. 2022) (*quoting Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021)) (emphasis added).

[97] *Trammell,* 868 F.3d at 340 (quoting *Graham*, 490 U.S. at 396).

[98] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015).

[99] *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (quoting *Graham*, 490 U.S. at 396-97).

where he will be endangered by the misinterpretation of his acts."[100] Indeed, the Fourth Amendment "does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists."[101] "'Use of deadly force is not unreasonable when an officer would have reason to **believe** that the suspect poses a threat of serious harm to the officer or others.'"[102] Thus, "'when the officer reasonably believes that the suspect poses a threat of serious harm[,]'" the "'officer's use of deadly force is not excessive, and thus no constitutional violation occurs[.]'"[103]

The Fifth Circuit has refused "to recognize a constitutional claim where a police officer used deadly force in response to a reasonable belief that an individual posed a threat of serious harm."[104] Importantly, courts carefully avoid "'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'"[105] Numerous cases have established that an objectively reasonable officer could believe that a subject suddenly charging at him in the dark posed a threat of serious harm.[106] Importantly, "[l]iability for the officer does not turn on where [the subject] might have planned to run after reaching [the officer]" but instead "turns on objective reasonableness based on what the officer saw."[107]

Officer Capers walked into a volatile situation where he had to make a split-second

---

[100] *Watson*, 532 F. App'x at 458 (quoting *Young v. Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985)).

[101] *Cole v. Carson,* 935 F.3d 444, 468 (5th Cir. 2019) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008)).

[102] *Ramirez*, 542 F.3d at 129 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)) (emphasis added).

[103] *Batyukova v. Doege,* 994 F.3d 717, 725 (5th Cir. 2021) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

[104] *Ramirez*, 542 F.3d at 130 (citing *Young*, 775 F.2d at 1350-53).

[105] *Batyukova*, 994 F.3d at 725 (quoting *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019)).

[106] *See e.g., Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017); *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011); *Renfroe*, No. 3:18-CV-609-DPJ-LRA, 2020 U.S. Dist. LEXIS 200586, at *12-13 (S.D. Miss. Oct. 28, 2020), *aff'd,* No. 20-61101, 2022 U.S. App. LEXIS 6577 (5th Cir. Mar. 15, 2022); *Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018).

[107] *Guerra*, 703 F. App'x at 317 (5th Cir. 2017).

14

decision based upon the facts and circumstances known to him at the time. Officer Capers was only aware that the violent suspect remained inside, and therefore, reasonably believed that the individual charging at him was the suspect. Any reasonable officer in Officer Capers' position would have objectively believed that the suspect with a violent criminal history was charging at him, that the suspect posed a serious threat to the officers as well as the victim through that conduct and would have reacted similarly. Nothing whatsoever required Officer Capers to wait for the individual charging him to shoot or attempt to harm him prior to taking preventative action. Thus, Officer Capers acted objectively reasonably under the circumstances known to him, and Plaintiff's Fourth Amendment claims fail.

Just as Plaintiff's allegations do not, and cannot, rise to the level of a Fourth Amendment violation, Plaintiff fails to state a Fourteenth Amendment claim under §1983. The Fourteenth Amendment is violated by an officer's conduct "'only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"[108] Negligence does not meet the "shock the conscience" standard.[109] Accordingly, "when officers are faced with dangerous situations in which split-second decisions must be made, the bar for demonstrating that certain behavior shocks the conscience is higher."[110]

"Where unforeseen circumstances demand instant judgment," then "even deliberate indifference does not shock the conscience since decisions made in such circumstances are not deliberate."[111] Thus, "[w]here instant judgment is required, only deliberate actions intended to

---

[108] *Baskin*, 2008 U.S. Dist. LEXIS 82455, at *10-11, *aff'd* 378 F. App'x 417 (5th Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).
[109] *Id.* (citing *Lewis*, 523 U.S. at 849, 118 S. Ct. 1708).
[110] *Id.* at *11 (citing *Lewis*, 523 U.S. at 853, 118 S. Ct. 1708).
[111] *Id.* at *12 (citing *Lewis*, 523 U.S. at 851-53, 118 S. Ct. 1708).

harm another shock the conscience."[112] Plaintiff, therefore, had to allege that Officer Capers had a purpose to cause harm. However, as Plaintiff repeatedly characterizes Officer Capers' conduct as negligent in nature rather than intentional,[113] neither Plaintiff's Fourth nor Fourteenth Amendment claim can survive.

## 2. The Constitutional Violations Alleged Are Not Clearly Established.

In the case at hand, the Court need not reach this analysis as Plaintiff has failed to meet the first prong of stating any constitutional violation. But, even if this Court were to reach this prong, Plaintiff's claims must still fail because Plaintiffs cannot demonstrate an "'existing precedent [that] place[s] the . . . constitutional question[s] *beyond debate*.'"[114] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[115] "This 'objective legal reasonableness' standard 'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.'"[116]

"Clearly established law must be particularized to the facts of a case. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate."[117] "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality."[118] To meet this high burden, Plaintiff must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high

---

[112] *Id.* (citing *Lewis*, 523 U.S. at 836, 118 S. Ct. 1708).

[113] *See e.g.,* Compl. **[Doc. 1]** at ¶¶32-34, ¶42, & ¶51.

[114] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (en banc).

