IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

NAKALA MURRY, INDIVIDUALLY AND
ON BEHALF OF HER SON, A.M., A MINOR           PLAINTIFFS

v.                          CIVIL ACTION NO.: 4:23-cv-97-DMB-DAS

CITY OF INDIANOLA, MISSISSIPPI;
CHIEF RONALD SAMPSON, In His Individual and Official Capacity;
OFFICER GREG CAPERS, In His Individual and Official Capacity;
and JOHN DOES 1-5, In Their Individual and Official Capacities           DEFENDANTS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION FOR JUDGMENT
ON THE PLEADINGS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**COME NOW** Nakala Murry, individually and on behalf of her son, A.M., a minor, (collectively referred to as "Plaintiffs"), by and through counsel of record, and file this *Memorandum in Support of Plaintiffs' Response in Opposition to Defendants' Consolidated Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment*. Plaintiffs move this Honorable Court to deny Defendants' motion and would state as follows:

**INTRODUCTION**

This case arises due to Defendants' violation of federal and state law which caused Plaintiffs substantial injuries and damages. On or about May 20, 2023, Nakala Murry's ("Plaintiff Murry") minor son, A.M. ("Plaintiff A.M."), was shot by Officer Greg Capers ("Defendant Capers"). Defendant Capers failed to assess the situation before displaying and discharging his firearm in addition to other misconduct. Plaintiff A.M. suffered a collapsed lung, lacerated liver, and fractured ribs. Additionally, Plaintiff A.M. was given a chest tube and placed on oxygen at the hospital.

Defendant Capers was an employee of the City of Indianola, Mississippi ("Defendant

1

City") at the time of the subject incident. Chief Ronald Sampson ("Defendant Sampson") was the commanding officer through the entire incident and responsible for the actions and/or omissions of Defendant Capers.

On or about May 23, 2023, Plaintiffs forwarded a *Notice of Claim* to Defendants. On May 30, 2023, Plaintiffs filed a complaint asserting (1) violation of Fourth and Fourteenth Amendment rights under 42 U.S.C. Section 1983 and 28 U.S.C. Section 1343 et al; (2) excessive force; (3) negligent/intentional infliction of emotional distress/bystander's claim; (4) reckless endangerment; (5) civil assault and battery; (6) abuse of process; (7) negligent, grossly negligent, and wanton failure in hiring and to monitor, train, supervise, and discipline or take necessary corrective action on the officer involved; (8) reckless disregard for the rights and safety of Plaintiffs; (9) respondeat superior; and (10) the common law tort of outrage.

On December 5, 2023, *Defendants filed a Consolidated Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment*. As outlined below, Defendants' motion should be denied, as a matter of law, and a jury should be afforded the opportunity to determine if Defendants' utter disregard of the rights of Plaintiffs caused Plaintiffs damages. Defendants are not entitled to qualified immunity as their conduct violated clearly established statutory and/or clearly established constitutional rights, and their conduct was objectively unreasonable in light of the clearly established law. Further, Defendants are not shielded by the Mississippi Tort Claims Act. Plaintiffs have supported their claims in the pleadings and genuine issues of material fact exist regarding the foregoing. As such, *Defendants' Consolidated Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment* should be denied.

## STATEMENT OF FACTS

On May 20, 2023, Plaintiff Murry received an unexpected visit from John Nolden

2

("Nolden"). Nolden is the father of one of Plaintiff Murry's minor children. Nolden was irate and entered Plaintiff Murry's residence against her will. At this time, the only individuals at Plaintiff Murry's residence were her two minor children, and her nephew (all minors). As Plaintiff Murry feared for her and the children's safety, Plaintiff Murry contacted the 911 emergency center. Shortly thereafter, Defendant Capers (an employee of Defendant City and Defendant Sampson) arrived at Plaintiff Murry's residence.

