**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**NAKALA MURRY, individually and**                                    **PLAINTIFF**
**on behalf of her son A.M., a minor**

**V.**                                            **NO. 4:23-CV-97-DMB-DAS**

**CITY OF INDIANOLA, MISSISSIPPI;
CHIEF RONALD SAMPSON, in his
individual and official capacity;
OFFICER GREG CAPERS, in his
individual and official capacity; and
JOHN DOES 1-5, in their individual
and official capacities**                                       **DEFENDANTS**

## <u>OPINION AND ORDER</u>

After her 11-year-old son A.M. was shot by police responding to a domestic violence call at her home, Nakala Murry sued the City of Indianola, Mississippi, Chief Ronald Sampson, and Officer Greg Capers, alleging various federal and state law claims, individually and on behalf of A.M. Before the Court are (1) Murry's objections to United States Magistrate Judge David A. Sanders' order granting her motion to compel production of Capers' body camera footage of the shooting; (2) Murry's objections to Judge Sanders' order granting the defendants' motion to seal the body camera footage; (3) the defendants' motion for judgment on the pleadings or, alternatively, for summary judgment; and (4) Murry's motion for leave to file a supplemental response in opposition to the motion for judgment on the pleadings or, alternatively, for summary judgment. Because the conclusions in Judge Sanders' orders are neither clearly erroneous nor contrary to law, Murry's objections are overruled. Murry's motion for leave to file a supplemental response will be denied for Murry's failure to offer any legal authority for such relief. And because Murry fails to sufficiently state a constitutional violation and did not comply with the notice requirements of the Mississippi Tort Claims Act, the defendants' motion for judgment on the

pleadings will be granted as to all claims. However, Murry will be allowed the opportunity to seek leave to file an amended complaint.

# I
## Procedural History

On May 30, 2023, Nakala Murry, individually and on behalf of her minor son A.M., filed a complaint in the United States District Court for the Northern District of Mississippi against the City of Indianola, Mississippi; Chief Ronald Sampson, in his individual and official capacity; Officer Greg Capers, in his individual and official capacity; and John Does 1–5, in their individual and official capacities. Doc. #1. Asserting claims based on Capers' shooting of 11-year old A.M. on May 20, 2023, at his home, the complaint contains ten counts: (1) "Violation of 4th and 14th Amendment Rights under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 et al" (Count One); (2) "Excessive Force" (Count Two); (3) "Negligent/Intentional Infliction of Emotional Distress / Bystander's Claim" (Count Three); (4) "Reckless Endangerment" (Count Four); (5) "Civil Assault and Battery" (Count Five); (6) "Abuse of Process" (Count Six); (7) "Negligent, Grossly Negligent, and Wanton Failure in Hiring and to Monitor, Train, Supervise, and Discipline or take necessary Corrective Action on the Officer Involved" (Count Seven); (8) "Reckless Disregard for the Rights and Safety of the Plaintiffs" (Count Eight); (9) "Respondeat Superior" (Count Nine); and (10) "The Common Law Tort of Outrage" (Count Ten). *Id.* at PageID 5–10. On these claims, the relief Murry seeks includes compensatory damages, punitive damages, and "Veasley type damages," "with such final amount being at least $5,000,000.00 or an aggregate sum equal to the maximum amount of recovery allowed by the Mississippi Tort Claims Act plus any recovery to be determined by a jury …." *Id.* at PageID 11. The defendants filed an "Answer and Affirmative Defenses"[1] on

---

[1] Under the headings "First Affirmative Defense" and "Second Affirmative Defense," the filing contains, respectively, a "*Motion to Dismiss – § 1983 Claim*" and a "*Motion to Dismiss State Law Claims.*" Doc. #19 at PageID 64, 65

August 4, 2023.  Doc. #13.[2]

On November 10, 2023, the defendants filed a "Motion to File Body Camera Footage of Incident Under Seal."[3]  Doc. #41.  Murry filed a "Motion to Compel Production of Body Camera Footage" on November 14, 2023,[4] and responded to the defendants' motion to seal on November 24, 2023.  Docs. #44, #55.

On November 30, 2023, Judge Sanders granted Murry's motion to compel production of the body camera footage ("Compel Order"), ordering (1) the defendants, "contemporaneous with the filing of the motion for judgment on the pleadings," to upload the video for the Court's review, provide Murry with a link or copy of it, and file a certificate of service verifying that the video has been provided; and (2) "pending the court's decision on the motion to seal the video," Murry from "releasing or otherwise disseminating the video or any part thereof," or "disseminat[ing] any notes or descriptions of the video outside of [her] counsel's office" except "as needed to prosecute this action, and respond to upcoming motions."  Doc. #60 at PageID 2.

---

(emphases in original).  The Court "will not recognize a motion included within the body of the answer."  L.U. Civ. R. 7(b)(2)(A).

[2] The defendants requested and received an extension to respond to the complaint.  Doc. #13.  This case was initially assigned to United States Senior District Judge Neal B. Biggers, Jr., but was reassigned to the undersigned district judge on August 14, 2023.  Doc. #22.

[3] Also filed on November 10, 2023, were (1) the defendants' "Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment as to Plaintiff's State Claims," Doc. #31; (2) "Officer Greg Capers' Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment as to Plaintiff's Federal Claims," Doc. #33; (3) "Chief Ronald Sampson's Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment as to Plaintiff's Federal Claims," Doc. #35; and (4) "City of Indianola's Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment as to Plaintiff's Federal Claims,"[3] Doc. #37.  Because the briefs in support of these motions—all of which were signed and filed by the same attorney of record for the City, Sampson, and Capers—totaled one hundred seven pages, repeated the same language in their respective facts section, placed all citations in footnotes, and made duplicative arguments, the Court denied them without prejudice for violating Local Rule 7(b)(5)'s mandate that original and rebuttal briefs together may not exceed thirty-five pages.  Doc. #51.