[115] *Mullenix*, 577 U.S. at 10 (citation omitted).

[116] *Watson*, 532 F. App'x at 456 (quoting *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation omitted).

[117] *Mullenix*, 577 U.S. at 10 (quotations and citation omitted).

[118] *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

degree of particularity."[119] It is simply insufficient for Plaintiff to just "show the existence of a genuine dispute on immaterial facts or that a collection of undisputed facts 'imply a speculative scenario that has no factual support.'"[120] Furthermore, "[c]ases that are 'too factually distinct to speak *clearly* to the *specific circumstances* **here**' are not enough to deny qualified immunity."[121] The precise question is "whether a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information the officer[] possessed."[122]

As demonstrated by Defendants cases in support of the constitutionality of Officer Capers' actions, Plaintiff cannot do this. Indeed, courts have recently determined that such an unintentional shooting would not violate any clearly established law.[123] Moreover, because numerous courts have determined that an objectively reasonable officer could believe that a subject suddenly charging at him in the dark posed a threat of serious harm,[124] a reasonable officer in Officer Capers' position could have believed his conduct to be lawful in light of clearly established law and the information the officer possessed. As such, Officer Capers and Chief Sampson are entitled to qualified immunity, and Plaintiffs' claims must be dismissed.

### C.    Plaintiff Cannot State a Plausible Municipal or Supervisory Liability Claim.

Further, Plaintiff fails to state a claim against the City or Chief Sampson for supervisory

---

[119] *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

[120] *Watson*, 532 F. App'x at 456 (quoting *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009)).

[121] *Cleveland v. Bell*, 938 F.3d 672, 677 (5th Cir. 2019) (quoting *Mullenix*, 136 S. Ct. at 312 (emphasis added).

[122] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (internal quotation omitted) (cleaned up).

[123] *See e.g., Corbitt v. Vickers*, 929 F.3d 1304, 1321 (11th Cir. 2019) (compiling Supreme Court decisions and other circuit courts decisions in determining that there is no clearly established constitutional violation in the unintentional shooting context); *Melvin*, 550 F. App'x at 219; *Blair*, 666 F. App'x at 342.

[124] *See e.g., Guerra*, 703 F. App'x at 317 (per curiam); *Rockwell*, 664 F.3d at 991-92; *Renfroe*, 2020 U.S. Dist. LEXIS 200586, at *12-13 (S.D. Miss. Oct. 28, 2020), *aff'd,* No. 20-61101, 2022 U.S. App. LEXIS 6577 (5th Cir. Mar. 15, 2022); *Romero*, 888 F.3d at 178.

or municipal liability because, as previously shown, there was no constitutional violation, and Plaintiff does not identify any official policy nor any official policy that served as the moving force for any alleged violation. Neither a supervisor, like Chief Sampson, nor a municipality, like the City of Indianola, can be held liable under § 1983 under a theory of *respondeat superior*.[125] Plainly, "[p]ersonal involvement is an essential element of a civil rights cause of action."[126]

Because vicarious liability is inapplicable to § 1983 suits, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"[127] To be sure, "'a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'"[128] Plaintiff's Complaint is devoid of any factual allegations demonstrating how Chief Sampson caused or was personally involved with any constitutional deprivation.[129] At most, Plaintiff merely alleges that Chief Sampson should be liable because he was the Chief of Police at all relevant times. "That itself renders the complaint insufficient to state a § 1983 claim against [Chief Sampson]."[130]

As Plaintiff does not allege that Chief Sampson was directly involved in the subject incident, Plaintiff had to allege that there was some "'sufficient causal connection' between the supervisor's conduct and the constitutional violation."[131] Thus, courts "'use the same standard in

---

[125] *See e.g., Mason*, 806 F.3d at 280 (citing *Monell*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *Rios*, 444 F.3d at 425 (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

[126] *Wells v. Collier*, 834 F. App'x 949, 950 (5th Cir. 2021) (internal citations omitted).

[127] *Floyd v. City of Kenner*, 351 F. App'x 890, 897 (5th Cir. 2009) (internal citations omitted).

[128] *Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023) (internal citations omitted) (alteration removed).

[129] *See generally,* Compl. **[Doc. 1].**

[130] *Rios*, 444 F.3d at 425 n.9.

[131] *Rios*, 444 F.3d at 425 (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

assessing an individual supervisor's liability under § 1983' as that used 'in assessing a municipality's liability' thereunder."[132]

The Supreme Court has long held a municipality cannot be simply held liable under § 1983 solely because its employee committed a constitutional tort.[133] Instead, Plaintiff's claim of municipal liability under §1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[134] Thus, municipal liability under §1983 requires Plaintiffs first "show a violation of a constitutional right."[135] It is well-established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing."[136] As Plaintiff cannot demonstrate a constitutional violation, there necessarily can be no municipal nor supervisory liability.[137]

Even if Plaintiff could demonstrate some violation, a mere violation is never enough.[138] There must be "something more" to impose liability on a municipality or supervisor, meaning a demonstration that the constitutional violation occurred because of a municipal policy or custom.[139] Thus, Plaintiff was also required to specifically identify an official policy that was the moving force behind the alleged constitutional rights violation.[140] Alternatively, a plaintiff may plead "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to