[1]Defendant Capers arrived at Plaintiffs' residence. Defendant Capers knocked on the door; however, Nolden would not allow Plaintiff Murry to open the door for Defendant Capers. Thus, Plaintiff Murry advised Defendant Capers (through the 911 emergency center) to kick in the front door and that **there were no weapons involved**. While Defendant Capers was kicking the door, Plaintiff Murry was able to spring to the door to open it. When Plaintiff Murry opened the door she signaled with her head that Nolden was in the back of the residence. Defendant Capers then exclaimed to Plaintiff Murry to walk outside and exclaimed the same to all the occupants in the residence. Again, Plaintiff Murry advised that there were **no weapons involved.** Defendant Capers walked into the house with his firearm displayed and/or drawn ready to shoot. As Plaintiff A.M. was walking around the corner of the hallway that led into the living room area, Plaintiff A.M. was **instantly shot** by Defendant Capers. Defendant Capers failed to assess the situation before displaying and discharging his firearm.

Subsequently, Plaintiff A.M. was rushed to the University of Mississippi Medical Center, given a chest tube, and placed on oxygen machine. Plaintiff A.M. was released from the hospital on May 24, 2023. Ultimately, Plaintiff A.M. suffered a collapsed lung, lacerated liver, and fractured ribs. At all times herein, Defendant Sampson was the commanding officer

---

[1] Pertinent facts in this paragraph are supported by the body camera footage. All parties are possession of this footage and the same is Exhibit "A".

through the entire subject incident.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (alteration omitted).

Additionally, under the summary judgement standard, the court "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014).

## ARGUMENT AND AUTHORITIES

    **I.    Defendants are not entitled to qualified immunity.**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 U.S. 2088, 2093 (2012). There are generally two steps in a qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second…the court must decide whether the right at issue was clearly established at time of [the] defendant's alleged misconduct." *Id.* (internal quotations omitted).

Essentially, in determining qualified immunity, courts engage in a two-step analysis: (1) was a statutory or constitutional right violated on the facts alleged; and (2) did the defendant's actions violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mace v. City of Palestine*, 333 F.3d 621, 623-24 (5th Cir. 2003). The two steps of the qualified immunity inquiry may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In excessive force cases[2], "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the

---

[2] Violation of the Fourth and Fourteenth Amendment

5

defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 778–79 (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver,* 410 F.3d at 750.

Principally, "[w]hether an official's conduct was objectively reasonable [in light of the law that was clearly established at the time of the disputed action] is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). However, "in certain circumstances where 'there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.'" *Mesa v. Prejean,* 543 F.3d 264, 269 (5th Cir. 2008) (quoting *Presley v. City of Benbrook,* 4 F.3d 405, 410 (5th Cir. 1993)); *McCoy v. Hernandez,* 203 F.3d 371, 376 (5th Cir. 2000) (if the court has not decided the issue prior to trial, "the jury…determine[s] the objective legal reasonableness of the officers' conduct").

In this matter, Defendants' misconduct violated clearly established law and caused Plaintiffs damages. Defendants violated Plaintiffs' Fourteenth and Fourth Amendment rights. The above claims and supporting facts are illustrated in the pleadings. Additionally, Plaintiffs' claims present genuine issues of material fact and are not foreclosed by qualified immunity. In accordance with the foregoing, Defendants' motion should be denied.

## II. Defendants violated Plaintiffs' Fourteenth and Fourth Amendment rights as a result of excessive force.

Defendants violated Plaintiffs' Fourteenth Amendment due process rights and Fourth Amendment right against unreasonable seizures as a result of Defendants' excessive force. "The right to be free of state-occasioned damage to a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443,

451 (5th Cir. 1994). The Fourth Amendment protects against "unreasonable searches and seizures."[3]

The Fifth Circuit has established a three-part test for a Section 1983 excessive force claim. To prevail on such a claim, a plaintiff must show: (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores v. City of Palacios*, 381 F.3d, 396 (5th Cir. 2004)); *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008).