[4] Murry moved for leave to amend her complaint on November 22, 2023.  Doc. #53.  Judge Sanders denied the motion on January 9, 2024.  Doc. #83.  Advising that the Court "may well allow amendment" following its ruling on the motion for judgment on the pleadings, Judge Sanders found that Murry failed to cite any authority that failure to comply with the notice requirements of the Mississippi Tort Claims Act could be cured by amending the complaint.  *Id.* at PageID 750.

Briefing on the defendants' motion to seal was completed December 1, 2023. Docs. #42, #56, #61. On December 5, 2023, the City, Sampson, and Capers filed "Defendants' Consolidated Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment,"[5] attaching several exhibits, including the body camera footage. Docs. #62, #62-5. The same day, consistent with the Compel Order, the defendants filed (1) a "Notice of Conventional Filing" stating that "Exhibit 'E'" was "forwarded for filing under seal to the Clerk of Court by conventional means via download to the Court in a secure email link," Doc. #66 at PageID 652; and (2) a "Certificate of Service" stating that "a true and correct copy of [Doc. 62-5] Exhibit E, Video as [sic] delivered to the Clerk of the Court by the Court's secure email link and also to [Murry's counsel of record] by means of Dropbox link on this date at 5:30 p.m. in an email," Doc. #67 at PageID 654.

On December 13, 2023, Murry filed an "Objection of Plaintiff to Magistrate Judge Order" seeking this Court's review of the Compel Order. Doc. #69. The defendants responded to the December 13 objection that day. Doc. #70. Murry did not reply.

On December 14, 2023, Judge Sanders granted the defendants' motion to seal the body camera footage ("Seal Order"). Doc. #73. The next day, Judge Sanders granted the defendants' November 17 motion to stay all discovery pursuant to Local Rule 16(b)(3)(B) since the "motion for judgment on the pleadings rais[ed] immunity defenses." Doc. #75.

On December 28, 2023, Murry filed "Plaintiffs' Objection to Magistrate Judge Order Granting Motion to Seal." Doc. #77. Two days later, the defendants responded to Murry's objection to the Seal Order. Doc. #84. Murry did not reply.

Briefing on the December 5 motion for judgment on the pleadings was completed January

---

[5] This Court generally disfavors the combining of a motion based on the pleadings with a motion for summary judgment given the different standards of review.

8, 2024. Docs. #63, #79, #80, #81. On January 19, 2024, Murry moved for leave to file a supplemental response opposing the motion for judgment on the pleadings, attaching as an exhibit the proposed supplemental response. Docs. #86, #86-1. The defendants responded to the motion for leave on February 2, 2024. Doc. #89. Murry did not reply.[6]

## II
## Objections to Magistrate Judge Orders

### A. Standard

Pursuant to Federal Rule of Civil Procedure 72(a), "[a] party may serve and file objections to the order [of a magistrate judge] within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider [an order of a magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "The 'clearly erroneous' standard requires that the court affirm the decision of the magistrate judge unless 'on the entire evidence [it] is left with a definite and firm conviction that a mistake has been committed.'" *Landmark Am. Ins. Co. v. Port Royal by the Sea Condo. Owners Ass'n*, 619 F. Supp. 3d 719, 722 (S.D. Tex. 2022) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A finding is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 459 (S.D.N.Y. 2019) (cleaned up). So questions of law are reviewed de novo. *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014).

---

[6] On April 10, 2024, Murry again moved for leave to amend her complaint. Doc. #92. The defendants responded in opposition and Murry replied. Docs #93, #95. On May 1, 2024, Judge Sanders denied the motion, finding that "this motion to amend, like the first one, is premature. Should the court find the original pleadings are flawed, it can allow any necessary amendments." Doc. #96 at 2.

### B. Objection to Compel Order

Regarding the Compel Order, Murry "objects to the provisions prohibiting the dissemination of the video or any notes produced by the video outside of Counsel's office, the prohibition of the Court Clerk to release the video without a court order, and the overall release of the video." Doc. #69 at PageID 661. Murry argues that "access should be readily available and not restricted to the public" because (1) the public's interest in disclosure outweighs the benefits of the restrictions against disseminating the video, (2) "A.M.'s identity has already been made public by multiple new sources, and the guardian of A.M. does not oppose such reveal," and (3) "A.M.'s face can be blurred, if necessary, to protect the minor's identity." *Id.* at PageID 662. The defendants respond that Murry's objection "is procedurally flawed, the ultimate issue remains pending and is not ripe, and the limited protection from disclosure … is legal."[7] Doc. #70 at 2.[8]

Under Local Rule 79(e)(2), "[a]ny document not [filed under seal pursuant to a statute, rule or order] and filed with the intention of being sealed … will be treated as sealed pending the outcome of the ruling on the motion [to seal]." The defendants' motion to seal the body camera footage was filed four days before Murry filed her motion to compel, and the Compel Order prohibited the clerk's office and Murry from releasing the video pending a ruling on the defendants' motion to seal. Doc. #60 at 2. Because Rule 79(e) requires documents sought to be

---

[7] Though the defendants argue Murry's objection should be overruled because she did not file a brief specifying the grounds of error, Doc. #71 at 2, Murry filed a brief in support of her objection the same day she filed the objection, just not before the defendants filed their response. Docs. #70, #71, #72. Regardless, Local Rule 72, which governs appeals of magistrate judge decisions, does not require the filing of a brief, only that when a party appeals a magistrate judge's ruling by "serving and filing *objections* to the ruling," such *objections* "specify[] the grounds of error," which Murry did. L.U. Civ. R. 72(a)(1)(A) (emphases added).

[8] In their response, the defendants also ask that the Court appoint a guardian ad litem for A.M. pursuant to Federal Rule of Civil Procedure 17(c)(2) and that "upon appointing a guardian *ad litem* for the child, Plaintiff Nakala Murry and her Counsel be directed to appear before this Court and show cause as to whether the directives of [Judge Sanders]…, state law and Rule 3.6 of the Mississippi Rules of Professional Conduct have not been violated." Doc. #70 at 2–3. This request for relief is contrary to the Local Rules' requirements that "[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion" and "[a]ny motion must be an item docketed separately from a response." L.U. Civ. R. 7(b), 7(b)(3)(C).