---

[132] *Rios*, 444 F.3d at 426 (quoting *Doe*, 15 F.3d at 453)).
[133] *Mason*, 806 F.3d at 280 (citing *Monell*, 436 U.S. at 658).
[134] *Mason,* 806 F.3d at 280 (citing *Piotrowski v. City of Hous*., 237 F.3d 567, 578 (5th Cir. 2001)).
[135] *Petersen v. Johnson,* 57 F.4th 225, 235 (5th Cir. 20230 (internal citation omitted).
[136] *Doe ex rel, Magee v. Covington County School Dist. Ex rel. Magee,* 675 F.3d 849, 867 (5th Cir. 2012).
[137] *Id.*
[138] *See e.g., Piotrowski*, 237 F.3d at 578; *Mason*, 806 F.3d 268, 280 (5th Cir. 2015).
[139] *Piotrowski*, 237 F.3d at 578.
[140] *Armstrong*, 60 F.4th at 276 (5th Cir. 2023) (internal citations omitted).

19

constitute a custom that fairly represents municipal policy."[141] Furthermore, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."[142]

Importantly, "'[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'"[143] This "moving force" inquiry required Plaintiffs to both show culpability and causation under a standard higher than 'but for' causation."[144] Critically, "a showing of heightened negligence is insufficient[.]"[145] Plaintiff fails to identify **any** specific official policy implemented by the City nor Chief Sampson whatsoever, let alone one that somehow served as a moving force to their alleged injuries.[146] Indeed, Plaintiff alleges on the one hand that their alleged injuries were the result of some "official policy"[147] but on the other that Defendants "failed to properly follow and/or apply their own city and law enforcement rules, ordinances, regulations, policies, and procedures[.]"[148]

Not only do Plaintiff's claims against the City and Chief thereby fail as Plaintiff cannot identify such a policy, Plaintiff's claims fail because she cannot meet the rigid "but-for" causation standard to show that some unidentified policy somehow caused the injuries alleged. In fact, the IPD policies here were clearly constitutional, and Officer Capers complied with the policies at all times.[149] Thus, Plaintiff's supervisory and municipal liability claims have no basis in law or fact.

---

[141] *Id.* (quoting *Webster*, 735 F.2d at 841).
[142] *Id.* (quoting *Webster*, 735 F.2d at 841).
[143] *Beaulieu v. Lavigne*, 539 F. App'x 421, 425 (5th Cir. 2013) (quoting *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997)).
[144] *Mason*, 806 F.3d at 280 (internal citations omitted).
[145] *Id.* (citing *Piotrowski,* 237 F.3d at 579).
[146] *See generally*, Compl. **[Doc. 1].**
[147] Compl. **[Doc. 1]** at ¶8.
[148] Compl. **[Doc. 1]** at ¶41.
[149] Exhibit "G," IPD Relevant Policies & Procedures (BS 107-120), **[Doc. 31-7]** at 1-14 (Use of Force Policy, Patrol-2002-30, at 1-10) (Post-Critical/Traumatic Incident Procedures, at 11-14).

Plaintiff also makes the vague, conclusory assertion that "over the course of the past several years, there have been numerous complaints made about incidents of abuse, excessive force, etc. caused by Officer Greg Capers of the Indianola Police Department."[150]  Such an unofficial custom must be "so persistent and widespread as to practically have the force of law."[151]  Indeed, under the demanding unofficial custom theory, Plaintiffs must identify "'sufficiently numerous prior incidents,' as opposed to 'isolated instances[,]'" and those prior incidents must be both similar and specific to the alleged violation in question.[152]  Furthermore, to state a viable claim on this basis, "'[a]ctual or constructive knowledge of such custom must be attributable' to the policymaker."[153]

Plaintiff provides no factual allegations to support this assertion nor does Plaintiff allege any causal connection between such unidentified "complaints" with the instant matter. "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[154]  Accordingly, Plaintiff's allegations do not "demonstrate at least a pattern of similar violations" necessary for supervisory liability or municipality liability.[155] "'Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.'"[156]  Threadbare assertions that defendants "'continue to violate the Rights of the Plaintiff[]'" or that officers were engaged in some "repeated pattern of criminal injustice" are not sufficient to state a plausible claim under § 1983.[157]

---

[150] Compl. **[Doc. 1]** at ¶44.

[151] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[152] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

[153] *Armstrong*, 60 F.4th at 276 (quoting *Webster*, 735 F.2d at 841).

[154] *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (internal citations omitted).

[155] *Rios*, 444 F.3d at 427 (internal citations omitted).

[156] *Mason*, 806 F.3d at 280 (internal citations omitted).

[157] *Moore v. Union Cty.*, No. 3:22CV92-GHD-JMV, 2023 U.S. Dist. LEXIS 27624, at *7-8 (N.D. Miss. Feb. 17, 2023).

The claims based upon alleged failures to monitor, train, or supervise likewise fail. Plaintiff had to plead facts plausibly demonstrating that "(1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's injury."[158] The Supreme Court has emphasized that **"culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."**[159] "In order for liability to attach based on an 'inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.'"[160] Similarly, a plaintiff must allege with specificity how the supervision at hand was inadequate.[161]

Plaintiff failed to point to any policy or any training program nor any pattern of similar violations to put the City or Chief on notice that the training or supervision was inadequate.[162] Tellingly, the Supreme Court has never found municipal liability based on a failure-to-train theory.[163] Moreover, the City and Chief Sampson are automatically insulated from liability, since it is undisputable that Officer Capers is a certified law enforcement officer.