The "reasonableness" inquiry in an excessive force case is an objective one and questions whether the officers' actions are "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In answering the question of whether the force was "clearly excessive" and "objectively unreasonable," the court considers the totality of the circumstances. *Id*. The Supreme Court, in *Graham,* 490 U.S. at 396, provided the following guidance:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), [] its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

In this matter, Defendants' objectively unreasonable and clearly excessive force caused Plaintiffs damages. As aforementioned, Defendant Capers was dispatched to Plaintiffs' residence as Plaintiff's Murry was in danger. Before Defendant Capers entered the home and displayed his gun, he was informed **twice** that there were no weapons involved. Notwithstanding that, his gun was drawn, and Defendant Capers was prepared and ready to shoot without entering Plaintiff

---

[3] U.S. Const. amend. IV.

Murry's residence or assessing the situation. Consequently, Plaintiff A.M. was instantly shot by Defendant Capers as he walked around the corner of the hallway to exit the residence. Again, no one in the residence was in possession of a gun or any weapon and Defendant Capers was informed of that fact.

Moreover, Plaintiff A.M. did not pose a threat to Defendant Capers and Defendant Capers was not in immediate or imminent harm. There was no reason for Defendant Caper's gun to be displayed or drawn. Defendant Capers was simply a "trigger happy" police officer that used excessive force when such was unreasonable and unnecessary. Further, Defendant Capers displayed an instance of "shoot first, ask later" and intentionally shot Plaintiff A.M. Defendant Capers' actions were objectively unreasonable and the pleadings in this matter and the body camera footage support this assertion. Defendant Sampson was the commanding officer throughout the entire incident and is responsible for the actions and/or omissions of Defendant Capers.

Notably, Defendants rely on *Corbit v. Vickers*, 929 F.3d 1304 (11th Cir. 2019), but this case law is not binding. Additionally, Defendants rely on *Pearce v. Doe*, 849 F. App'x 472 (5th Cir. 2021), but this case is not published, not precedent, and not binding. It should also be noted that the Fifth Circuit has provided "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)). The touchstone of the inquiry is "fair notice." *Ducksworth v. Landrum*, 62 F.4th 209, 218 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part) (citation omitted).

8

Fundamentally, in this case, the egregiously excessive force by Defendant Capers was unreasonable in light of the above-mentioned circumstances. As a result, Defendants violated Plaintiffs' constitutional rights. Defendants motion should be denied.

**III.     Plaintiffs' claims of municipal liability and supervisory liability are proper.**

To establish municipal liability under Section 1983, Plaintiff must demonstrate that (1) a violation of the Constitution or federal law occurred and (2) a governmental policy or custom was the moving force behind the violation. *Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 405 (1997). Plaintiff must indicate a direct causal link between municipal policy or custom and alleged constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A policy may consist of a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

Additionally, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Atteberry v. Nocona Gen. Hosp*., 430 F.3d 245, 254 (5th Cir. 2005)).

As previously mentioned, Plaintiff A.M.'s constitutional rights (Fourth and Fourteenth Amendment rights) were violated as a result of Defendant Capers' intentional shooting of Plaintiff A.M. As illustrated in the foregoing sections, Defendant Capers used unnecessary and excessive force which caused Plaintiffs substantial damages. It is clear by Defendant Capers' actions and/or

omissions (i.e., failure to assess the situation before displaying and discharging his firearm) that such actions and/or omissions were so common and well settled as to constitute a custom that fairly represents municipal policy. As such a common approach and custom (shoot first, ask later) violates clearly established constitutional laws, Defendant City is liable in this matter. **It is pertinent to note that there are several suits filed against Defendant due to their violations of individuals' constitutional rights, which again illustrates a custom.**

Additionally, as Defendant Sampson failed to properly supervise; **and** prevent or intervene in the egregious conduct of Defendant Capers, Defendant Sampson is liable as well. Defendant City and Defendant Sampson are attempting to circumvent liability in this case even though their actions and/or omissions caused an abridgment of Plaintiff A.M.'s constitutional rights.

There are genuine issues of material fact regarding the liability of Defendant City and Defendant Sampson. Defendants' motion should be denied.