6

sealed to be treated as sealed pending the disposition of the motion to seal them and because the defendants filed the motion to seal the body camera footage before Murry filed her motion to compel such footage, Murry's objection to the Compel Order is overruled.

### C. Objection to Seal Order

As her objection to the Seal Order, Murry argues that "[p]ublic access to the body camera footage is paramount as the public has a common law right to this video and more importantly, to be privy to the misconduct of Defendant Capers" and that "the public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public official." Doc. #77 at 2. The defendants respond that Murry's objection to filing the video under seal "is now moot"[9] and the Seal Order "was legal, supported by extensive authorities, necessary to ensure the seating of an impartial jury in this matter, necessary to serve the compelling interest of protecting a minor's identity, and in furtherance of *Fed. R. Civ. Pro.* 5.2." Doc. #84 at PageID 752 (emphasis in original).[10]

To determine whether a filing should be sealed, courts "must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. … [T]he working presumption is that judicial records should not be sealed. … And, to the extent that any sealing is necessary, it must be congruent to the need." *June Med.*

---

[9] The defendants argue that Murry "ha[s] obtained what [she] wanted and the[] Objection is moot" because on "January 5, 2024, [they] were shocked and appalled to learn that two, heavily edited minutes of the body camera footage had been released and published by various media outlets after obtaining the footage from the Mississippi Bureau of Investigations." Doc. #85 at PageID 762. The objection is not moot because the Seal Order concerned not only public access to the video, but limitations on whether Murry and her counsel could disseminate the video. *See* Doc. #73 at 7 ("The clerk of court shall seal this Exhibit. … [N]either party may release all or any portion of the video.").

[10] Like their response to the objection to the Compel Order, the defendants also request that the Court appoint a guardian ad litem pursuant to Federal Rule of Civil Procedure 17(c)(2) and that "upon appointing a guardian for [A.M.], … Murry and her Counsel be directed to appear before this Court and show cause as to whether the directives of [Judge Sanders]…, state law and Rule 3.6 of the Mississippi Rules of Professional Conduct have not been violated." Doc. #84 at PageID 752–53. As explained above, the Court will not address a request for relief not presented by motion.

*Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (internal quotations marks and citations omitted).[11]

In deciding to grant the motion to seal, Judge Sanders considered (1) the defendants' initial arguments that "the body camera footage would publicly identify minor A.M.;" there is "a compelling interest to protect a minor child's identity in court filings;" and "there is no lesser alternative to sealing the body footage, such as redaction,"[12] (2) Murry's arguments in response that "there is no legitimate reason" to seal the footage; "the public has a common law right … to be privy to the misconduct of Defendants;" and although the defendants "allege that the footage should be sealed to protect the minor child in this matter … A.M. has been on national television and his name is already known to the public;"[13] and (3) the defendants' reply arguments that the exhibits should be stricken from the record pursuant to Federal Rule of Civil Procedure 5.2; Murry "fails to provide any arguments or legal authority that actually contemplate, let alone balance, the interests of protecting a minor's privacy and identity in court filings against the public's interest in disclosure;" and "the reasons offered in [Murry's] response are based upon her conclusory allegation that Defendants engaged in 'misconduct.'"[14]  Judge Sanders concluded that A.M.'s privacy interests and the interest of the Court in seating an impartial jury outweighed the public's interest in disclosure of the footage.  Doc. #73 at 6–7.  With regard to Murry's argument that A.M.'s name is already public, Judge Sanders determined that "[a]s a minor, [A.M.] lacks the capacity to waive [his privacy] rights."  *Id.* at 6.  As to the availability of less restrictive alternatives

---

[11] Consistent with the presumption favoring the public's access to judicial records, Local Rule 79(b) provides that no document may be filed under seal without a court order.

[12] Doc. #41 at 2.

[13] Doc. #56 at 4.  Murry attached as exhibits to her response three news articles identifying A.M.'s full name.  Docs. #55-1, #55-2, #55-3.  These exhibits were stricken from the record pursuant to the Seal Order.

[14] Doc. #61 at 4–5.

to sealing the video in its entirety, Judge Sanders reasoned that "even if A.M. could not be identified from the video, the court cannot protect his privacy and prevent linkage of the video to the child. Because his identity and face have both been made public, obscuring his face does nothing to protect the child …." *Id.* at 6–7.

Generally, where, as here, the document sought to be sealed is an exhibit to a dispositive motion, the weight afforded to the public's common law right of access is necessarily greater. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("the strong weight to be accorded the public right of access to judicial documents [is] largely derived from the role those documents play[] in determining litigants' substantive rights"); *see also Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13, 1313 n.11 (11th Cir. 2001) ("Discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right [of access].").  And cases in which official misconduct is alleged also weigh in favor of allowing public access. *See Zadeh v. Robinson*, No. 1:15-cv-598, 2017 WL 532315, at *2 (W.D. Tex. 2017) ("There is a presumption in favor of public dissemination of documents, especially where the issues involve matters of public concern—such as government overreaching or police misconduct.") (citation and quotation marks omitted).

However, the ability to seat an impartial jury and the interest in protecting a minor's privacy are compelling reasons capable of outweighing the public's interest in disclosure. *See United States v. State*, 566 F. Supp. 3d 605, 632 (W.D. Tex. 2021) (sealing may be appropriate "[i]n some cases, such as those involving … 'the privacy of children'" where "the interest in secrecy is compelling") (quoting *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002)); *Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1282 (M.D. Ala. 2022) (seating impartial jury weighs in favor of restricting access to police body camera video because "[i]nterference with the administration of justice is

the overarching concern to be weighed on the side of non-access in civil cases"). Though some courts have determined that the interest in protecting a minor's identity in court filings is waived where his natural guardian makes such information public on the court's docket,[15] A.M. is referenced only by his initials in all filings except the exhibits attached to Murry's response opposing the motion to seal, which exhibits were stricken. So this Court concludes that A.M.'s privacy interests have not been waived. Considering this and the interest in seating an impartial jury, sufficient justification exists to seal the video to some extent.