The Fifth Circuit "has held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers."[164] Courts have long held that Mississippi's law enforcement

---

[158] *Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) (internal citation omitted).

[159] *Clyce v. Hunt Cty.*, 515 F. App'x 319, 323 (5th Cir. 2013) (quoting *Connick*, 131 S.Ct. at 1359).

[160] *Id.* (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

[161] *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 n.34 & 383 (5th Cir. 2005).

[162] *See generally,* Compl. **[Doc. 1]**; *Anokwuru*, 990 F.3d at 965.

[163] *See Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018).

[164] *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009).

academy includes sufficient training to defeat a failure-to-train theory.[165] At most, Plaintiff's

Complaint merely sets forth "'a formulaic recitation of the elements of [his] cause of action,'" and

"'naked assertion[s]' devoid of 'further factual enhancement[,]'"[166] which this Court is not allowed

to accept in the place of well pleaded facts.[167]  Dismissal is proper.

## 2.      State Law Claims

### A.      Plaintiff's State Law Claims Are Procedurally Barred.

All of Plaintiff's state law claims are procedurally barred and must be dismissed. It cannot

be disputed that the <u>MTCA</u> exclusively governs the claims at bar.[168]  One restriction set forth by

the <u>MTCA</u> is the mandatory pre-suit notice provision at *Miss. Code Ann*. §11-46-11. Pursuant to

§11-46-11, a person seeking to assert a claim under the MTCA "**<u>must</u>** file a notice of claim" and

is required to do so "***at least ninety (90) days before instituting suit***[.]"[169]  It is well-settled that

the notice requirement "imposes a condition precedent to the right to maintain an action."[170]

Therefore, "absent compliance with the statute, [Defendants'] immunity is intact."[171]  "Failure to

comply with the Notice of Claim requirement is an absolute bar to claims under the MTCA, and

dismissal with prejudice is appropriate where the plaintiff fails to do so."[172]

The 90-day notice requirement is a "'hard-edged, mandatory rule which the Court strictly

---

[165] *See, e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010).

[166] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555-57).

[167] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

[168] *Gerhart v. Barnes*, 724 F. App'x 316, 327 (5th Cir. 2018) (quoting *Conrod v. Holder*, 825 So. 2d 15, 19 (Miss. 2002)); *Miss. Code Ann*. §11-46-5(2) & §11-46-7.

[169] *Miss. Code Ann*. §11-46-11(1) (emphasis added).

[170] *Clanton v. DeSoto Cty. Sheriff's Dep't*, 963 So. 2d 560, 563 (Miss. App. 2007) (quoting *Gale v. Thomas*, 759 So.2d 1150, 1159 (P33) (Miss. 1999)).

[171] *Tallahatchie Gen. Hosp. v. Howe*, 49 So.3d 86, 92 (¶18) (Miss. 2010).

[172] *See, e.g., Thomas v. Madison Cty.*, No. 3:19-CV-42-HTW-LRA, 2021 U.S. Dist. LEXIS 253188, at *23 (S.D. Miss. Mar. 29, 2021) (citing *Dingler v. City of Southaven*, 2009 U.S. Dist. LEXIS 26698, 2009 WL 902045, *5 (N.D. Miss. Mar. 31, 2009)).

enforces.'"[173] Further, "failure to comply with the ninety-day waiting requirement requires dismissal."[174] Similarly, "[t]he Mississippi Supreme Court has held that strict compliance with the MTCA is required regarding to whom pre-suit notice must be given."[175]

Plaintiff bears the burden of proving compliance with §11-46-11.[176] Absent proof that the required notice of claim was timely and properly served, any claims under the MTCA are barred.[177] It cannot be reasonably disputed that Plaintiffs failed to wait the required 90 days to file suit,[178] and thereby failed to comply with §11-46-11(1). Also, Plaintiff did not send any notice of claim whatsoever to Officer Capers, which requires dismissal of those claims as notice of all their state law claims against Officer Capers in his official capacity was required.[179] Accordingly, Plaintiff's failure to comply with §11-46-11(1) requires dismissal.

Furthermore, *Miss. Code Ann*. § 11-46-11(2)(b) requires that every notice of claim contain a short and plain statement of the facts upon which the claim is based, including seven required categories of information such as the circumstances which brought about the injury, the time and place the injury occurred, the Plaintiff's address at the time of the incident and time of making the

---

[173] *Univ. of Miss. Med. Ctr. v. Aycock,* 369 So. 3d 534, 539 (Miss. 2023) (quoting *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006)).

[174] *Id.* (citing *Easterling*, 928 So. 2d at 820).

[175] *Esco v. Madison Cty*., 331 So. 3d 545, 551 (Miss. App. 2021) (internal citations omitted).

[176] *See e.g., Warnock Eng'g, LLC v. Utilities*, No. 3:17cv160-HSO-JCG, 2020 U.S. Dist. LEXIS 263303, at *39 (S.D. Miss. Mar. 2, 2020).