### IV. Defendant City and Defendant Sampson's failure to train and supervise caused Plaintiffs' damages.

Inadequacy of police training may serve as a basis for Section 1983 municipal liability, only where failure to train (1) amounts to deliberate indifference to rights of persons with whom the police come into contact; and (2) employees in relevant respects evidence "deliberate indifference" to rights of its inhabitants; can such shortcoming be properly thought of as a city "policy or custom" that is actionable under Section 1983. *Burge v. St. Tammany Par.,* 336 F.3d 363, 379 (5th Cir. 2003) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). Courts require that the municipality's failure to train be the "moving force" that caused the specific constitutional violation. *Brown v. Bryan Co., Okla.,* 219 F.3d 450, 461 (5th Cir.2000). "We have said that the connection must be more than a mere 'but for' coupling between cause and effect.

The deficiency in training must be the actual cause of the constitutional violation." *Thompson v. Connick,* 578 F.3d 293, 300 (5th Cir.2009).

Additionally, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005)). "'[D]eliberate indifference' to the 'known or obvious consequences' of a hiring decision can amount to a constitutional violation on the part of the decision maker[.]" *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

In this case, failure to train and supervise by Defendant City and Defendant Sampson is clear. During the subject incident (1) Plaintiff Murry advised Defendant Capers twice that there were no weapons involved; (2) without reasonable cause or an immediate threat to Defendant Capers, Defendant Capers displayed and discharged his gun, shooting Plaintiff A.M.; and (3) Defendant Capers failed to assess the situation before displaying and discharging his firearm ("shoot first, ask later" mentality). No single officer, including the officer that was on the scene with Defendant Capers, intervened during Defendant Capers' egregious and harmful actions and/or omissions.

At all relevant times, Defendant Capers was on duty for Defendant City and Defendant Sampson was the commanding officer throughout the entire incident and responsible for the actions and/or omissions of Defendant Capers. It was the duty of Defendant City to sufficiently hire, train and retain personnel within the Indianola Police Department and at the supervisory, and lower ranked levels so as to sufficiently discipline, supervise, and put into effect appropriate rules

11

applicable to the duties, behavior and activities of their servants, agents, officers, police department employees and/or personnel. Additionally, Defendant Sampson was assigned to supervise and control the actions of the Defendant Capers and assisting officers.

Defendant Capers' excessive force in violation of Plaintiff A.M.'s Fourteenth and Fourth Amendment rights is a consequence and evidence of Defendant City and Defendant Sampson's failure to train and supervise. Moreover, Defendant Sampson failed to intervene or acted with deliberate indifference to violations of Plaintiff A.M.'s constitutional rights. Defendant Capers should have been properly trained to protect and assess situations before shooting a gun that could cause substantial injuries and fatalities. Also, Defendant Capers should have been properly supervised to ensure this conduct reflected the same.

The facts outlined in the pleadings support Plaintiffs' claims. Furthermore, as there are genuine issues of material fact regarding the foregoing, Defendants' motion should be denied.

### V. Plaintiffs' state law claims against Defendants <u>are not</u> barred by the immunities and protections of the Mississippi Tort Claims Act.

The Mississippi Tort Claims Act ("MTCA") provides the exclusive remedy for any claim based in tort against a governmental entity and its employees. *Miss. Code. Ann. § 11–46–7*. Mississippi Code Annotated Section 11-46-7(1) provides,

> The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity...and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.

Although the MTCA waives sovereign immunity for tort actions, it also prescribes certain exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity. Defendants are liable under MTCA Section 11-46-9(1)(c), which provides:

12

> A government entity and its employees acting within the course and scope of their employment of duties shall not be liable for any claim: [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection **<u>unless the employee acted in reckless disregard of the safety and well-being of any person</u>** not engaged in criminal activity at the time of the injury[.]

"[O]fficers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well-being of others, will be entitled to immunity." *City of Jackson v. Brister*, 838 So.2d 274, 281(¶ 15) (Miss.2003).