As to whether sealing the video in its entirety is congruent to the need, court filings may be sealed in their entirety if sealing in part would not prevent the minor from being identified by the public. *See BG v. Banks*, No. 4:16-cv-64, 2017 WL 318836, at *3 (N.D. Miss. Jan. 23, 2017) (sealing entire affidavits because "it is reasonably possible that [the minor's] identity may be discerned from partially redacted versions of the exhibits"); *A.L. v. Miss. Dep't of Child Prot. Servs.*, No. 1:18-CV-00076, 2018 U.S. Dist. LEXIS 1191590, at *2–3 (S.D. Miss. July 18, 2018) (filing photographs under seal because if not under seal, minor plaintiffs' identity "will be readily known and available to the public via the [electronic court filing] system."). Since blurring A.M.'s face would not prevent him from being identified, the decision to seal the video in its entirety was congruent to the need.

Because A.M.'s privacy interests and the interest in seating an impartial jury outweigh the public's interest in disclosure, and because the video was sealed to the extent needed to protect A.M.'s privacy, the Seal Order was not clearly erroneous and was not contrary to law. Murry's objection to the Seal Order is overruled.

---

[15] *See, e.g.*, *Admiral Ins. Co. v. Vitus Grp. LLC*, No. cv424-021, 2024 WL 2784324, at *3 (S.D. Ga. May 30, 2024).

### III
### <u>Motion to File Supplemental Response</u>

Relying only on Federal Rule of Civil Procedure 15(d), Murry requests leave to file a supplemental response to the defendants' motion for judgment on the pleadings or, alternatively, for summary judgment. Doc. #86.[16] As cause, she represents that "[a]fter … filing [her response to the defendants' motion], [her] counsel received three (3) dispatch audio recordings of the 911 calls in this matter;" "[t]his audio is new evidence and is pertinent to [her] claims;" and the defendants "shall not suffer any prejudice." *Id.* at 2. Murry attached as an exhibit to the motion for leave a proposed supplemental response which states that (1) the recordings "provide … information" that "A.M. contacted the 911 dispatcher and advised that John Nolden was inside of the residence and there were no weapons involved; and … [t]he grandmother of Plaintiff A.M. contacted the 911 dispatcher and advised that there was a minor child inside of the subject residence;" and (2) the recordings "are ready for filing upon receipt of the filing link from the clerk of the court." Doc. #86-1 at 1–2 (paragraph numbering omitted).

The defendants respond that Murry's motion "fails as Rule 15(d) does not permit supplementation of a response to a dispositive motion as motions are not "pleadings" capable of supplementation pursuant to Rule 7(a);" "Rule 15 concerns the supplementation of pleadings, not the addition of evidence;" supplementing her response to a Rule 12(c) motion with evidence is improper because Rule 12(c) only permits consideration of the pleadings and attachments thereto; and supplementation would be futile. Doc. #90 at 1, 8–10 (quotation mark omitted).

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental *pleading* setting out any

---

[16] Murry did not file a memorandum brief in support of the motion but "request[s] to be relieved of the requirement to submit a supporting memorandum pursuant to L.U. Civ. R. 7(b)(4)." Doc. #86 at 3.

transaction, occurrence, or event that happened after the date of the *pleading* to be supplemented." (emphases added). A response to a motion for judgment on the pleadings is not a "pleading." *See* Fed. R. Civ. P. 7(a); *Oyekwe v. Research Now Grp., Inc.*, 542 F. Supp. 3d 496, 504 (N.D. Tex. 2021) ("a response to a motion is not among the pleadings that are allowed under the Federal Rules of Civil Procedure.") (cleaned up). Since Rule 15(d) provides no basis for Murry to supplement her response and because Murry does not cite any other authority to justify supplementing her response, Murry's motion for leave to file a supplemental response is denied.

## IV
## Motion for Judgment on the Pleadings

The defendants seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, alternatively, summary judgment under Federal Rule of Civil Procedure 56. Doc. #62; Doc. #63 at 5.

### A. Standards

#### 1. Rule 12(c) standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "To survive a 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller*, 922 F.3d at 599).

"As in the context of Rule 12(b)(6), the Court considering a Rule 12(c) motion *may*

consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record." *Sparks v. Tex. Dep't of Transp.*, 144 F. Supp. 3d 902, 903 (S.D. Tex. 2015) (emphasis added) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

The defendants attached to their motion several exhibits and argue in their memorandum brief that (1) the Court "*must* consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,' including the relevant incident reports and arrest reports here;" and (2) because video evidence is available, the Court must "view the facts in the light depicted by the videotape" rather than "favor plaintiff's allegations." Doc. #63 at 5–6 (emphasis added) (quoting *Jackson v. City of Hearne*, 959 F. 3d 194, 205 (5th Cir. 2020)).

The defendants do not explain how or where the complaint incorporates or references the attachments to their motion so the Court declines to consider them on that basis.[17] *See Jackson*, 959 F.3d at 205 (declining to consider certain documents on 12(b)(6) motion where plaintiff offered only conclusory allegations that the documents were incorporated).

Regarding judicial notice,

> Federal Rule of Evidence 201 provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute" in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.

*Doe v. Mckesson*, 945 F.3d 818, 833 (5th Cir. 2019) (quoting Fed. R. Evid. 201(b)), *vacated on other grounds*, 592 U.S. 1 (2020). A court is only required to take judicial notice "if a party

---

[17] Although Murry's response to the defendants' motion references the body camera footage, the complaint does not reference any of the defendants' exhibits, including the body camera footage. Doc. #80 at 3, 8; *see generally* Doc. #1.

requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The burden is on the party seeking judicial notice to show Rule 201's requirements have been satisfied. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011); *see* 21B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence* § 5108 (2d ed.) (Federal Rule of Evidence 201(d) "places the burden on the proponent to supply the necessary information."). The defendants did not provide the Court with any information explaining why the incident reports and arrest reports are proper subjects of judicial notice. So the Court declines to consider the reports on that basis as well.