[177] *See e.g., Burnett v. Hinds Cty*., 313 So. 3d 471, 476 (¶14) (Miss. 2020); *B.G. v. Banks*, 301 So. 3d 55, 61 (¶18) (Miss. App. 2020); *Johnson v. Clarksdale Pub. Utils. Comm'n*, No. 4:21-CV-120, 2023 U.S. Dist. LEXIS 48476, at *7 (N.D. Miss. Mar. 22, 2023)

[178] Compl. **[Doc. 1]** (filed 5-30-23); Notice of Claim Letter, **[Doc. 19-1]** at 1 (dated 5-22-23) (containing two separate tracking numbers, neither of which could possibly pertain to this suit as both numbers show pick up date prior to the subject incident, as discussed in Defendants' Response in Opposition to Plaintiffs' Motion for Leave to Amend).

[179] *Johnson v. City of Shelby*, 743 F.3d 59, 63 (5th Cir. 2013) (quoting *McGehee v. DePoyster*, 708 So. 2d 77, 79 (Miss. 1998) *rev'd on other grounds*, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) (per curiam).

24

claim, the names of all persons known to be involved, the amount of money damages sought.[180] As to the seven required categories of information, "the failure to provide **one** of the seven categories **is failure to comply**."[181] Under the MTCA, Mississippi courts have made clear that **all seven categories must be included** in the notice of claim in order to even reach the issue of substantial compliance; otherwise, any suit based upon the notice is subject to dismissal.[182]

Plaintiff's notice letter does not satisfy the content requirements set forth by §11-46-11(2)(b) as the letter purportedly sent to the City and Chief on May 22nd fails to provide any information whatsoever as to Plaintiff's residence at the time of injury nor Plaintiff's residence at the time of sending notice.[183] This failure alone constitutes non-compliance with the MTCA's notice requirements, thereby requiring dismissal.[184] Further, Plaintiff's notice letter fails to actually identify the date of the injury alleged as it lists the date as May 22nd;[185] however, the Complaint identifies the date as May 20th.[186]

Moreover, the purported notice fails to identify the circumstances that brought about the alleged injury nor the names of those known to be involved in the alleged injury as required. The scant summary of facts in the purported notice merely states that: "As a result of the subject misconduct of the aforementioned officers, [A.M.], a minor, sustained injuries and damages."[187] Nowhere in the notice letter are the "aforementioned" officers named nor the acts of alleged

---

[180] *Miss. Code Ann.* § 11-46-11(1)&(2)(b).
[181] *Parker v. Harrison Cty. Bd. of Supervisors*, 987 So. 2d 435, 439 (¶18) (Miss. 2008) (quoting *South Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1257-58 (Miss. 2006)) (emphasis added).
[182] *Newton v. Lincoln Cty.,* 86 So. 3d 270, 274 (Miss. App. 2012) (internal citations omitted).
[183] Notice of Claim Letter, **[Doc. 19-1]** at 1-3.
[184] *See e.g., Dobbs v. City of Columbus*, 285 So. 3d 1219, 1222 (Miss. App. 2019).
[185] Notice of Claim Letter, **[Doc. 19-1]** at 1-2 ("sustained on May 22, 2023.")
[186] Compl. **[Doc. 1]** at ¶¶9-10.
[187] Notice of Claim Letter, **[Doc. 19-1]** at 2.

misconduct identified.[188] Indeed, the notice letter only references an "Officer John Doe."[189] The notice letter failed to even identify Officer Capers, let alone give notice of the claims against him. Importantly, the letter fails to identify the amount of money damages sought as required by §11-46-11(2)(b)(iii),[190] which by itself requires dismissal.[191] Thus, the cumulative failures of Plaintiff's purported notice letter establish that "[Plaintiffs] failed to comply with the MTCA's statutory notice requirements," requiring dismissal of the state law claims.[192]

### B.    Defendants Are Immune To All of Plaintiff's State Law Claims

#### 1.    Law Enforcement Immunity

Even if Plaintiff's state claims were not procedurally barred, her state claims must fail as Defendants are immune under the MTCA. Plaintiffs allege state law claims crouched in terms of negligence and reckless disregard.[193] These claims are barred by the MTCA's law enforcement immunity provision, §11-46-9(1)(c), under which Defendants are immune if no officer acted with reckless disregard.[194] Importantly, "training police officers and equipping them with police vehicles are 'activities relating to police protection' entitled to police-protection immunity."[195]

Reckless disregard has been defined by the Mississippi Supreme Court as "willful or wanton conduct which requires **knowingly and intentionally** doing a thing or wrongful act."[196] Furthermore, reckless disregard is generally "accompanied by a conscious indifference to

---

[188] *See generally,* Notice of Claim Letter, **[Doc. 19-1]**.
[189] Notice of Claim Letter, **[Doc. 19-1]** at 1-2.
[190] Notice of Claim Letter, **[Doc. 19-1]** at 1-3.
[191] *See e.g., Harden v. Field Mem'l Cmty. Hosp.*, 265 F. App'x 405, 409 (5th Cir. 2008).
[192] *Dobbs*, 285 So. 3d at 1223.
[193] Compl. **[Doc. 1]** at ¶¶26-28; ¶¶29-30; ¶¶40-46; ¶¶47-49; ¶¶50-51; ¶¶52-54.
[194] *Estate of Williams v. City of Jackson,* 844 So.2d 1161, 1164 (Miss. 2003).
[195] *City of Clinton v. Tornes*, 252 So. 3d 34, 39 (Miss. 2018) (internal citations omitted).
[196] *Lascola v. Barden Miss. Gaming LLC*, 349 F. App'x 878, 886 (5th Cir. 2009) (per curiam) (quoting *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999)) (emphasis added).