### a. *Defendant Capers acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury.*

"Reckless disregard is more than mere negligence, but less than an intentional act" and "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Miss. Dep't of Safety v. Durn*, 861 So.2d 990, 994–95(¶ 10) (Miss.2003) (citations omitted). "This Court will look to the totality of the circumstances when considering whether someone acted in reckless disregard. [We must judge] the nature of the officer's actions on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions." *Phillips v. Miss. Dep't of Public Safety*, 978 So.2d 656, 661(¶ 19) (Miss.2008) (citations omitted); *Giles ex rel. Giles v. Brown*, 31 So. 3d 1232, 1237–38 (Miss. Ct. App. 2009).

As aforementioned, during the subject incident (1) Plaintiff Murry advised Defendant Capers **twice** that there were no weapons involved; (2) without reasonable cause or an immediate threat to Defendant Capers, Defendant Capers displayed and discharged his gun, shooting Plaintiff A.M.; and (3) Defendant Capers failed to assess the situation before displaying and discharging his firearm ("shoot first, ask later" mentality). No single officer, including the officer that was on the

13

scene with Defendant Capers, intervened during Defendant Capers' egregious and harmful actions and/or omissions.

Moreover, neither Plaintiff Murry nor Plaintiff A.M. were engaged in any criminal activity at the time Plaintiff A.M. was shot and injured by Defendant Capers. Notably, Defendant City and Defendant Sampson were responsible for Defendant Capers' training, supervision and/or monitoring. As Defendant Capers' actions and Defendant City and Defendant Sampson's inactions amounted to reckless disregard, Defendants are not entitled to immunity.

### b. *Defendants committed assault and battery.*

The intentional tort of assault "occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension." *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1043 (Miss. 2001) (citing *Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991)). However, an action done without the requisite intent "does not make the actor liable to the other" for the apprehension caused, "although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm." Restatement (Second) of Torts, § 21 (1965).

"Intent is an emotional operation of the mind and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." *Mississippi State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 494 (Miss. 1993). While the question of intent generally is a question of fact reserved for the jury, "it is well settled that intent may be shown by circumstances." *Id.* Further, "[a] battery goes one step beyond an assault in that a harmful contact actually

occurs." *Greenwaldt*, 786 So. 2d at 1043 (citing Restatement (Second) of Torts, § 18 (1965)). *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 75-76 (Miss. 2017).

**As outlined above**, Plaintiff A.M. was shot and substantially injured by Defendant Capers. Defendant Capers had no cause or provocation to shoot Plaintiff A.M.. Plaintiff A.M. did not commit a crime and Defendant Capers was informed that there were no weapons involved on the scene. Defendant Capers displayed and discharged his firearm without assessing the situation. Defendant Capers' force was excessive and objectively unreasonable in the light of the circumstances. This was a consequence of Defendant City and Defendant Sampson's negligence and failure to train, supervise and/or monitor Defendant Capers. As a result, Defendants are liable for assault and battery.

*c.  **Plaintiffs suffered emotional distress due to Defendants' actions.***

The Mississippi Supreme Court "has been clear in holding that a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct." *Morgan v. Greenwaldt*, 786 So.2d 1037, 1044 (¶ 23) (Miss.2001); *Weible v. Univ. of S. Mississippi*, 89 So. 3d 51, 69 (Miss. Ct. App. 2011).

A claim for intentional infliction of emotional distress requires that (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant. *Rainer v. Wal–Mart Assocs. Inc.*, 119 So.3d 398, 403–04 (¶ 19) (Miss. Ct. App. 2013) (citing *J.R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906–07

15

(¶ 15) (Miss. 2011)). The standard for an intentional-infliction-of-emotional-distress claim is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent, or reckless. *Little v. Collier*, 759 So.2d 454, 457 (¶ 13) (Miss. Ct. App. 2000); *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017).