As to the body camera footage, the cases the defendants cite do not support their argument that the Court should view the facts as depicted in the footage rather than as alleged in the complaint. *Boyd v. McNamara*, 74 F.4th 662, 665–66 (5th Cir. 2023), and *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), describe the standard of review on summary judgment when video evidence is available; and *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017), discusses the Rule 12(b)(6) standard when video evidence is attached to the complaint. The standard of review on summary judgment is distinct from the standard for judgment on the pleadings. And though the standard of review under Rule 12(b)(6) is identical to that of Rule 12(c), the video here was attached to the defendants' motion, not the complaint.

### 2. *Rule 56 conversion*

As an alternative to considering the attachments to their motion pursuant to Rule 12(c), the defendants argue that the Court "may consider matters outside the pleadings and render summary judgment." Doc. #63 at 6.

Federal Rule of Civil Procedure 12(d) instructs that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "[t]he mere submission … of extraneous materials does not by itself convert a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment." *United States ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 275 (5th Cir. 2015) (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (alterations omitted)). When "matters outside the pleadings are presented, the court has complete discretion to exclude them." *Great Lakes Ins. V. Gray Grp. Invs., LLC*, 550 F. Supp. 3d 364, 370 (E.D. La. 2021) (quoting *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quotation marks omitted)).

Because discovery in this case has been stayed since December 15, 2023, pending the outcome of the defendants' motion for judgment on the pleadings and because, for the reasons explained below, consideration of extrinsic materials is unnecessary to facilitate the disposition of the defendants' motion, the Court declines to convert the defendants' motion for judgment on the pleadings into a motion for summary judgment. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 528 (S.D. Tex. 2020) ("The Fifth Circuit … counsels against conversion to a motion for summary judgment without affording the adversary 'an opportunity to conduct discovery.'") (quoting *Benchmark Elecs. Inc. v. JM Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003)); *see also Beuche v. Delta Coll. of Arts & Tech, Inc.*, No. 15-296, 2016 WL 871434, at *4 (M.D. La. Apr. 8, 2016) (discretion to convert Rule 12(b)(6) motion to motion for summary judgment is based on "whether the material outside the … motion will facilitate disposition of the action") (citing *Ware v. Associated Milk Producers*, 614 F.2d 413, 415 (5th Cir. 1980)). So the Court will analyze the defendants' motion under Rule 12(c) only.

**B. Factual Allegations**

Nakala Murry, Murry's son A.M., Chief Ronald Sampson, and Officer Greg Capers all

reside in Sunflower County, Mississippi. Doc. #1 at PageID 2. Sampson and Capers are employed with the City of Indianola, Mississippi. *Id.*

On or about May 20, 2023, at approximately 4:00 a.m., Murry received an "unexpected visit from an irate father of one of her minor children." *Id.* at PageID 3. "At this time, the only people at the residence was [sic] … Murry, her two minor children, and her nephew (all minors)." *Id.* Murry instructed her eleven-year-old son A.M. to call the police "because she feared for her and the children's safety." *Id.* at PageID 3.

"Shortly thereafter," Sampson and Capers arrived. *Id.* at PageID 4. Capers arrived with his firearm drawn and asked everyone inside of the residence to come outside. *Id.* "As … A.M. was coming around the corner of the hallway that lead [sic] to the living room area, he was instantly shot by … Capers." *Id.* Sampson "was the commanding officer through the entire incident." *Id.*

"As a result of the subject gunshot wounds," A.M. "suffered a collapsed lung, lacerated liver, and fractured ribs," and "was given a chest tube and placed on oxygen at the University of Mississippi Medical Center, in Jackson, Mississippi." *Id.* A.M. "sustained major injuries to his body that will require extensive time in order for him to recover." *Id.*

### C. Analysis

#### 1. Federal law claims

##### a. *Individual Capacity § 1983 Claims*

In seeking judgment on the pleadings, the defendants argue that Murry's § 1983 claims against Capers and Sampson in their individual capacity fail because they are entitled to qualified immunity based on Murry's failure to sufficiently allege a violation of a constitutional right or that such a right was clearly established. Doc. #63 at 7. The defendants also argue that "supervisors, like Chief Sampson, 'are entitled to qualified immunity unless *both* the underlying constitutional

right and the supervisors' duty with respect to that right were clearly established.'" *Id.* at 8 (quoting *Pena v. Givens*, 637 F. App'x 775, 786 (5th Cir. 2015)) (emphasis in original).

Murry responds that Capers and Sampson are not entitled to qualified immunity because their "misconduct violated clearly established law and caused … damages," and "violated … Fourth and Fourteenth Amendment rights as a result of excessive force." Doc. #80 at 6.

In reply, the defendants reiterate that Capers and Sampson are entitled to qualified immunity because "[i]t was [Murry's] burden to show that qualified immunity is not applicable," and Murry failed "[t]o satisfy [her] burden … to allege a violation of a constitutional right" by showing "'the right was clearly established … light of the specific context of the case.'" Doc. #81 at 3 (quoting *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) "a violation of the Constitution or federal law," and (2) "that the violation was committed by someone acting under color of state law." *La. Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 F. App'x 317, 319 (5th Cir. 2020). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). To overcome a qualified immunity defense at the pleading stage, a plaintiff must sufficiently allege "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Waller*, 922 F.3d at 599 (internal quotation marks and citation omitted).

### i. *Fourth Amendment Claims*

Murry alleges in the complaint that the defendants "took actions to deprive [her and A.M.] of their 4th … Amendment rights," specifically "their 4th Amendment protection against excessive

force."  Doc. #1 at PageID 5.

"The Fourth Amendment creates a 'right to be free from excessive force during a seizure.'" *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)).  "In the Fourth Amendment context, a 'seizure' requires an 'intentional acquisition of physical control.'"  *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *4 (5th Cir. June 10, 2024) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)).  To state an excessive force claim under the Fourth Amendment, a plaintiff must allege not only an intentional use of force, but also "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Hodge v. Engleman*, 90 F.4th 840, 846–47 (5th Cir. 2024).