consequences, amounting almost to a willingness that harm should follow."[197] By requiring a finding of reckless disregard, "the Legislature 'set an extremely high bar for plaintiffs seeking to recover against a city for a police officer's conduct while engaged in the performance of his or her duties.'"[198] A plaintiff cannot meet their burden of establishing reckless disregard by merely showing that law enforcement officers could or should have done something different.[199] Indeed, a finding of negligence or even gross negligence is insufficient to overcome this immunity.[200]

Courts must consider the totality of the circumstances to determine whether an officer's conduct constituted reckless disregard.[201] In doing so, the "'nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions[,]'" "rather than with the 20/20 vision of hindsight."[202] Even if an officer later learns he was mistaken, there is no reckless disregard when the officer's conduct was a reasonable reaction to what he perceived to be a potentially dangerous situation.[203] The Fifth Circuit, along with other circuits, has recognized that "domestic disputes often involve high emotions and can quickly escalate to violence[,]"[204] and, as officers are well aware that "more [of their colleagues] are killed or injured on domestic violence calls than on any other type of call[,]"[205] officers responding to a domestic violence call "understand that

---

[197] *Id.* (quoting *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999)).
[198] *City of Jackson v. Sandifer*, 107 So. 3d 978, 988 (Miss. 2013) (internal citations oitted).
[199] *Floyd v. Tunica Cty.*, 333 So. 3d 864, 876 (¶44) (Miss. App. 2022) (internal citations omitted).
[200] *Phillips v. City of Oxford,* 368 So. 3d 317, 324 (Miss. 2023) (quoting *City of Vicksburg v. Williams*, 294 So. 3d 599, 601-02 (¶ 15) (Miss. 2020)).
[201] *Lascola,* 349 F. App'x at 886 (citing *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008)).
[202]*Hinds Cty. v. Burton,* 187 So. 3d 1016, 1022 (Miss. 2016) (quoting *Phillips*, 978 So. 2d at 661)
[203] *See Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. App. 2008).
[204] *United States v. Rodriguez*, 601 F. 3d 402, 408 (5th Cir. 2010).
[205] *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal citation omitted).

27

violence may be lurking and explode with little warning."[206]

Reckless disregard requires "knowingly and intentionally doing a thing or wrongful act," which "means actual knowledge on the part of the [officer][.]"[207] Accordingly, there can be no reckless disregard where an officer lacked knowledge of a person's status because the officer consequently could not have "knowingly and intentionally committed a wrongful act" amounting to a "willingness that harm should follow" to that person.[208] Under the reckless disregard standard, accidental or unintentional conduct by an officer is insufficient to overcome immunity.[209] Indeed, where an officer who discharged his weapon did not intend to shoot the plaintiff specifically, there is no reckless disregard as the conduct could only be deemed accidental and negligent at best.[210]

Considering the totality of the circumstances as they were known at the time, Officer Capers simply did not act in reckless disregard for Plaintiff's safety. There is no evidence that Officer Capers intended to shoot A.M.; indeed, there is overwhelming evidence that he did not. Officer Capers was not aware that anyone other than the suspect was within the residence. Because Officer Capers reasonably believed it was the suspect charging him, the shooting of A.M. can only be deemed unintentional. Thus, Officer Capers' conduct could not have met reckless disregard standard as it "requires knowingly or intentionally doing a thing or wrongful act."[211]

---

[206] *Marquez v. City of Phx.*, No. 10-17156, 2012 U.S. App. LEXIS 19048, at *18 (9th Cir. Sep. 11, 2012) (quoting *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal quotation marks omitted)).

[207] *Beta Beta Chapter of Beta Theta Pi Fraternity v. May*, 611 So. 2d 889, 895 (Miss. 1992) (internal citations omitted)); *see also, Sandifer*, 107 So. 3d at 988.

[208] *See Sandifer*, 107 So. 3d at 988.

[209] *See e.g., Hinds Cty. v. Burton,* 187 So. 3d 1016, 1023 (Miss. 2016); *Scott*, 997 So. 2d at 276; *Elkins v. McKenzie*, 865 So. 2d 1065, 1088 (Miss. 2003); *Buchanan v. Gulfport Police Dep't,* No. 1:08CV1299LG-RHW, 2012 U.S. Dist. LEXIS 73095, at *39-40 (S.D. Miss. May 25, 2012)*; Coleman v. Marion Cty*., No. 2:14cv185, 2015 U.S. Dist. LEXIS 115588, at *30-31 (S.D. Miss. Aug. 31, 2015); *Stroik v. Ponseti*, 35 F. 3d 155, 156 (5th Cir. 1994).

[210] *Baskin,* 2008 U.S. Dist. LEXIS 82455, at *7-8, *aff'd* 378 F. App'x 417 (5th Cir. 2010).

[211] *City of Jackson v. Gray,* 72 So. 3d 491, 496 (Miss. 2011) (internal citations omitted).