In the instant case, the actions of Defendant Capers and inactions of Defendant City and Defendant Sampson caused Plaintiffs emotional distress. The acts and/or omissions by Defendant Capers in this matter were intentional and negligent, as Defendant Capers had no objectively reasonable reason for shooting Plaintiff A.M. Plaintiff A.M. did not commit a crime, was not in the possession of a weapon, and was not a threat to Defendant Capers or the public. Defendant Capers failed to assess the situation before brutally shooting Plaintiff A.M. Defendant Capers' actions were caused by Defendant City and Defendant Sampson's failure to train, supervise, and/or monitor.

In accordance with the foregoing, Defendants intentionally and/or negligently caused Plaintiffs emotional distress. Plaintiff Murry suffered serious emotional distress as a result of witnessing her eleven (11) year old son being shot by Defendants Capers. Plaintiff A.M. endured a collapsed lung, fractured rib, and lacerated liver from the gunshot wound by Defendant Capers which caused his emotional distress.

Fundamentally, the conduct of Defendant Capers was a substantial factor in causing Plaintiffs' serious emotional distress, including, but not limited to anguish, fright, horror, nervousness, post-traumatic stress disorder, anxiety, shock, humiliation, and shame that an ordinary, reasonable person would be unable with which to cope. Consequently, Defendants are not entitled to immunity and their motion should be denied.

16

**VI. Punitive damages should be awarded in this matter.**

Punitive damages may be awarded in Section 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Reckless indifference has been described by the Supreme Court as "'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation omitted). "[U]nlike compensatory damages, punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be." *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990). The decision to award or deny punitive damages is left to the finder of fact. *Id.* This Court is deferential to district court determinations regarding punitive damages. We will not necessarily reverse the district court on punitive damages, "[e]ven if a party has made a showing justifying an award of punitive damages." *Thompkins v. Belt*, 828 F.2d 298, 302 (5th Cir. 1987). That is because an "award of punitive damages is a harsh remedy and normally is not favored by law" and its goal "is to punish as well as to deter the commission of similar offenses in the future." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985).

In this matter, an award of punitive damages is appropriate. Defendant Capers viciously shot Plaintiff A.M. with no cause or provocation and failed to assess the situation before displaying and discharging the firearm ("shoot first, ask later"). No single officer stopped the unnecessary attack and failed to intervene. As a result, Plaintiffs have sustained substantial damages. In accordance with the foregoing, punitive damages should be awarded as Defendants' conduct involved reckless or callous indifference to the federally protected rights of Plaintiffs.

17

## **CONCLUSION**

Defendants' motion should be denied, as a matter of law, and a jury should be afforded the opportunity to determine if Defendants' utter disregard of the rights of Plaintiffs caused Plaintiffs damages. Defendants are not entitled to qualified immunity as their conduct violated clearly established statutory and/or clearly established constitutional rights, and their conduct was objectively unreasonable in light of the clearly established law. Further, Defendants are not shielded by the Mississippi Tort Claims Act. Plaintiffs have supported their claims in the pleadings and genuine issues of material fact exist regarding the foregoing. As such, *Defendants' Consolidated Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment* should be denied.

**WHEREFORE, PREMISES CONSIDERED** Plaintiffs pray that this Honorable Court will deny Defendants' motion. Plaintiffs also pray for all other general relief this Court deems to be fair and just.

Respectfully submitted, this the 1st day of January 2024.

**NAKALA MURRY, INDIVIDUALLY AND ON BEHALF OF HER SON, A.M., A MINOR**

/s/ Carlos Moore
CARLOS MOORE, MSB #100685

**OF COUNSEL:**
**Carlos Moore Law Group**
**306 Branscome Drive**
**Grenada, Mississippi 38901**
**Telephone: 662-227-9940**
**Fax: 662-227-9941**
**CarlosMooreLaw@gmail.com**

18

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing pleading was transmitted via CM/ECF to all counsel of record.

**This the 1st day of January 2024.**

/s/ Carlos Moore_____
Carlos Moore, MSB #100685