The parties do not appear to dispute whether Murry sufficiently alleges an injury.  However, the defendants argue that Capers "reasonably reacted to what any reasonable officer would have believed to have been the subject violent offender charging him," Doc. #63 at 12; and, citing *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018), and *Melvin v. Karman*, 550 F. App'x 218, 219 (5th Cir. 2013), they argue that because Murry does not allege Capers intentionally shot A.M., they fail to state a Fourth Amendment violation, Doc. #63 at 9–10.  Murry responds that "Capers intentionally shot A.M.," and "Defendants' objectively unreasonable and clearly excessive force caused … damages" because "[b]efore Defendant Capers entered the home and displayed his gun, he was informed **twice** that there were no weapons involved."  Doc. #80 at 7 (emphasis in original).  The defendants reply that the excessive force Fourth Amendment claims fail because Murry "do[es] not dispute the dense authorities providing that the[] claims fail unless [Murry] can show the subject shooting was both intentional and deliberately directed at … A.M."

Doc. #81 at 4.

As explained above, a Fourth Amendment seizure occurs "'only when there is a governmental termination of freedom of movement *through means intentionally applied.*'" *Bryant v. Gillem*, 965 F.3d 387, 392 (5th Cir. 2020) (quoting *Brower*, 489 U.S. at 596–97) (emphasis in original). Though Murry claims Capers intentionally shot A.M., the allegation is conclusory and appears for the first time in Murry's response, as does the factual contention that Capers was informed twice that no weapons were involved. Doc. #80 at 8; *see generally* Doc. #1. The Court will not consider these new contentions in Murry's response which are not alleged in the complaint. *See Gonzalez v. Kay*, 577 F.3d 600, 602 n.2 (5th Cir. 2009) (on Rule 12(b)(6) motion which requires same standard of review as Rule 12(c) motion, "[b]ecause the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint").[18] Because Murry does not allege an intentional seizure in the complaint, she fails to state a Fourth Amendment violation based on excessive force. *See Pearce v. Doe*, 849 F. App'x 472, 475 (5th Cir. 2021) ("To plausibly state a claim for excessive force in violation of the Fourth Amendment, Plaintiffs must allege an *intentional* seizure (among other things).") (emphasis in original) (citing *Brower*, 489 U.S. at 596–97). Accordingly, Capers and Sampson are entitled to qualified immunity on the Fourth Amendment claims against them in their individual capacity.

    *ii.    Fourteenth Amendment Claims*

The complaint alleges that the defendants "took actions to deprive [Murry and A.M.] of

---

[18] The Fifth Circuit has held that "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015). "New *factual allegations*, however, need not be so construed unless the plaintiff explicitly requests leave to amend and expresses the grounds upon which the amendment is sought with particularity." *Id.* at 200 n.6 (emphasis in original). Murry's response does not request leave to amend explicitly or implicitly. *See generally* Doc. #79. So the Court declines to construe the new factual allegations as a request to amend the complaint.

their 14th Amendment rights" and violated their "Fourteenth (14th) Amendment rights to substantive due process without intentional exposure to known danger." Doc. #1 at PageID 5, 1.

To sufficiently state a violation of substantive due process under the Fourteenth Amendment, a plaintiff must "'first identify a life, liberty, or property interest protected by the Fourteenth Amendment.' Then, a plaintiff must demonstrate that the challenged government action is not 'rationally related to a legitimate governmental interest.'" *Newell-Davis v. Phillips*, 551 F. Supp. 3d 648, 657 (E.D. La. 2021) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006)). "[F]or the conduct of a state actor to give rise to liability under the Due Process Clause, 'the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Whitley v. Hanna*, 726 F.3d 631, 651 n.2 (5th Cir. 2013) (Elrod, J., concurring) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *accord Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (due process clause "provides substantive … protections … when 'the behavior of the governmental officer … may fairly be said to shock the contemporary conscience.'") (quoting *Cnty. of Sacramento*, 523 U.S. at 847 n.8).

The defendants argue that Murry fails to state a violation of the Fourteenth Amendment because "[n]egligence does not meet the 'shock the conscience' standard," and she "repeatedly characterizes Officer Capers' conduct as negligence in nature rather than intentional." Doc. #63 at 15–16 (quoting *Baskin v. City of Houston*, 2008 U.S. Dist. LEXIS 82455, at *10-11 (N.D. Miss. Oct. 16, 2008)). Murry does not appear to address these arguments; rather she asserts the same arguments as those in support of the Fourth Amendment excessive force claims. Doc. #80 at 6–8. The defendants reply that the "Fourth or Fourteenth Amendment claims must fail" because Murry "repeatedly characterizes Officer Capers' conduct as negligent in nature rather than intentional."

Doc. #81 at 9.

Where, as here, a plaintiff raises a new claim or legal theory for the first time in response to a dispositive motion, a court "[g]enerally should" construe the claim or theory "as a request for leave to amend the complaint, and … determine whether leave should be granted." *Pierce*, 600 F. App'x at 200. "The court should freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a)(2). "But 'leave to amend is by no means automatic.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 484 (5th Cir. 2021) (quoting *Ashe v. Corley*, 922 F.2d 540, 542 (5th Cir. 1993)). A court may deny leave to amend where amendment would be subject to dismissal. *Johnson v. Harris Cnty.*, 83 F.4th 941, 947 n.8 (5th Cir. 2023).

"*All* claims that law enforcement officers have used excessive force … in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Tyson v. Cnty. of Sabine*, 42 F.4th 508, 515 (5th Cir. 2022) (emphasis in original); *accord Zavala v. Harris Cnty.*, No. 22-20611, 2023 WL 8058711, at *3 (5th Cir. Nov. 21, 2023) (citing *Boyd v. McNamara*, 74 F.4th 662, 673 n.3 (2023)) ("the standard for excessive force is the same under either [the Fourth Amendment or the Fourteenth Amendment]."). As explained above, because Murry does not allege Capers' actions were intentional, she fails to sufficiently state a claim for a Fourth Amendment violation based on excessive force. *See Pearce*, 849 F. App'x at 475. To the extent her response constitutes a request for leave to amend the complaint to allege a Fourteenth Amendment violation based on excessive force, the request is denied because such claim would be subject to dismissal. *See Johnson*, 83 F.4th at 947 n.8. And Murry's response does not address the defendants' argument that the Fourteenth Amendment substantive due process claims fail because negligent conduct does not shock the conscience. So the motion for judgment on the pleadings will be granted as to the Fourteenth Amendment claims against Capers and

Sampson individually.