Furthermore, where an officer's conduct was objectively reasonable, a plaintiff simply cannot make the showing of reckless disregard required under the MTCA.[212] As previously shown, any reasonable officer in Officer Capers' position would have objectively believed that the suspect with a violent criminal history was charging at him, that the suspect posed a serious threat to the officers as well as the victim through that conduct and would have reacted similarly. Such conduct cannot constitute reckless disregard.[213] As Plaintiff's allegations amount to no more than an unintentional shooting where an officer reasonably reacted to a potentially dangerous situation and threat of serious harm, Officer Capers clearly did not act with reckless disregard. Accordingly, Plaintiff's state law claims must fail.[214] Dismissal is proper.

## 2. Discretionary Immunity

Plaintiff's claims are also barred by discretionary immunity under §11-46-9(1)(d). In cases involving law enforcement, consideration of discretionary immunity is appropriate in the alternative to immunity under §11-46-9(1)(c).[215] The Mississippi Supreme Court has established that "a duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the governmental entity or its employee."[216] This is contrasted with a ministerial duty that is "positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment."[217]

Under the public-policy test, courts have repeatedly held that the manner in which a police

---

[212] *O'Hara v. Petal Police Dep't,* 260 F. App'x 632, 634 (5th Cir. 2007) (citing *Miss. Code Ann.* § 11-46-9(1)(c)).

[213] *See e.g., Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. Ct. App. 2008).

[214] *Buchanan*, 2012 U.S. Dist. LEXIS 73095, at *45.

[215] *See Morton v. City of Shelby*, 984 So. 2d 323, 336 n.5 (Miss. App. 2007).

[216] *Miss. Transp. Comm'n vs. Montgomery*, 80 So.3d 789, 795 (¶19) (Miss. 2012).

[217] *Id.*

department supervises, disciplines, and regulates its police officers is a discretionary function entitled immunity under §11-46-9(1)(d).[218] Furthermore, "the hiring, supervision, and training of employees is a discretionary function subject to immunity."[219] Thus, Plaintiff's state law claims arising out of the City and Chief Sampson's retention, hiring, supervision and/or training of its employees is barred by the MTCA's discretionary immunity provision under §11-46-9(1)(d). Moreover, the City and Chief Sampson are also immune from any claims that they should have enacted different practices or procedures.[220]

Additionally, discretionary immunity is proper for the judgments made by Officer Capers when faced with a clear danger to the public. Because of the unpredictable, volatile nature of domestic violence calls, police officers are given a considerable amount of discretion in responding to and resolving domestic disputes.[221] Actions taken in responding to the subject 911 call, such as how Officer Capers investigated the incident and attempted to locate the suspect within the residence, are shielded by discretionary immunity.[222] No statute, rule, nor regulation dictated how Officer Capers should have responded in mere seconds when he believed a violent and potentially armed suspect was charging him.[223] Accordingly, Plaintiff's state law claims all must fail.

### C. Plaintiff's Remaining State Claims Fail as a Matter of Law

Plaintiff's remaining state claims must also fail. As to the City, these claims must be

---

[218] *See e.g., Young v. Isola*, 708 F. App'x 152, 157 (5th Cir. 2017) (per curiam) (quoting *Sandifer*, 107 So. 3d at 987).

[219] *City of Clinton v. Tornes,* 252 So. 3d 34, 39-40 (Miss. 2018).

[220] *Miss. Code Ann.* §11-46-9(1)(e).

[221] *Mata v. City of Kingsville*, 275 F. App'x 412, 416 (5th Cir. 2008) (internal citations omitted).

[222] *Gatheright v. Barbour*, No. 3:16-cv-00003-GHD-RP, 2017 U.S. Dist. LEXIS 18158, at *27 (N.D. Miss. Feb. 7, 2017) (citing *Bosarge,* 796 F.3d at 444; *Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008)).

[223] *See e.g., Butler v. Prescott*, No. 1:91cv245-D-D, 1994 U.S. Dist. LEXIS 21209, at *10-11 (N.D. Miss. Dec. 9, 1994); *McAllister v. Desoto Cty.*, 470 F. App'x 313, 317 & 321 (5th Cir. 2012).

dismissed outright as the <u>MTCA</u> explicitly provides that "a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense[.]"[224] Officer Capers and Chief Sampson are also entitled to protection under the <u>MTCA</u> for Plaintiff's remaining state claims as the <u>MTCA</u> states that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."[225]

Plaintiff unequivocally states that "Defendant Officer Capers was in the course and scope of his employment with Defendant City, at all relevant times[.]"[226]Similarly, Plaintiff's Complaint provides that Chief Sampson was solely acting in the course and scope of his employment with the City at all times relevant herein.[227]As such, the remaining claims should be dismissed outright—Plaintiff cannot claim on one hand that Officer Capers and Chief Sampson were on duty, and on the other, that they were acting outside the course and scope of employment.