### iii. Summary

Because Murry does not allege that Capers intentionally shot A.M., she fails to sufficiently state claims for Fourth Amendment and Fourteenth Amendment violations based on excessive force, and Capers and Sampson are entitled to qualified immunity.[19]  The motion for judgment on the pleadings will be granted as to the claims against Capers and Sampson in their individual capacity.

### b. Official Capacity and Municipal Liability § 1983 Claims

In seeking judgment on the pleadings, the defendants argue that (1) the § 1983 claims against Capers and Sampson in their official capacity fail because such claims are duplicative of those against the City; (2) neither Sampson nor the City can be held liable under 1983 under a theory of respondeat superior; and (3) Murry does do not state a claim for municipal liability under § 1983 because "there was no constitutional violation," she "does not identify any official policy nor any official policy that served as the moving force for any alleged violation," she "failed to point to any policy or any training program nor any pattern of similar violations to put the City or [Sampson] on notice that the training or supervision was inadequate," and "[c]ourts have long held that Mississippi's law enforcement academy includes sufficient training to defeat a failure-to-train theory."  Doc. #63 at 6, 18, 22–23.

Murry responds that the "claims of municipal liability and supervisory liability are proper" because "A.M.'s constitutional rights … were violated as a result of Defendant Capers' intentional shooting;" "[i]t is clear by Defendants Capers' actions and/or omissions … that such actions and/or

---

[19] Having determined that Murry failed to sufficiently allege a constitutional violation, the Court declines to address the parties' arguments regarding whether the alleged constitutional violations were clearly established.

omissions were so common and well settled as to constitute a custom that fairly represents municipal policy;" and "Sampson failed to properly supervise; and prevent or intervene in [Capers'] egregious conduct."  Doc. #80 at 9–10.  Murry does not address the defendants' arguments regarding the claims against Capers and Sampson in their official capacity.  *See generally* Doc. #80.

The defendants reply that Murry (1) abandoned the official capacity claims because she did not deny that such claims are duplicative of those against the City; (2) "yet again fail[ed] to outright identify with any form of particularity" a municipal policy or custom that was the moving force of an alleged constitutional violation; and (3) "failed to point to any personal involvement by Chief Sampson" as required "to attach any supervisory liability to him."  Doc. #81 at 2, 10, 12.

Though the parties' arguments address whether respondeat superior is a viable theory of recovery under § 1983, the complaint does not mention § 1983 under its respondeat superior count. Doc. #1 at PageID 9.  That count states in its entirety:

> Plaintiffs incorporate and adopt all prior paragraphs, averments, and statements. Defendant Officer Capers was in the course and scope of his employment with Defendant City, at all relevant times immediately subsequent and preceding the incident in question, and therefore, Defendant City is liable for the negligence of its employee Officer Capers.

*Id.* (paragraph spacing and numbering omitted).  While the Court agrees that a plaintiff may not recover under § 1983 pursuant to respondeat superior,[20] because this count of the complaint asserts a negligence claim only, it will be addressed in analyzing the state law claims.

To sufficiently state a § 1983 claim against a municipality, a plaintiff must plead facts establishing "(1) an official policy (or custom), of which (2) a policymaker can be charged with

---

[20] *Anderson v. Harris Cnty.*, 98 F.4th 641, 644 (5th Cir. 2024) ("it is well established that a municipality is not liable under § 1983 on the theory of respondeat superior") (alterations and citation omitted).

actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023). To state a 1983 claim against a municipality specifically under a theory of failure to train, a plaintiff must allege facts establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Jordan v. Brumfield*, 687 F. App'x 408, 415 (5th Cir. 2017). "A claim against an officer in his official capacity is treated as a claim against the municipality." *Id*. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks omitted).

Murry did not respond to the defendants' arguments that the § 1983 claims against Capers and Sampson in their official capacity are duplicative of those against the City and thus waived those claims. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings."). And because for the reasons discussed above, Murry did not sufficiently state a constitutional violation, she fails to state a claim for municipal liability. *See Johnson ex rel. A.N.E.R. v. City of San Antonio*, No. 23-50476, 2024 WL 50463, at *1 (5th Cir. Jan. 4, 2024) ("As is well established, every [municipal liability] claim requires an 'underlying constitutional violation.'") (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).[21]

---

[21] Even had Murry sufficiently stated a constitutional violation, there are no allegations in the complaint identifying an official custom or policy that was the driving force behind the alleged violation and a policymaker with knowledge of such policy. *See Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (citing *Monell v. Dep't of Soc. Ser.*, 436 U.S. 658 (1978)) (plaintiff must identify policy or custom and policymaker with actual or constructive knowledge of it to establish § 1983 claim for municipal liability).

## 2. State law claims

The complaint asserts state law claims for "Negligent/Intentional Infliction of Emotional Distress / Bystander's Claim;" "Reckless Endangerment;" "Civil Assault and Battery;" "Abuse of Process;" "Reckless Disregard for the Rights and Safety of the Plaintiffs;" "Respondeat Superior;" and "The Common Law Tort of Outrage." Doc. #1 at PageID 5–10. In seeking judgment on the pleadings, the defendants argue that (1) all the state law claims are procedurally barred for Murry's failure to provide notice as required under the Mississippi Tort Claims Act ("MTCA"); (2) they are immune from the state law claims under the MTCA; (3) the state law claims fail as matter of law because the City is immune and Capers and Sampson were acting in the scope of their employment; and (4) Murry's request for a jury trial, attorney's fees, joint and several liability, or punitive damages are barred by the MTCA. Doc. #63 at 23–32.