In recent decisions, other courts have warned against plaintiffs trying to "have the best of both worlds[.]"[228] Here, Plaintiff must choose whether they are suing the City under state law or the individual defendants—she cannot bring claims against both.[229] Indeed, there is a "rebuttable presumption" that a given act by an employee taken within the time and at the place of employment is within the course and scope of his employment.[230] Plaintiff only alleges actions by Officer

---

[224] *Miss. Code Ann.* §11-46-5(2).
[225] *Miss. Code Ann.* §11-46-7(2).
[226] Compl. **[Doc. 1]** at ¶¶18 & 51.
[227] Compl. **[Doc. 1]** at ¶19.
[228] *Hawkins v. City of Lexington,* No. 3:19-CV-606-DPJ-FKB, 2021 U.S. Dist. LEXIS 219219, at *17 (S.D. Miss. July 9, 2021) ("So either the officers acted within the course and scope of their employment–in which case there are no individual-capacity claims–or they acted outside the course and scope of their employment, in which case the City [] maintains sovereign immunity.").

[229] *Id.*
[230] *Miss. Code Ann.* §11-46-7(7); *Hearn v. Bd. of Sup'rs of Hinds Cty., Miss.,* 575 Fed.Appx. 239, 243 (5th Cir. 2014) (per curiam) (citing the aforementioned provisions).

Capers that took place within the time and at the place of his employment.[231]  Further, Plaintiff does not allege any actions by Chief Sampson whatsoever, only that he acted solely in the scope of his role as the Chief.[232]  As such, Plaintiff's claims for individual liability against Officer Capers and Chief Sampson are barred by the MTCA.[233]

Additionally, while the MTCA provides an exception for acts of "malice," Plaintiff cannot show malice on the part of Officer Capers nor Chief Sampson.  Plaintiff's mere conclusory allegations and unsupported speculations of malice are precisely the type which cannot survive Defendants' Motion.[234]  In fact, the entirety of Plaintiff's claims are crouched in terms of negligence and lack of reasonable care.[235]  Where, like here, the claims fail to even establish reckless disregard, the alleged conduct cannot constitute either malice or any criminal offense, requiring dismissal.[236]  Plaintiff's remaining state claims must be dismissed.

### D. Plaintiff's Claims For Miscellaneous Relief Are Barred by the MTCA.

To the extent Plaintiff is requesting a jury trial, attorney's fees, joint and several liability, or punitive damages under state law, such requests are barred by the MTCA. The MTCA does not allow for a jury trial; rather, a bench trial without a jury is required.[237]  Plaintiff also makes general allegations regarding attorney's fees and punitive damages; however, the MTCA prohibits the same.[238]  There is also no such thing as joint and several liability under the MTCA.[239]  These claims

---

[231]  *See generally,* Compl. **[Doc. 1].**
[232]  Compl. **[Doc. 1]** at ¶19.
[233]  *Hawkins,* 2021 U.S. Dist. LEXIS 219219, at *17; *Borgognoni v. City of Hattiesburg,* 2015 U.S. Dist. LEXIS 157619, *36-37 (S.D. Miss. March 31, 2015).
[234]  *Iqbal,* 129 S. Ct. at 1949-50.
[235]  *See e.g.,* Compl. **[Doc. 1]** at ¶¶32-34, ¶42, & ¶51.
[236]  *See e.g., Coleman,* 2015 U.S. Dist. LEXIS 115588, at *31; *Buchanan,* 530 F. App'x at 312; *Moore v. Carroll Cty.,* 960 F. Supp. 1084, 1089 (N.D. Miss. 1997).
[237]  *See, Miss. Code Ann.* § 11-46-13.
[238]*Miss. Code Ann*. § 11-46-15(2).
[239]*Miss. Code Ann*. §85-5-7(6).

32

must be dismissed.

## V.   CONCLUSION

For the reasons stated hereinabove and in their Consolidated Motion for Judgment on the Pleadings, or Alternatively for Summary Judgment, Defendants respectfully request this Court dismiss all of Plaintiff's state law and federal claims under *Fed. R. Civ. P.* 12(c).

**RESPECTFULLY SUBMITTED,** this the 5th day of December, 2023.

                                        **JACKS GRIFFITH LUCIANO, P.A.**

                          By:   /s/ ***M. Mckenzie W. Price***
                                        M. Mckenzie W. Price, MS Bar No. 106538
                                        Daniel J. Griffith, MS Bar No. 8366
                                        Mary McKay Griffith, MS Bar No. 100785
                                        Attorneys for Defendants

Of Counsel:
**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Street
P.O. Box 1209
Cleveland, MS 38732
Phone: (662) 843-6171
Fax: (662) 843-6176
Email: mprice@jlpalaw.com
          dgriffith@jlpalaw.com
          mgriffith@jlpalaw.com

Kimberly J. Merchant, Esq.
549 South Washington Ave.
Greenville, MS 38701
Cell: (662) 347-3921
Work: (662) 577-4527
Email: kimjmerchant@gmail.com
City Attorney

## CERTIFICATE OF SERVICE

I, M. Mckenzie W. Price, attorney of record for Defendants, City of Indianola, Mississippi, Chief Ronald Sampson, in his Individual and Official Capacity, and, Officer Greg Capers, in his Individual and Official Capacity, do hereby certify that I have this day caused a true and correct

33

copy of the above and foregoing *Defendants' Memorandum of Authorities in Support of Consolidated Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment,* to be delivered by the ECF Filing System to the following:

> Carlos E. Moore, Esq.
> The Cochran Firm - MS Delta
> Email: cmoore@cochranfirm.com
> **Attorney for Plaintiff**

**DATED** this 5th day of December, 2023.

> /s/ *M. Mckenzie W. Price*
> M. Mckenzie W. Price

34