Murry does not dispute that the MTCA governs the state law claims but argues that the defendants "are liable under MTCA Section 11-46-9(1)(c)" which excludes from the MTCA's protection officers who "'acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury.'" Doc. #80 at 12–13 (quoting Miss. Code. Ann. § 11-46-9(1)(c). She also argues that (1) the defendants "committed assault and battery" and because she and A.M. "suffered emotional distress due to Defendants' actions," "Defendants are not entitled to immunity;" and (2) "punitive damages should be awarded as Defendants' conduct involved reckless or callous indifference to [their] federally protected rights." *Id.* at 14–17.

The defendants reply that the state law claims are procedurally barred because Murry "did not wait the required 90 days to file suit," the "notice letter does not satisfy the requirements set forth by [the MTCA]," and Murry abandoned the MTCA claims since she does not dispute that

she failed to comply with the MTCA's mandatory pre-suit notice requirements. Doc. #81 at 13. The defendants also argue that (1) Murry "merely present[s] the conclusory, threadbare assertion that [they] acted with reckless disregard, but this is insufficient to overcome [their] immunity" since "no Defendant acted with reckless disregard;" and (2) the remaining claims fail because Murry "do[es] not, nor could [she], refute that these claims must be dismissed as to the City … as a matter of law," and Murry "again admit[s] that Officer Capers and Chief Sampson solely acted in the course and scope of their employment at all relevant times" and are therefore not liable pursuant to the MTCA. *Id.* at 14–15.

"The Mississippi Supreme Court has recognized that 'any tort claim filed against a governmental entity or its employee shall be brought only under the [Mississippi Tort Claims Act].'" *Gerhart v. Barnes*, 724 F. App'x 316, 327 (5th Cir. 2018) (brackets in original) (quoting *Conrod v. Holder*, 825 So. 2d 16, 19 (Miss. 2002)). Under the MTCA, plaintiffs asserting a claim against a governmental entity or a government employee must provide 90 days' written notice to the governmental entity before filing suit. Miss. Code. Ann. § 11-46-11(1); *accord Hobgood v. Bordelon*, No. 1:11-cv-252, 2013 WL 2491061 at *9 (S.D. Miss. June 10, 2013). The written notice must

> contain the facts underlying their claims, which necessarily include: (1) the circumstances which brought about the injury, (2) the extent of the injury, (3) the time and place the injury occurred, (4) the names of all persons known to be involved, (5) the amount of money damages sought, (6) plaintiff's residence at the time of the injury, and (7) plaintiff's residence at the time of filing the notice.

*Harden v. Field Mem'l Cmty. Hosp.*, 265 F. App'x 405, 409 (5th Cir. 2008) (citing Miss. Code. Ann. § 11-46-11(2)). The notice requirement under § 11-46-11(1) imposes a condition precedent to the right to maintain an action. *Tallahatchie Gen. Hosp. v. Howe*, 49 So.3d 86, 91–92 (Miss. 2010); *see Lee v. Ishee*, 383 F. App'x 499, 501 (5th Cir. 2010) ("[T]he . . . notice requirement

[under the MTCA] is a hard-edged, mandatory rule which the [Mississippi Supreme Court] strictly enforces.") (citing *Bunton v. King*, 995 So. 2d 694, 696 (Miss. 2008)).

Because Murry does not dispute that the state law claims are governed by the MTCA and because she did not respond to the defendants' arguments regarding compliance with the MTCA's notice requirements, *see generally* Doc. #80, she concedes the failure to provide proper notice. Had Murry disputed compliance, since the complaint alleges that the events giving rise to the state law claims occurred on May 20, 2023,[22] and the complaint was filed ten days later on May 30, 2023, it is impossible notice could have been provided the requisite ninety days before Murry initiated suit. So the state law claims are procedurally barred.[23] *See Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 778 (S.D. Miss. 2011) (state law claims procedurally barred where plaintiff conceded, by failing to respond to defendant's arguments on motion to dismiss, that he failed to comply with MTCA's notice requirement); *Lee*, 383 F. App'x at 501 (state law claims properly dismissed where plaintiff "failed to properly file a notice of claim, as required under the [MTCA]."). Accordingly, the motion for judgment on the pleadings will be granted as to the state law claims.

### 3. Summary

The motion for judgment on the pleadings will be granted as to all claims because Murry did not sufficiently state a violation of their constitutional rights to maintain their federal law claims, and because their state law claims are procedurally barred for failure to provide notice as required under the MTCA.

---

[22] Doc. #1 at PageID 3–5.

[23] Because the Court has determined that the state law claims are procedurally barred based on the 90-day notice requirement, it need not consider the defendants' arguments regarding the contents of the written notice or their immunity from liability under the MTCA.

**V**
**Alternative Motion for Summary Judgment**

As an alternative to their motion for judgment on the pleadings, the defendants move for summary judgment on all claims in the complaint. Because the Court declined to convert the motion for judgment on the pleadings into a motion for summary judgment, and because the motion for judgment on the pleadings will be granted as to all claims, the defendants' alternative motion for summary judgment need not and will not be reached.

**VI**
**Leave to Amend**

As noted above, Judge Sanders denied as premature Murry's earlier motions for leave to amend her complaint, citing the defendants' pending motion for judgment on the pleadings as the reason. Doc. #83 at PageID 750; Doc. #96 at PageID 826. Because the defendants' motion for judgment on the pleadings will be granted and because courts "should provide at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the plaintiff[] … [is] unwilling or unable to amend in a manner that will avoid dismissal," *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (cleaned up), Murry will be allowed the opportunity to seek leave to amend.[24] *See Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 493 (N.D. Tex. 2022) ("Although the court is granting … Nationwide's motion for judgment on the pleadings, it will permit Kim to replead ….").

**VII**
**Conclusion**

For the reasons specified above:

---

[24] On a motion for judgment on the pleadings, "[d]ismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012). While amendment may not save Murry's claims, Murry will be given the chance to demonstrate that it could.

1.      Murry's objections [69][77] are **OVERRULED.**

2.      Murry's motion for leave file a supplemental response [86] is **DENIED**.

3.      The defendants' motion for judgment on the pleadings [62] is **GRANTED**. Within fourteen (14) days of the entry of this order, Murry may seek leave to amend her complaint.

      **SO ORDERED**, this 19th day of July, 2024.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
